# Exhibit B

# PROMISSORY NOTE

**$62,000,000.00**                                                                                   As of December 9, 2022

For value received, **BRICKCHURCH ENTERPRISES, INC.,** a Delaware Corporation having an address at 165 Broadway 23rd Floor, New York, New York 10006 ("Brickchurch"), and **ABERDEEN ENTERPRISES, INC.,** a Delaware Corporation having an address at 165 Broadway 23rd Floor, New York, New York 10006 (collectively with Brickchurch, the "Borrowers," each being a "Borrower"), hereby jointly and severally promise to pay to the order of **BAY POINT CAPITAL PARTNERS II, LP,** a Delaware limited partnership having an address at 3050 Peachtree Road NW, Suite 740, Atlanta, GA 30305 (together with its successors and assigns, "Lender"), the principal sum of Sixty Two Million and No/100 Dollars ($62,000,000.00) or so much thereof as may be advanced from time to time, and interest from the date hereof on the balance of principal from time to time outstanding, in United States currency, at the rates and at the times hereinafter described.

This Note is made by Borrowers in favor of Lender pursuant to that certain *Loan and Security Agreement* entered into by and among Lender and Borrowers as of even date herewith (as the same may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the provisions thereof, the "Loan Agreement") and the other Loan Documents. This Note evidences the Loan (as defined in the Loan Agreement). Capitalized terms used and not otherwise defined herein shall have the meanings given to them in the Loan Agreement. Payment of this Note is governed by the Loan Agreement, the terms of which are incorporated herein by express reference as if fully set forth herein, and the Obligations hereunder are secured by, and this Note is entitled to the benefit of, the Collateral.

1.      **Interest**.  Provided that no Event of Default exists, the outstanding principal balance of this Note shall bear interest (the "Non-Default Rate") at the rate of ten percent (10.00%), *per annum*. All interest payable herein shall be calculated on the basis of a 360-day year with twelve 30-day months based on actual days elapsed.

2.      **Payments**.

(a)      Payments of interest only, computed at the applicable interest rate hereunder on the outstanding principal balance, shall be due and payable commencing on December 31, 2022, and on the last day of each month thereafter through and including the Maturity Date; *provided, however,* that nothing contained herein shall prevent the accrual or collection of interest at the Default Rate (as defined herein) from and after the Maturity Date. Interest shall be payable in arrears.

(b)      If a payment is due on a day that is not a Business Day, such payment shall be deemed due on the next succeeding Business Day. All payments on account of the Indebtedness evidenced by this Note shall be made to Lender not later than 2:00 p.m. EST/EDT, on the day when due in lawful money of the United States, and shall be (i) first applied to late charges, fees, expenses, costs of collection or enforcement, and other similar amounts due, if any, under this Note and any of the other Loan Documents, (ii) then to interest due and payable hereunder; and (iii) the remainder to principal due and payable hereunder.

(c)      All amounts due under this Note or any other Loan Document shall be payable in lawful money of the United States which shall be legal tender for public and private debts at the time of payment.

3.    **Maturity Date**. Unless otherwise accelerated, or extended pursuant to the terms of Section 2.9 of the Loan Agreement, the Obligations arising hereunder and in the Loan Agreement, including all principal, interest, and fees, costs and expenses reimbursable by Borrowers, and all other sums due or required to be paid to Lender under any of the Loan Documents, and including any extensions, renewals, modifications, or substitutions thereof, shall mature and become due and payable on June 9, 2023 (the "Stated Maturity Date"); *provided* that nothing contained herein shall prevent Lender from collecting and applying interest, mandatory prepayments, reserves, deposits, costs, expenses, and fees, as the same may be provided for in or required by the Loan Documents, prior to the Stated Maturity Date; and *further provided* that nothing contained herein shall prevent Borrowers from repaying all or any portion of the Obligations arising under the Loan Documents prior to the Stated Maturity Date.

4.    **Prepayment**. Borrowers may prepay all or any part of the principal balance evidenced by this Note without prepayment penalty or premium; *provided*, however, that Borrowers shall not have the right to direct allocation of any payments made hereunder and all such payments shall be applied by Lender in accordance with the provisions hereof and the other Loan Documents unless otherwise expressly agreed to in writing by Lender.

5.    **Late Charges and Default Interest**. If Lender has not received the full amount of any Borrowers' regularly scheduled monthly interest payments, or any payment due on the Maturity Date, within five (5) days after the due date thereof, then Borrowers shall, jointly and severally, pay a late fee equal to ten percent (10.00%) of the amount of such late payment (including, without limitation, the outstanding principal balance of the Loan owed on the Maturity Date or following an acceleration of the Obligations by Lender); *provided*, that payments due on the Maturity Date shall not have a five (5) day grace period and any such payments are deemed late as of the date immediately after the Maturity Date. Each Borrower agrees that such late charge is not a charge for the use of the money, but is imposed to compensate Lender for some administrative services, costs and losses associated with any default (including a payment default upon maturity) under the Note, and such late charge is fully earned and nonrefundable when accrued. Collection or acceptance by Lender of such late charge shall not constitute a waiver of any remedies of Lender provided herein or otherwise at law.

6.    **Use of Funds**. Borrowers hereby warrant, represent, and covenant that the funds disbursed hereunder, and the proceeds of this Note, shall be used as set forth in the Loan Agreement and not for personal, family or household purposes. THE NOTE PROCEEDS AND FUNDS DISBURSED HEREUNDER ARE ONLY FOR COMMERCIAL, NON-CONSUMER USE AND THE LOAN EVIDENCED HEREBY SHALL BE A NON-CONSUMER LOAN. Borrowers agree that the obligation evidenced by this Note is an exempt transaction under the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*

7.    **Events of Default**. It shall be an "Event of Default" hereunder if any Borrower or any other Person shall take any action, or fail to take any action, that results in (a) a Default or Event of Default, as those terms are used in any Loan Document, including, without limitation, the Loan Agreement, and such Default or Event of Default is not cured within any applicable cure period as set forth in the applicable Loan Document; or (b) a violation of the DIP Order; *provided*, that nothing contained herein shall create any right to cure where one does not already exist with respect to the specific Default or Event of Default under the applicable Loan Document.**Remedies Upon an Event of Default; Default Rate of Interest**. Upon the occurrence of, and during the continuance of, an Event of Default hereunder, the Lender may exercise any or all of the remedies set forth in the Loan Agreement, including, without limitation, the following: (a) accelerate the Stated Maturity Date and declare all Obligations owing hereunder, including all principal and accrued interest and fees, to be immediately due and payable, whereupon the same shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby waived by each Borrower; (b) charge interest

at the Default Rate (as defined herein); (c) enforce any or all of the Liens and security interests created pursuant to this Note and the related Loan Documents; and (d) exercise any other rights that Lender may have under any of the Loan Documents, the DIP Order, at law, or in equity, each of which shall be nonexclusive of any other right, remedy, claim, or defense that Lender may have under any of the Loan Documents, the DIP Order, at law, or in equity. After the Maturity Date, including any acceleration of the Stated Maturity Date in accordance with the terms of the DIP Order, or any other Event of Default, Borrowers agree to pay to Lender interest on the aggregate Indebtedness represented hereby, including accrued interest, at the increased rate of twenty-four percent (24.00%), *per annum*, or such other maximum rate permitted by law, whichever is less, as calculated on the basis of a 360-day year, actual days elapsed (the "Default Rate").

9.    **Borrowers' Waivers**.  Borrowers waive demand, presentment, protest, notice of dishonor, notice of nonpayment, suit against any party, diligence in collection, and all other notices or requirements necessary to enforce this Note and any further receipt by or acknowledgement of any Collateral now or hereafter deposited as security for the Obligations of Borrowers hereunder. Each Borrower further waives and renounces for itself, its successors and assigns, all rights to the benefits of any statute of limitations and any moratorium, reinstatement, marshalling, forbearance, valuation, stay, extension, redemption, appraisement, or exemption and homestead laws now provided, or that may hereafter be provided, by the laws of the United States and of any state thereof against the enforcement and collection of the Obligations evidenced by this Note.

10.    **No Deemed Waiver**.  Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies and no waiver of any kind shall be valid unless in writing and signed by Lender. No failure to accelerate the Indebtedness evidenced hereby, acceptance of a past due installment following the expiration of any cure period provided by this Note, any Loan Document or applicable law, or indulgences granted from time to time shall be construed (i) as a novation of this Note or as a reinstatement of the Indebtedness evidenced hereby or as a waiver of the right of acceleration or of the right of Lender thereafter to insist upon strict compliance with the terms of this Note, or (ii) to prevent the exercise of the right of acceleration or any other right granted hereunder or by the laws of the State. All rights and remedies of Lender under the terms of this Note, any other Loan Document, and applicable statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrowers agree that there are no defenses, equities, or setoffs with respect to its obligations set forth herein.  Borrowers hereby expressly waive the benefit of any statute or rule of law or equity now provided, or that may hereafter be provided, that would produce a result contrary to or in conflict with the foregoing.

11.    **Severability**.  The parties hereto intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions.  However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of all parties hereto that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein as written, and that the rights, obligations and interest of Borrowers and the holder or holders hereof under the remainder of this Note shall continue in full force and effect.

12.    **Maximum Interest and Fees**.  Notwithstanding any other provision of this Note or any other Loan Document, nor any communications between any Borrower and Lender, all interest, loan fees, and charges payable by reason of the Indebtedness evidenced by this Note shall not exceed the

maximum, if any, permitted by applicable law. In calculating whether any interest exceeds the lawful maximum, all such interest shall be amortized, prorated, allocated, and spread over the full amount of the term of all principal Indebtedness of Borrowers to Lender without giving effect to any acceleration of such principal Indebtedness; *provided* that nothing contained herein shall be deemed to prevent Lender from accelerating any Obligations pursuant to the terms hereof or any other Loan Document. If by virtue of applicable law, sums in excess of such maximums would otherwise be payable, then such excess sums shall be construed as having been immediately applied by Lender to the principal balance of this Note when received. If at the time that any such sum is received by Lender the principal balance of this Note has been paid in full, Lender shall promptly refund such sums to Borrowers, less any sums due to Lender.

13.    **Successors and Assigns; Binding Agreement**.    As used herein, the terms "Borrowers" and "Lender" shall be deemed to include their respective heirs, successors, successors-in-title, legal representatives, and assigns, whether by voluntary action or the parties or by operation of law; *provided* that, notwithstanding anything to the contrary herein or in any other Loan Document, Borrowers shall not be permitted to assign their joint or several Obligations under this Note without Lender's express written prior consent. This Note and all provisions hereof shall be binding upon Borrower and all persons claiming under or through Borrower, and shall inure to the benefit of Lender, together with its successors and assigns, including each owner and holder from time-to-time of this Note.

14.    **Time of the Essence; Captions.**    TIME IS OF THE ESSENCE WITH RESPECT TO THIS NOTE AND AS TO ALL DATES SET FORTH HEREIN. Captions and headings in this Note are for convenience only and shall be disregarded in construing it.

15.    **Notices**.    Any notice or demand which Lender or Borrowers may desire or be required to give to the other shall be given in the same manner as required of any notices described in the Loan Agreement.

16.    **Extensions and Modifications**.    Borrowers agree that their liability for the Indebtedness hereunder shall not be affected in any manner by any indulgence, extension of time, renewal, waiver, or modification granted or consented to by Lender; and each Borrower consents to any indulgences and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions of this Note, and to any substitution, exchange or release of the Collateral, or any part thereof, with or without substitution, and agrees to the addition or release of any Borrower(s), endorser(s), Guarantor(s), or surety(ies), all whether primarily or secondarily liable, without notice to Borrowers and without affecting their liability hereunder. This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, changed, modification, or discharge is sought; *provided* that all modifications or extensions of this Note must be in writing and signed by Lender.

17.    **Attorneys' Fees; Costs of Collection**.    If this Note is placed in the hands of attorneys for collection or is collected through any legal proceedings, Borrowers promise and agree to pay, jointly and severally, in addition to the principal, interest and other sums due and payable hereon, all costs of collecting or attempting to collect this Note, including reasonable attorneys' fees and disbursements. Whenever reference is made to the payment of "attorneys' fees," "reasonable attorneys' fees" or words of similar import in this Note or any of the other Loan Documents, the same shall mean actual attorneys' fees and not to the payment of the statutory attorneys' fees defined in O.C.G.A. Section 13-1-11.

18.    **Joint and Several Liability**.    Except as otherwise specifically provided herein or in the Loan Agreement, each person or entity signing or otherwise liable for this Note agrees that each is

jointly and severally liable hereunder and under all other Loan Documents as a principal, and not as a surety.

19. **GOVERNING LAW**. THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS NOTE SHALL BE GOVERNED BY, AND CONSTRUED ACCORDING TO THE LAWS OF, THE STATE OF GEORGIA. BY EXECUTION AND DELIVERY OF THIS NOTE, BORROWER EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, TO THE PERSONAL JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE NORHTERN DISTRICT OF GEORGIA, AND EACH AND EVERY STATE COURT WITHIN THE TERRITORIAL JURISDICTION OF ANY OF THE AFOREMENTIONED COURTS IN ANY LEGAL ACTION OR PROCEEDING (EACH A "PROCEEDING") ARISING UNDER, OUT OF, OR IN ANY MANNER RELATING TO THIS NOTE, THIS LOAN AGREEMENT, OR THE EXTENSION OF CREDIT EVIDENCED THEREBY, AND ACKNOWLEDGES THAT THE NEGOTIATION, EXECUTION, AND DELIVERY OF THIS NOTE CONSTITUTE SUFFICIENT CONTACTS WITH THE AFOREMENTIONED COURTS FOR PURPOSES OF INDEPENDENTLY CONFERRING SUCH JURISDICTION. EACH BORROWER FURTHER AGREES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE EXCLUSIVE VENUES OF ANY SUCH LEGAL ACTION OR PROCEEDING ARISING OUT OF OR IN ANY MANNER RELATING TO THIS NOTE SHALL BE IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK OR SUCH OTHER OF THE AFOREMENTIONED COURTS AS LENDER, IN ITS SOLE OR ABSOLUTE DISCRETION, SHALL CHOOSE. EACH BORROWER IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, (I) ANY OBJECTION IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT; (II) ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (III) THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER EITHER BORROWER. NOTWITHSTANDING THE FOREGOING, FINAL JUDGMENT IN ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON EACH BORROWER AND MAY BE ENFORCED IN ANY COURT TO WHOSE JURISDICTION ANY BORROWER IS SUBJECT, BY A SUIT UPON SUCH JUDGMENT PROVIDED THAT SERVICE OF PROCESS IS EFFECTED UPON SUCH BORROWER IN A MANNER SPECIFIED IN THIS NOTE OR AS OTHERWISE PERMITTED BY APPLICABLE LAW.

20. **WAIVER OF JURY TRIAL**. BORROWERS, AND BY ACCEPTANCE HEREOF, LENDER, HEREBY MUTUALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION, OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATING TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED (I) IN CONNECTION HEREWITH OR THEREWITH, (II) IN CONNECTION WITH ANY TRANSACTIONS RELATED THERETO OR CONTEMPLATED THREBY, OR (III) THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. BORROWERS AND LENDER AGREE THAT ANY OF

THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT BETWEEN THE PARTIES TO IRROVCABLY WAIVE TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY. BORROWERS HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF LENDER, INCLUDING LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, AND BORROWERS ACKNOWLEDGE THAT LENDER HAS, IN PART, BEEN INDUCED TO MAKE THE EXTENSION OF CREDIT EVIDENCED BY THIS NOTE IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.

**IN WITNESS WHEREOF**, the undersigned Borrowers have caused this instrument to be signed by their respective duly authorized officers, effective as of the date and year first written above.

**BORROWER:**                                      **BORROWER:**

**BRICKCHURCH ENTERPRISES, INC.,**                 **ABERDEEN ENTERPRISES, INC.,**
a Delaware corporation                             a Delaware corporation

By: _Louise T Blouin_                              By: _Louise T Blouin_

Name:  Louise Blouin                               Name:  Louise Blouin

Title: _Authorized Signer_                         Title: _Authorized Signer_


STATE OF _New York_                )
                                   )    SS:
COUNTY OF _New York_               )

      On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared Louise Blouin, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same on behalf of Brickchurch Enterprises, Inc. in her capacity as the _Authorized Signer_ of Brickchurch Enterprises, Inc. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

      WITNESS my hand and official seal.

                            _PCC_

                                Notary

My Commission expires: _1/5/2024_

(SEAL)

                                PAUL COTTER
                     Notary Public, State of New York
                        No. 01CO6103636
                        Qualified in Ulster County
                   Commission Expires Jan. 5, 2024


STATE OF _New York_                )
                                   )    SS:
COUNTY OF _New York_               )

      On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared Louise Blouin, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same on behalf of Aberdeen Enterprises, Inc. in her capacity as the _Authorized Signer_ of Aberdeen Enterprises, Inc. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

      WITNESS my hand and official seal.

                            _PCC_

                                Notary

My Commission expires: _1/5/2024_

(SEAL)

                                PAUL COTTER
                     Notary Public, State of New York
                        No. 01CO6103636
                        Qualified in Ulster County
                   Commission Expires Jan. 5, 2024

*Signature Page to Promissory Note*