# Exhibit C

## GUARANTY AGREEMENT

THIS GUARANTY AGREEMENT (this "Guaranty") is made as of December 9, 2022, by (1) LOUISE BLOUIN, an individual residing at 376 Gin Lane, Southampton, New York 11968; (2) MATHEW KABATOFF, an individual residing at 376 Gin Lane, Southampton, New York 11968; (3) BRICKCHURCH ENTERPRISES (BVI) LTD., a company organized under the laws of the British Virgin Islands with an address at 165 Broadway 23rd Floor, New York, New York 10006; (4) ABERDEEN ENTERPRISES (BVI) LTD., a company organized under the laws of the British Virgin Islands with an address at 165 Broadway 23rd Floor, New York, New York 10006; and (5) ABERDEEN ENTERPRISES HOLDINGS LTD., a company organized under the laws of the British Virgin Islands with an address at 165 Broadway 23rd Floor, New York, New York 10006 (collectively, the "Initial Guarantors," each being a "Initial Guarantor"), to and for the benefit of BAY POINT CAPITAL PARTNERS II, LP, a Delaware limited partnership, its successors, participants, and assigns ("Lender").

## RECITALS

A.    The provisions of Section 1 below are applicable to these Recitals.

B.    On or about the date hereof, Brickchurch Enterprises, Inc., a Delaware corporation, and Aberdeen Enterprises, Inc., a Delaware corporation (collectively, the "Borrowers," each being a "Borrower"); and Lender entered into that certain Loan and Security Agreement ("Loan Agreement") whereby Lender agreed to make a secured loan (the "Loan") available to Borrowers in the maximum principal amount of Sixty-Two Million and 00/100 Dollars ($62,000,000.00), to refinance certain mortgage indebtedness encumbering the Mortgaged Property, as more particularly described in the Security Instruments, and for the other purposes set forth in the Loan Agreement.

C.    Borrowers have executed and delivered a Promissory Note in favor of Lender of even date herewith in the amount of the Loan (the "Note"), payment of which is secured by the Security Instruments, including without limitation (i) a Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement and Fixture Filing granted by Aberdeen Enterprises, Inc., a Delaware corporation  in favor of Lender; (ii) a Mortgage, Assignment of Leases and Rents, Assignment of Contracts, Security Agreement and Fixture Filing granted by Brickchurch Enterprises, Inc., a Delaware corporation in favor of Lender; and (iii) the other Loan Documents.

D.    Guarantors (as defined herein) will benefit directly or indirectly and substantially from the making of the Loan. Each Initial Guarantor's execution and delivery of this Guaranty is a condition precedent to Lender's agreement to make the Loan.

E.    Lender has materially relied on the representations, warranties, waivers, and agreements in each of the Loan Documents, including those contained herein, in agreeing to make the Loan.

F.    NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce Lender to make the Loan, each Guarantor hereby covenants and agrees with Lender as follows:

## AGREEMENTS

**1.    Definitions and Rules of Construction.**  Terms defined herein, including terms defined in the preamble and the Recitals above shall have the respective meanings given herein as definitions. Capitalized terms used herein and not otherwise defined shall have the meanings given to them in the Loan Agreement. The Loan Agreement has been provided to each of the Guarantors and the terms and provisions thereof are fully incorporated herein by reference. The following terms have the following definitions as used herein:

1.1    "Enforcement Costs" means all fees, costs, and expenses related to Lender's enforcement of this Guaranty, including, without limitation, legal expenses up to the maximum limit permitted by applicable law, and interest thereon at the rate of interest applicable after an Event of Default pursuant to the terms of the Loan Agreement.

1.2    "Guaranteed Obligations" has the meaning given in Section 2.

1.3    "Guarantors" shall mean collectively the Initial Guarantors and each person that may later join this Agreement or a similar agreement thereby committing such person to guarantee all or some of the Obligations, each being a "Guarantor."

1.4    The definitions of terms in this Agreement shall apply equally to the singular and plural forms of the terms defined. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine and neuter forms. The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise:

1.4.1    any definition of or reference herein to any agreement, instrument or other document, shall be construed as referring to such agreement, instrument or other document, as amended, restated, amended and restated, supplemented or otherwise modified from time to time and any reference herein to any statute or regulations shall include any amendment, renewal, extension or replacement thereof;

1.4.2    any reference herein to any Person shall be construed to include such Person's successors and assigns from time to time; *provided, however*, that this provision shall not create a right to assign where such right does not already exist under the terms and provisions of the applicable Loan Document;

1.4.3    the words "herein," "hereof" and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof;

1.4.4    all references herein to Sections shall be construed to refer to Sections of this Agreement; and

1.4.5    the words "asset" and "property" shall be construed to have the same meaning and effect and to refer to any and all tangible and intangible assets and properties, including cash, securities, accounts and contract rights.

**2.    Unconditional Guaranty of Payment and Performance.**  Each Guarantor hereby unconditionally and irrevocably, jointly and severally, guarantees to Lender the full and timely payment

(and not merely the collectability) of all of the Obligations (collectively, the "Guaranteed Obligations"), including, without limitation:

2.1    the aggregate outstanding principal amount of the Note and all interest accruing and unpaid thereon, regardless of whether such interest accrues prior to or after the Maturity Date, and including, without limitation, all interest accruing prior or subsequent to any Event of Default, at the applicable rate under the Loan Documents, and any interest accruing after the commencement of any bankruptcy or insolvency proceeding by or against any Borrower, whether or not allowed in such proceeding, in each case when due and payable, whether on any installment payment date or at the stated or accelerated maturity, all according to the terms of the Note and the Security Instrument;

2.2    all customary or necessary operating expenses incurred in connection with the Property, including all insurance premiums, operating expenses and all taxes and assessments in connection with the Property, including to the extent the same accrue prior to the Closing Date;

2.3    all sums necessary to make payment in full to all laborers, subcontractors and materialmen cause any mechanics' or materialmen's' liens and claims to be removed and thereafter keep the Mortgaged Property and/or any other Collateral free from all such liens and claims;

2.4    all other sums and charges which may at any time be due and payable in accordance with, or secured by, the Loan Agreement, the Note, any other Loan Document, or any other document evidencing or securing the Loan, including without limitation late charges, prepayment fees and premiums, if any, whether before or after any petition under the Bankruptcy Code, as the same shall become due and payable under the Loan Agreement and/or the Note, any and all costs and expenses incurred by the Lender in connection with the collection and enforcement of the Note, or any other Loan Document, all attorneys' fees (up to the maximum amount permitted by applicable law) and expenses, investigative costs and all court costs, expert witness fees, appraisals, lien searches, title searches, whether or not suit is filed thereon, and whether payable on the Maturity Date or otherwise, in each case when due and payable in accordance with the Loan Documents, whether on any installment payment date or at the stated or accelerated maturity;

2.5    the due and punctual performance of all of the other terms, covenants and conditions contained in the Note and the other Loan Documents required, on the part of any Borrower or any subsequent owner of the property made subject to the Security Instrument (the "Property," as more particularly described in the Security Instrument) to be performed;

2.6    damages incurred by the Lender as a result of any Borrower or Guarantor (or their respective agents, employees, heirs, personal representatives, successors or assigns) (2.6.1) committing fraud in connection with the Loan Agreement, the other Loan Documents and/or the transactions contemplated thereby or making any material misrepresentation in any Loan Document, or any other instrument, agreement or document delivered in connection with the Loan, (2.6.2) failing timely to pay any accrued and due and payable property taxes, assessments or other lienable impositions or any insurance premiums with respect to the Mortgaged Property, (2.6.3) failing to apply tenant security deposits, insurance proceeds or condemnation proceeds in connection with the Mortgaged Property in accordance with the Loan Documents, (2.6.4) damaging the Mortgaged Property (or any portion thereof) as a result of physical waste suffered or permitted to occur with respect to such Mortgaged Property (or any portion thereof), (2.6.5) violating applicable law as a result of its willful acts or omissions or its gross negligence, and (2.6.6) incurring any material environmental liability with respect to the Mortgaged Property; and

2.7     losses, demands, judgments, and damages of every nature whatsoever suffered by Lender and indemnified by Borrowers or Guarantors pursuant to the Loan Documents, applicable law, or otherwise. The provisions of this Section 2.7 shall survive the termination of this Guaranty and any satisfaction and discharge of any Borrower, including by virtue of any payment, court order, or any applicable laws (each of which shall be in accordance and subject to the provisions of the Loan Documents).

2.8     <u>Guaranty of Certain Items</u>

2.8.1     In addition to any other obligation or undertaking of any Guarantor under this Guaranty, and without regard to any limitation or reduction of any liability of a Guarantor under any other provision of this Guaranty, each Guarantor hereby unconditionally and irrevocably guarantees the full and timely payment (and not merely the collectability) of, and agrees to protect, defend, indemnify Lender and hold Lender harmless for, from and against, any and all losses, damages, costs, expenses (including reasonable attorneys' fees up to the maximum amount permitted by applicable law), liabilities, obligations, causes of action, suits, claims, demands and judgments of any nature or description whatsoever which may at any time be imposed upon, incurred or suffered by or awarded against Lender as a result of any one or more of the following, other than caused by Lender's gross negligence or willful misconduct:

2.8.1.1     Fraud by Borrower or Guarantor in connection with the construction, leasing or operation of the Mortgaged Property, the making or disbursement of the Loan, or any certificate or document provided in connection therewith;

2.8.1.2     Misrepresentation or breach of warranty by a Guarantor or Borrower if the applicable representation or warranty was known by such Guarantor or Borrower to be false, incorrect or incomplete in any material respect at the time given or deemed given;

2.8.1.3     After the occurrence and during the continuance of an Event of Default, distributions to any member, partner or shareholder of any Borrower or Guarantor (or to any beneficiary or trustee of any Borrower or Guarantor that is a trust) of any Gross Operating Income, including, rents, security deposits, or other income arising with respect to the Mortgaged Property or any part thereof, or any income realized from any other Collateral, which should have been remitted to Lender for application in accordance with the Loan Documents;

2.8.1.4     Failure to maintain property insurance with respect to the Property in accordance with the terms of the Loan Documents;

2.8.1.5     The misapplication by a Borrower or Guarantor of any proceeds of insurance or condemnation awards attributable to the Mortgaged Property or any part thereof, or any other Collateral, which, under the terms of the Loan Documents, should have been applied otherwise or paid to or deposited with Lender;

2.8.1.6     Physical waste with respect to the Mortgaged Property;

2.8.1.7     Any modification by a Borrower or its members, shareholders, officers, or directors of the organizational documents of such Borrower or any of its constituent entities in violation of any Loan Document;

2.8.1.8     Failure by a Borrower or Guarantor to pay or cause to be paid any real estate taxes, assessments, charges for labor, materials or services furnished in connection with

any construction at the Mortgaged Property, including any construction of tenant improvements, or any other charges, that may give rise to a lien on the Mortgaged Property;

    2.8.1.9  The misappropriation or intentional misapplication of any funds (a) from any account pledged by a Borrower or Guarantor to Lender under any Loan Document; or (b) required to be placed into a Specified Deposit Account;

    2.8.1.10  Any loss of the Mortgaged Property due to forfeiture thereof or of any portion thereof or interest therein as a result of any criminal or quasi-criminal activity by any Person;

    2.8.1.11  Commencement of a judicial or nonjudicial forfeiture or seizure proceeding by a governmental authority which remains pending with respect to the Mortgaged Property or any part thereof, on the grounds that the Mortgaged Property or any part thereof had been used to commit or facilitate the commission of a criminal offense by any person;

    2.8.1.12  The commencement of a claim or other legal proceeding against Lender, including without limitation an action to challenge, contest or in any way interfere, directly, or indirectly, with any foreclosure of any Security Agreement or with any other enforcement of Lender's rights, powers or remedies under any of the Loan Documents or any material liability of a Borrower or Guarantor, by any one or more of Borrowers, Guarantors or any other person controlling, controlled by or under common control with any Borrower (any such person(s) in such role, the "Litigating Party"), and such Litigating Party shall fail to obtain a final order of a court of competent jurisdiction granting such Litigating Party all of the relief sought by any complaint filed before Lender's answer or other responsive pleading thereto;

    2.8.1.13  Any Borrower or Guarantor shall after the execution of this Guaranty (2.8.1.13.1) voluntarily commence an Insolvency Proceeding other than the Chapter 11 Case; (2.8.1.13.2) voluntarily make a general assignment for the benefit of creditors under any Debtor Relief Law; (2.8.1.13.3) become the debtor in or subject of any involuntary case or proceeding under any Debtor Relief Law and any such case or proceeding shall have been facilitated, coordinated and/or directed by any Borrower, Guarantor or Affiliate of the same, including any Borrower, Guarantor or Affiliate of the same soliciting or causing to be solicited petitioning creditors for any involuntary petition against a Borrower or Guarantor from any person (which soliciting results in the filing of such involuntary petition against a Borrower or Guarantor); or (2.8.1.13.4) become the debtor in or subject of any involuntary case or proceeding under any Debtor Relief Law and any such case or proceeding shall not have been dismissed within sixty (60) days of the filing thereof.

    2.8.1.14  The Mortgaged Property or any part thereof shall become an asset in an Insolvency Proceeding;

    2.8.1.15  Any Borrower's or Guarantor's violation of any of the terms or provisions, including any affirmative or negative covenant, contained in the Loan Agreement or any Security Instrument.

This Guaranty is a "last dollar" guaranty, and accordingly, under no circumstances shall Guarantor's liability hereunder be reduced by, from or as a result of any payment except as may be made from Guarantor's personal funds.

   **3.**  **Guarantor Consent.**  The obligations and liabilities of each Guarantor under this Guaranty shall be absolute and unconditional, irrespective of the genuineness, validity, priority, regularity

or enforceability of the Loan Agreement, the Note, any Security Instrument or any of the other Loan Documents or any other circumstance which might otherwise constitute a legal or equitable discharge of a surety or guarantor. Each Guarantor expressly agrees that Lender may, in its sole and absolute discretion, without notice to or further assent of any Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of each Guarantor hereunder other than payment in full of the Obligations, do any one or more of the following at any time or from time to time: (3.1) exchange, compromise, substitute, release, surrender or otherwise dispose of the whole or any part of the Collateral now or hereafter held; (3.2) exchange, extend or renew the Note or the other Loan Documents, including exchanging, extending, or renewing time or place of payment of the Obligations in whole or in part, to a time certain or otherwise whether or not longer than the original period, or withdraw credit or time to pay; (3.3) extend or change the terms of performance of any other obligations of any Borrower, Guarantor, or Pledgor under any other agreement; (3.4) modify, amend, change, waive or terminate any provision(s) of the Loan Documents; (3.5) waive compliance with, or any defaults under, or grant any other indulgences with respect to, the Loan Documents; (3.6) effect any release, subordination, compromise or settlement in connection with the Note and the other Loan Documents; (3.7) receive additional property or other security as Collateral for the Obligations; (3.8) fail to exercise due diligence or omit to enforce any right, power or privilege under any Loan Document, including, without limitation, not perfecting any security interest or lien provided to Lender; and (3.9) apply any payment received by Lender on account of the Obligations, whether received from any Borrower or otherwise, in any manner the Lender elects; (3.10) make advances for the purpose of performing any term or covenant contained in any of the Loan Documents with respect to which Borrower or the then owner of the Property shall be in default; (3.11) assign or otherwise transfer any Loan Documents, including this Guaranty, or any interest therein or herein; (3.12) deal in all respects with each Borrower or the then owner of the Property as if this Guaranty were not in effect; or (3.13) effect any release, compromise or settlement with any one or more of Guarantor. Each Guarantor further waives any and all defenses pertaining to such consent and/or any of the foregoing.

**4.    Representations and Warranties.**

4.1    Each Guarantor, to the extent applicable to a particular Guarantor, makes the following representations and warranties to Lender as of the date first written above, and acknowledges that, but for the truth and accuracy of the following representations and warranties, Lender would not have agreed to make the Loan:

4.1.1    With respect to each Guarantor that is not a natural person, such Guarantor is duly organized, validly existing, and in good standing in its state of its organization as set forth in the recitals, has full corporate authority to execute and perform this Guaranty, and is licensed to do business in any state in which the conduct of its business or its ownership of property requires that it be so qualified except where a failure to be so qualified or licensed could not reasonably be expected to have a material adverse effect.

4.1.2    With respect to each Guarantor that is not a natural person, the execution, delivery, and performance of this Guaranty by such Guarantor and the other Loan Documents to which it is a party are within such Guarantor's powers, have been duly authorized, and do not and will not conflict with or constitute a breach of any provision contained in such Guarantor's certificate of formation or operating agreement or other applicable organizational or governing documents;

4.1.3    Such Guarantor's execution, delivery, and performance of this Guaranty and any other Loan Documents to which it is a party do not and will not (4.1.3.1) require any consent or approval of any governmental agency or authority (other than any consent or approval which has been obtained and is in full force and effect); (4.1.3.2) conflict in any material respect with any provision of

applicable law or any judgment, order, writ, injunction, or decree, which is binding upon such Guarantor or any of his/her/its respective properties; (4.1.3.3) conflict with any contractual restriction binding on or affecting such Guarantor or such Guarantor's property or constitute an event of default under any agreement to which such Guarantor is a party or by which such Guarantor is bound; (4.1.3.4) conflict with or constitute a default under any instruments creating a trust holding title to any assets included in such Guarantor's financial statements, (4.1.3.5) conflict with or violate the organizational documents or other documents governing such Guarantor; or (4.1.3.6) require, or result in, the creation or imposition of any lien on any asset of such Guarantor. Moreover, such Guarantor is not in default under any agreement to which he/she/it is a party or by which he/she/it is bound.

       4.1.4    With respect to each Guarantor that is not a natural person, such Guarantor maintains an office at its address for receipt of notices identified in Section 26.

       4.1.5    Each Guarantor that is a natural person resides at its address for receipt of notices identified in Section 26.

       4.1.6    Any and all balance sheets, net worth statements, and other financial data of such Guarantor provided to Lender by or on behalf of such Guarantor fairly and accurately present the financial condition of such Guarantor as of the respective dates thereof in all material respects. Moreover, all financial data of such Guarantor delivered to Lender prior to the Closing Date or pursuant to the terms hereof were prepared in accordance with GAAP (subject, in the case of interim financial statements, to normal year-end adjustments and the absence of footnotes) and present fairly in all material respects the financial condition of such Guarantor and its subsidiaries (as applicable) as at such dates and the results of its operations for the periods then ended and disclose all indebtedness and other liabilities (direct or contingent) of such Guarantor and its subsidiaries (as applicable) as of the date thereof.

       4.1.7    Guarantor has full power and authority to execute, deliver, and perform its obligations under this Guaranty and all other Loan Documents to which Guarantor is a party, and such execution, delivery, and performance have been duly authorized by all requisite action on the part of any entity Guarantor.

       4.1.8    This Guaranty and each other Loan Document to which such Guarantor is a party creates and constitutes legal, valid, and binding obligation of Guarantor enforceable in accordance with its terms except as enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other laws affecting the such Guarantor's rights generally and by general principles of equity, regardless of whether this enforceability is considered in a proceeding at law or in equity.

       4.1.9    Except as disclosed in writing to Lender, (4.1.9.1) there is no litigation (including derivative actions), arbitration, action, proceeding, or investigation pending or, to such Guarantor's knowledge, threatened or affecting any Guarantor or any Borrower, that may adversely affect such Guarantor's or Borrower's ability to fulfill his/her/its obligations under this Guaranty or have a material adverse effect; and (4.1.9.1) there are no judgments, or orders for the payment of money rendered against any Guarantor or any Borrower for an aggregate amount in excess of One Hundred Twenty Five Thousand and No/100 Dollars ($125,000.00), that have been undischarged for a period of ten (10) or more consecutive days and the enforcement of which is not stayed by reason of a pending appeal or otherwise.

       4.1.10    No default exists under any agreement to which any Guarantor is a party that may adversely affect such Guarantor's ability to fulfill its obligations under this Guaranty.

4.1.11  Such Guarantor is fully aware of the financial condition of each Borrower and is signing and delivering this Guaranty based solely upon such Guarantor's own independent investigation of all matters regarding each Borrower, the Loan, and the Collateral, and such Guarantor is not relying in any manner upon any representation or statement made by Lender or any Affiliate of Lender.

4.1.12  All statements set forth in the Recitals are true and correct.

4.2     All of the foregoing representations and warranties shall be deemed remade on the date of the any disbursement or advance of proceeds of the Loan and upon any extension of the Loan pursuant to the terms of the Loan Agreement.

4.3     Each Guarantor hereby agrees to hold harmless, indemnify, and defend Lender from and against all losses, damages, costs, expenses, injuries, and liabilities, including reasonable attorney fees and other legal expenses, that Lender may suffer or incur by reason of the inaccuracy or breach of any of the foregoing representations and warranties as of the date the foregoing representations and warranties are made and are remade.

**5.      Financial Covenants and Reporting.**  Each Guarantor shall comply with all financial covenants and financial reporting requirements applicable to such Guarantor. Moreover, each Guarantor shall provide to Lender, as and when required, the financial information required to be delivered to Lender with respect to such Guarantor pursuant to the terms of any Security Instrument or other Loan Document, certified by them to be true and correct and in such form and detail satisfactory to Lender in its reasonable discretion. Each Guarantor also agrees to provide Lender with such other financial information at such other times as may be reasonably requested by Lender.

**6.      Payment and Performance by Guarantor**.  Upon the occurrence of an Event of Default under the Loan Documents, each Guarantor agrees to pay or perform the Guaranteed Obligations immediately on demand by Lender, regardless of any defense, right of setoff, or claims any Borrower or Guarantor may have against Lender.

**7.      Remedies.**  All of the remedies set forth herein, in any of the Loan Documents, at law, or in equity shall be equally available to Lender, and the choice by Lender of one such alternative over another shall not be subject to question or challenge by any Guarantor or any other person, nor shall any such choice be asserted as a defense, setoff, or failure to mitigate damages in any action, proceeding, or counteraction by Lender to recover amounts due Lender or seeking any other remedy under this Guaranty, nor shall such choice preclude Lender from subsequently electing to exercise a different remedy. All rights and remedies afforded to Lender by reason of this Guaranty, the Loan Documents, or by law are separate and cumulative and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies. Every right, power and remedy given by this Guaranty to Lender shall be concurrent and may be pursued separately, successively or together against all Guarantors or any one or more of them; and each such right, power and remedy may be exercised from time to time as often as Lender may deem expedient. No delay or omission by Lender in exercising any such right or remedy shall operate as a waiver thereof. No waiver of any rights and remedies hereunder, and no modification or amendment hereof, shall be deemed made by Lender unless in writing and duly signed by Lender. Any such written waiver shall apply only to the particular instance specified therein and shall not impair the further exercise of such right or remedy or of any other right or remedy of Lender and no single or partial exercise of any right or remedy hereunder shall preclude any other or further exercise thereof or any other right or remedy. The parties have agreed to the alternative remedies provided herein in part because they recognize that the choice of remedies following the occurrence of an Event of Default will necessarily be and should properly be a matter of good faith business judgment, which the passage of time and events

may or may not prove to have been the best choice to maximize recovery by Lender at the lowest cost to any Borrower or Guarantor. It is the intention of the parties that such good faith choice by Lender be given conclusive effect regardless of such subsequent developments.

**8.        No Duty to Protect, Improve, or Insure**. Upon an Event of Default, Lender, at its sole and absolute discretion, may take any actions it deems necessary to preserve, protect, improve, or insure any Collateral. Notwithstanding the foregoing, Lender does not have and shall never have any obligation to make or complete any Improvements or take any action to preserve, protect or insure the Collateral. Furthermore, Lender shall not have any obligation to perfect its security interest in any Collateral.

**9.        Waivers**. To the extent permitted under applicable law, each Guarantor unconditionally waives any and all defenses of such Guarantor at law, in equity or otherwise pertaining to the Obligations, the Loan Documents, including this Guaranty, and/or the Loan, including, without limitation, the following: (9.1) notice of the execution and delivery of the Loan Documents and creation of any Obligations thereunder; (9.2) notice of acceptance of this Guaranty by the Lender and of all extensions of credit to any Borrower by Lender; (9.3) all notices and demands of every kind that may be required to be given by applicable law, including, without limitation, (9.3.1) any demand, proof, or notice of non-payment or non-performance of any Guaranteed Obligations, (9.3.2) presentment and demand for payment of the principal of or interest on the Note and protest of non-payment, and notice of acceptance of this Guaranty and of present, demand and protest, (9.3.3) notice of any default under this Guaranty or any of the Loan Documents and notice of any indulgences, and (9.3.4) demand for observance, performance, or enforcement of any terms or provisions of this Guaranty or any of the Loan Documents; (9.4) prior to repayment in full of all indebtedness owing under the Loan Documents, any defense, right of setoff or other claim that such Guarantor may have against any Borrower; (9.5) any defense, right of setoff or other claim that such Guarantor or any Borrower may have against Lender; (9.6) any and all rights that such Guarantor may have under any anti-deficiency statute or other similar protections, and such Guarantor agrees that Lender may pursue a deficiency judgment against such Guarantor following foreclosure or acceptance of a deed in lieu of foreclosure; (9.7) presentment for payment, demand for payment, notice of nonpayment or dishonor, notice of non-performance, protest and notice of protest, diligence in collection, diligence in protection or realization upon the Collateral, and any and all formalities that otherwise might be legally required to charge such Guarantor with liability; (9.8) notice of Lender's obtaining, amending, substituting for, releasing, waiving, or modifying any security interest, liens or encumbrances now or hereafter securing the Obligations, or Lender's subordinating, compromising, discharging or releasing such security interests, liens or encumbrances and any other notices whatsoever; (9.9) any failure by Lender to inform such Guarantor of any facts Lender may now or hereafter know about any Borrower, the Collateral, the Loan, or the transactions contemplated by the Loan Agreement; (9.10) any requirement that Lender act with diligence in enforcing its rights under the Loan Documents or this Guaranty; (9.11) any right to require Lender to proceed against or exhaust its recourse against any Borrower, any Guarantor, any other obligor, any other person or entity, or any security or Collateral, or to pursue any other remedy in its power, before being entitled to payment from such Guarantor under this Guaranty or before proceeding against Guarantor; (9.12) any defense based upon election of remedies by Lender that destroys or otherwise impairs the subrogation, indemnification, contribution and reimbursement rights of such Guarantor or such Guarantor's right after payment of the Guaranteed Obligations to proceed against any Borrower or any other person or entity for reimbursement; (9.13) all errors and omissions in connection with Lender's administration of all indebtedness guaranteed by this Guaranty, except errors and omissions resulting from acts of bad faith; (9.14) the defense of impairment of collateral; (9.15) any defense based upon the addition, substitution or release, in whole or in part, of any person or entity primarily or secondarily liable for or in respect of the Guaranteed Obligations; and (9.16) any and all rights to require marshalling of assets by Lender; (9.17) any and all guaranty and suretyship defenses that might otherwise be available to such Guarantor in law or equity; (9.18) any and all other defenses of such Guarantor whether arising in law or equity, and any and all

defenses, claims and discharges of any Borrower or any other Guarantor, pertaining to the Obligations, including but not limited to any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available in any action against any Guarantor under this Guaranty, except the defense of discharge by payment in full. The obligations of each Guarantor hereunder shall remain in full force and effect without regard to, and shall not be affected or impaired by any release, waiver or discharge of any Guarantor from its respective liability under any obligation of this Guaranty.

This Guaranty shall be effective as a waiver of, and each Guarantor hereby expressly waives, any and all rights to which such Guarantor may otherwise have been entitled under any suretyship laws in effect from time to time, including without limitation the provisions of Section 10-7-24 of the Official Code of Georgia Annotated and any other right or privilege, whether existing under statute, at law or in equity, to require Lender to take prior recourse or proceedings against any collateral, security or other party whatsoever. Without any limitation of the foregoing, each Guarantor hereby expressly waives any defenses to collection of any deficiency from such Guarantor arising under O.C.G.A. §44-14-161.

**10.     Acceleration**.  Notwithstanding anything to the contrary in this Guaranty or in any of the Loan Documents, Lender, at its sole and absolute discretion, may, as to each Guarantor, accelerate the indebtedness guaranteed by such Guarantor hereunder in the event of: (11.1) the making by any Guarantor of an assignment for the benefit of creditors; (11.2) the appointment of a custodian for any Guarantor or for any property of any of Guarantor; (11.3) the commencement of any proceeding by any Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment, receivership or like law or statute; (11.4) the commencement of any proceeding against any Guarantor under any bankruptcy, reorganization, arrangement, insolvency, readjustment, receivership or like law or statute which is not discharged or dismissed within sixty (60) days after institution thereof; or (11.5) the death or legal disability of any Guarantor which is a natural person; or (11.6) as to any Guarantor which is not a natural person, the termination, dissolution, liquidation, consolidation, reorganization or merger of any such Guarantor, without the prior written consent of Lender.

**11.     Subordination of Guarantor Subordinated Debt**.  If any Guarantor shall advance any sums to a Borrower or if a Borrower shall hereafter become indebted to any Guarantor before the full and final payment of the Obligations, such sums and indebtedness ("Guarantor Subordinated Debt") shall be subordinate in all respects to the Obligations. Any payment to a Guarantor on account of any Guarantor Subordinated Debt shall be collected and received by Lender or such Guarantor in trust for Lender and shall be paid over to Lender on account of the Obligations without impairing or releasing the obligations of any Guarantor hereunder.

Without the prior written consent of Lender, no Guarantor shall ask, demand, receive, accept, sue for, set off, accelerate, collect or enforce Guarantor Subordinated Debt or any collateral and security therefor. Each Guarantor represents and warrants to Lender that any Guarantor Subordinated Debt owing to it is unsecured and agrees not to receive or accept any collateral or security therefor without the prior written permission of Lender. No Guarantor shall assign, transfer, hypothecate or dispose of Guarantor Subordinated Debt while this Guaranty is in effect. No Guarantor shall act as a petitioning creditor, nor shall any Guarantor take any action that could reasonably be deemed to encourage any other person to act as a petitioning creditor with respect to any involuntary Insolvency Proceeding with respect to any Borrower or Guarantor. In the event of any sale, Insolvency Proceeding, receivership, or assignment for the benefit of creditors, or any proceeding by or against a Borrower for any relief under any Debtor Relief Law, then and in any such event any payment or distribution of any kind or character, either in cash, securities or other property, which shall be payable or deliverable upon, or with respect to, all or any part of Guarantor Subordinated Debt or otherwise shall be paid or delivered directly to Lender for application to the obligations and liabilities of Guarantors under this Guaranty (whether due or not due and in such

order and manner as Lender may determine in the exercise of its sole discretion) until the obligations of each Guarantor hereunder shall have been fully paid and satisfied. Each Guarantor hereby irrevocably authorizes and empowers Lender to demand, sue for, collect and receive every such payment or distribution on account of any Guarantor Subordinated Debt and give acquittance therefor and to file claims and take such other proceedings in Lender's own name or in the name of such Guarantor or otherwise, as Lender may deem necessary or advisable to carry out the provisions of this Guaranty. Each Guarantor hereby agrees to execute and deliver to Lender such powers of attorney, assignments, endorsements or other instruments as may be requested by Lender in order to enable Lender to enforce any and all claims upon, or with respect to, any Guarantor Subordinated Debt, and to collect and receive any and all payments or distributions which may be payable or deliverable at any time upon or with respect thereto.

So as to secure the performance by Guarantors of the provisions of this Guaranty, each Guarantor assigns, pledges and grants to Lender a security interest in, and lien on, any and all Guarantor Subordinated Debt, all proceeds thereof and all and any security and collateral therefor. Upon the request of Lender, each Guarantor shall endorse, assign and deliver to Lender all notes, instruments and agreements evidencing, securing, guarantying or made in connection with any Guarantor Subordinated Debt.

Each Guarantor hereby irrevocably nominates, constitutes and appoints Lender as such Guarantor's true and lawful attorney-in-fact with full power of substitution and authority to appear on Guarantor's behalf and its place and stead in any Insolvency Proceeding for the purpose of filing proof of such Guarantor's claim for any Guarantor Subordinated Debt owed to such Guarantor, or any part thereof, to vote the claims of the indebtedness constituting such Guarantor Subordinated Debt, and prosecuting such claim and collecting any creditors' dividend or other payment made in respect of such Guarantor Subordinated Debt. Each Guarantor agrees to cooperate with any and all requests by Lender in connection with any such Insolvency Proceedings and to do such other acts and things and deliver, or cause to be delivered, such other documents as Lender may reasonably request to effect the intent and purpose of this Guaranty.

**12.    Subrogation.**  Notwithstanding anything to the contrary contained herein, no Guarantor shall have any right of subrogation in or under any of the Loan Documents; nor shall any Guarantor participate in any way therein, or in any right, title or interest in and to any security or right of recourse for the Obligations or any right to reimbursement, exoneration, contribution, indemnification or any similar rights, until the full and final payment of the Obligations.

**13.    Condition of Borrower.**  Credit may be granted or continued from time to time by Lender to any Borrower without notice to or authorization from any Guarantor, regardless of the financial or other condition of any Borrower at the time of any such grant or continuation. Lender shall have no duty to disclose or discuss any information to any Guarantor about any Borrower, the Loan, or the Collateral. Each Guarantor is fully responsible for being and remaining informed by Borrowers of all circumstances bearing on the risk of nonperformance of any Borrower's obligations. By executing this Guaranty, each Guarantor knowingly accepts the full range of risks encompassed within a contract of this type, which risks each Guarantor acknowledges, understands and unconditionally accepts.

**14.    No Impairment of Guarantor's Liability.**

14.1    To the extent permitted by applicable law, each Guarantor's liability hereunder shall not be impaired, released, discharged, or otherwise affected by (15.1.1) any renewals or extensions of the Loan, regardless of any Guarantor's knowledge or consent; (15.1.2) any forbearance or delay in collecting interest or principal under the Note; (15.1.3) any waiver by Lender under any of the Loan

Documents; (15.1.4) Lender's failure or election not to pursue any other remedies it may have against any Borrower or any Guarantor; (15.1.5) any change or modification to any of the Loan Documents, including, without limitation, any increase in the Loan amount or applicable interest rate; (15.1.6) the acceptance by Lender of any additional Collateral, or any increase, substitution, or change therein; (15.1.7) the release by Lender of any Collateral, or any withdrawal thereof or decrease therein; (15.1.8) the incapacity, lack of authority or disability of any Borrower or Guarantor; (15.1.9) the failure or refusal of Lender to file or enforce a claim against the estate of any Borrower or Guarantor; (15.1.10) the failure or refusal of any Guarantor to execute its guaranty, or by reason of the fact that any of the Collateral may be in default at the time of acceptance thereby by Lender or later, or by reason of the fact that a valid lien in any of the Collateral may not be conveyed to or created in favor of Lender; (15.1.11) the fact that the Collateral may be subject to equities or defenses or claims in favor of others or may be invalid or defective in any way; (15.1.12) the fact that any of the Obligations or the Guaranteed Obligations may be invalid for any reason whatsoever; (15.1.13) the fact that the value of any of the Collateral may not have been correctly estimated or may have changed or may hereafter change for any reason, including, without limitation, deterioration, waste, fire, theft, market conditions, or otherwise; (15.1.14) the fact that the financial condition of any Borrower or any Guarantor may not have been correctly estimated or may have changed or may hereafter change; or (15.1.15) the application of payments received from any source to the payment of any obligation other than amounts due under the Loan Documents even though Lender might lawfully have elected to apply such payments to any part or all of the Obligations.

14.2    Each Guarantor shall remain liable for payment and performance of the Guaranteed Obligations until the Obligations have been indefeasibly paid in full, notwithstanding anything that might otherwise operate as a legal or equitable discharge of a surety.

14.3    Each Guarantor understands and agrees that Lender may at any time enter into agreements with a Borrower to amend and modify the Loan Documents, and may waive or release any provision of the Loan Documents, and may make and enter into any agreement as Lender and any Borrower or Guarantor may deem proper and desirable with respect to the Loan Documents, without in any manner impairing or affecting this Guaranty or any of Lender's rights or such Guarantor's obligations hereunder.

**15.    Guarantor's Obligations Are Absolute.** This is an absolute, present, and continuing guaranty of payment and not of collection. This Guaranty may be enforced by Lender without the necessity at any time of resorting to or exhausting any Collateral through foreclosure or sale proceedings, as the case may be, under any Security Instrument or otherwise, or resorting to any other guaranties, and each Guarantor hereby waives any right to require Lender to join any Borrower or any Guarantor in any action brought hereunder or to commence any action against or obtain any judgment against any Borrower or Guarantor to pursue any other remedy or enforce any other right. Each Guarantor further agrees that nothing contained herein or otherwise shall prevent Lender from pursuing concurrently or successively all rights and remedies available to Lender at law or in equity or under any of the Loan Documents. Lender's exercise of any of its rights or remedies shall not constitute a discharge of any Guarantor's obligations hereunder, it being the purpose and intent of each Guarantor that the obligations of each Guarantor hereunder shall be absolute, independent, and unconditional under any and all circumstances whatsoever. None of Guarantors' respective obligations under this Guaranty nor any of Lender's rights or remedies shall be impaired, modified, changed, or released in any manner whatsoever by any impairment, modification, change, release, or limitation of any Borrower's or Guarantor's liability under any of the Loan Documents or by reason of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of any Borrower or Guarantor.

**16.    Guaranty Primary.** The obligations and liability of each Guarantor under this Guaranty shall be primary, direct and immediate; shall not be conditional or contingent upon pursuit by Lender of

any remedies it may have against any Borrower with respect to the Loan Documents, whether pursuant to the terms thereof or by law; and shall not be subject to any counterclaim, recoupment, set-off, reduction or defense based upon any claim that any Guarantor may have against a Borrower, Lender or any other Guarantor. Without limiting the generality of the foregoing, Lender shall not be required to make any demand on any Borrower and/or the then owner of the Mortgaged Property or other Collateral, or to sell at foreclosure or otherwise pursue or exhaust its remedies against the Mortgaged Property, the other Collateral, or any part thereof and/or against any Borrower or the then owner of the Mortgaged Property or such Collateral, before, simultaneously with or after enforcing its rights and remedies hereunder against any Guarantor. Any one or more successive and/or concurrent actions may be brought hereon against any Guarantor either in the same action, if any, brought against a Borrower and/or the then owner of the Mortgaged Property or other Collateral or in separate actions, as often as Lender may deem advisable.

17.    **Obligations Not Affected by Insolvency**. If at any time any payment, or portion thereof, made by, or for the account of, any of the Obligations or Guaranteed Obligations or any of such Guarantor's obligations and liabilities hereunder is rescinded, invalidated, declared fraudulent, set aside, determined void or voidable as a preference, fraudulent conveyance, impermissible setoff, or diversion of trust funds, or is otherwise required to be disgorged or returned by Lender for any reason, including without limitation in connection with any Insolvency Proceeding, dissolution, liquidation, or reorganization of any Borrower or Guarantor, or upon or as a result of the appointment of a receiver, intervenor, custodian or conservator of or trustee or similar officer for any Borrower or Guarantor, or any substantial part of any of their respective property, or otherwise, Guarantors hereby jointly and severally agree that this Guaranty shall continue to be effective or shall be fully reinstated (as the case may be) as though such payment to Lender had not been made, regardless of whether Lender contested the order requiring the return of such payment. In addition, each Guarantor shall pay or reimburse Lender for all expenses (including all reasonable attorney fees) incurred by Lender in the defense of any claim that a payment received by Lender in respect of all or any part of the Obligations and/or Guaranteed Obligations must be refunded. The provisions of this Section shall survive the termination of this Guaranty and any satisfaction and discharge of any Borrower and/or Guarantor by virtue of any payment, court order, or any applicable laws.

18.    **Application of Payment.** Lender may apply any amounts received on account of the Loan from any source to the Obligations or any other obligations of any Borrower to Lender in such order as Lender may elect in its sole and absolute discretion. Any amounts received by Lender from any Guarantor shall not reduce any Guarantor's personal liability hereunder absent Lender's prior written consent, but shall instead be applied to the Guaranteed Obligations. Lender may reject and return any payment tendered by any Guarantor prior to an Event of Default without Lender's prior written consent. Additionally, if the Guaranteed Obligations shall for any reason be less than the Obligations then owing pursuant to the Loan Documents, all rents, issues, profits, and proceeds of the Collateral shall be deemed applied to the Obligations that are not guaranteed until such unguaranteed Obligations have been fully repaid before being applied to any Obligations guaranteed by any Guarantor.

19.    **Assignment**. Lender may, without notice to any Guarantor, assign, participate, syndicate, or transfer the Loan, in whole or in part. In such event, each assignee, transferee, or holder of all or any part of the Loan may enforce this Guaranty, but Lender shall have an unimpaired right to enforce this Guaranty for its benefit as to any portion of the Loan that Lender retains. If Lender pledges or assigns the Note to any creditor as security for an obligation of Lender, such creditor may enforce this Guaranty to the same extent as would have been enforceable by Lender but for such pledge or assignment; *provided, however*, that unless Lender otherwise consents in writing, Lender shall have an unimpaired right, prior and superior to that of its creditor, to enforce this Guaranty for Lender's benefit to the extent any portion of the Indebtedness or any interest therein is not pledged or assigned. The

obligations under this Guaranty shall be binding upon the heirs, executors, legal and personal representatives, successors and assigns of each Guarantor and shall not be discharged in whole or in part by the death, incapacity, or dissolution of any Guarantor or Borrower or of any principal of Guarantor or Borrower; *provided, however,* that nothing contained herein shall provide any Guarantor the right to assign its obligations under this Guaranty or any other Loan Document.

**20.**    **Enforcement Costs.**  In addition to all other amounts due Lender hereunder, Guarantor shall pay reasonable Enforcement Costs to Lender, upon demand, if any of the following occurs: (21.1) this Guaranty is placed in the hands of an attorney for collection or is collected through any legal proceeding; (21.2) an attorney is retained to represent Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under this Guaranty; (21.3) an attorney is retained to provide advice or other representation with respect to this Guaranty; or (21.4) an attorney is retained to represent Lender in any proceedings whatsoever in connection with this Guaranty.

**21.**    **Indemnification and Defense Obligations.**  If a claim arises for which Guarantor has a duty to defend Lender under this Guaranty or any of the other Loan Documents to which Guarantor is a party, Lender shall have the right to choose its own legal counsel (at Guarantor's expense) and make all decisions relating to its defense, including, without limitation, the litigation strategy and the terms of any settlement.

**22.**    **Severability.**  Each provision in this Guaranty is intended to comply with all applicable law. However, if a court of competent jurisdiction holds that any provision of this Guaranty, or any portion thereof, is illegal, invalid, unlawful, void, or otherwise unenforceable as written, (23.1) such provision, or portion thereof, shall be given force and effect to the fullest possible extent permitted under applicable law, (23.2) this Guaranty shall be construed as if the illegal, invalid, unlawful, void, or otherwise unenforceable provision or portion thereof was not contained herein, and (23.3) the rights, obligations, and interests of each Guarantor and Lender shall continue in full force and effect to the fullest extent permitted under applicable law.

24.    **Further Assurances.**  Each Guarantor agrees at any time upon Lender's request to take, or cause to be taken, any action and to execute and deliver any additional instruments and documents, and will take all such other action as Lender may reasonably request from time to time in order to carry out the provisions and purposes, or which may otherwise be necessary to assure Lender the full benefits of, this Guaranty.

**23.    JURISDICTION AND VENUE.    THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED ACCORDING TO THE LAWS OF, THE STATE OF GEORGIA. BY EXECUTION AND DELIVERY OF THIS GUARANTY, EACH GUARANTOR EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, TO THE PERSONAL JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE NORHTERN DISTRICT OF GEORGIA, AND EACH AND EVERY STATE COURT WITHIN THE TERRITORIAL JURISDICTION OF ANY OF THE AFOREMENTIONED COURTS IN ANY LEGAL ACTION OR PROCEEDING (EACH A "PROCEEDING") ARISING UNDER, OUT OF, OR IN ANY MANNER RELATING TO THIS GUARANTY, THE NOTE, THE LOAN AGREEMENT, OR THE EXTENSION OF CREDIT EVIDENCED THEREBY, AND ACKNOWLEDGES THAT THE NEGOTIATION, EXECUTION, AND DELIVERY OF THIS GUARANTY CONSTITUTE SUFFICIENT**

CONTACTS WITH THE AFOREMENTIONED COURTS FOR PURPOSES OF INDEPENDENTLY CONFERRING SUCH JURISDICTION. EACH GUARANTOR FURTHER AGREES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE EXCLUSIVE VENUES OF ANY SUCH LEGAL ACTION OR PROCEEDING ARISING OUT OF OR IN ANY MANNER RELATING TO THIS GUARANTY SHALL BE IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK OR SUCH OTHER OF THE AFOREMENTIONED COURTS AS LENDER, IN ITS SOLE OR ABSOLUTE DISCRETION, SHALL CHOOSE. EACH GUARANTOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, (I) ANY OBJECTION IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT; (II) ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (III) THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH GUARANTOR. NOTWITHSTANDING THE FOREGOING, FINAL JUDGMENT IN ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON EACH GUARANTOR AND MAY BE ENFORCED IN ANY COURT TO WHOSE JURISDICTION ANY GUARANTOR IS SUBJECT, BY A SUIT UPON SUCH JUDGMENT PROVIDED THAT SERVICE OF PROCESS IS EFFECTED UPON SUCH GUARANTOR IN A MANNER SPECIFIED IN THIS GUARANTY OR AS OTHERWISE PERMITTED BY APPLICABLE LAW.

GUARANTOR AGREES THAT A FINAL JUDGMENT IN ANY SUCH ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS (INCLUDING ANY JURISDICTION IN WHICH GUARANTOR MAY RESIDE OR IN WHICH GUARANTOR'S ASSETS MAY BE LOCATED) BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW. EACH GUARANTOR HEREBY IRREVOCABLY APPOINTS UNIVERSAL REGISTERED AGENTS, INC. WITH AN OFFICE ON THE DATE HEREOF AT 26 CARVILLE LANE, EAST GREENBUSH, NY 12061 (THE "PROCESS AGENT") AS ITS AGENT TO RECEIVE AND FORWARD ON BEHALF OF ITSELF THE SUMMONS AND COMPLAINT AND ANY OTHER PROCESS WHICH MAY BE SERVED IN ANY SUCH ACTION OR PROCEEDING. SUCH SERVICE MAY BE MADE BY MAILING OR DELIVERING A COPY OF SUCH PROCESS TO GUARANTOR IN THE CARE OF THE PROCESS AGENT AT THE PROCESS AGENT'S ADDRESS, AND EACH GUARANTOR HEREBY IRREVOCABLY AUTHORIZES AND DIRECTS THE PROCESS AGENT TO RECEIVE SUCH SERVICE ON ITS BEHALF AND FORWARD SUCH SERVICE TO THE APPLICABLE GUARANTOR. NOTHING IN THIS GUARANTY OR ANY OTHER LOAN DOCUMENT SHALL AFFECT ANY RIGHT THAT ANY PARTY MAY OTHERWISE HAVE TO BRING ANY ACTION OR PROCEEDING RELATING TO THIS GUARANTY OR ANY OTHER LOAN DOCUMENT IN THE COURTS OF ANY JURISDICTION.

24.    JURY TRIAL WAIVER. GUARANTORS, AND BY ACCEPTANCE HEREOF, LENDER, HEREBY MUTUALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION, OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS GUARANTY, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATING TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS GUARANTY, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED (I) IN CONNECTION HEREWITH OR

THEREWITH, (II) IN CONNECTION WITH ANY TRANSACTIONS RELATED THERETO OR CONTEMPLATED THREBY, OR (III) THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. GUARANTORS AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT BETWEEN THE PARTIES TO IRROVCABLY WAIVE TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY. GUARANTORS HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF LENDER, INCLUDING LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, AND GUARANTORS ACKNOWLEDGE THAT LENDER HAS, IN PART, BEEN INDUCED TO MAKE THE EXTENSION OF CREDIT EVIDENCED BY THE NOTE IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.

25.    **Service of Process.**  To the fullest extent permitted by applicable law, each Guarantor irrevocably consents to the service of process in the manner provided for notices in Section 26. Nothing in this Guaranty will affect the right of any Guarantor or Lender to serve process in any other manner permitted by law.

26.    **Notice**.  Subject to the other provisions of this Guaranty, any notice, demand, request, or other communication that any party hereto may be required or may desire to give hereunder shall be in writing and (except for financial statements and other informational documents which may be sent by first-class mail, postage prepaid) shall be personally delivered or sent by a recognized overnight delivery service, certified mail, postage prepaid, return receipt requested, with copy by electronic mail to a Guarantor or to Lender, as the case may be, at its addresses set forth below, or at such other address as the party to be served with notice has furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice:

If to Guarantor:    Louis Blouin
376 Gin Lane
Southampton, New York 11968
Email: accounts@ltbholding.com

Mathew Kabatoff
376 Gin Lane, Southampton
New York 11968
Email: accounts@ltbholding.com

Brickchurch Enterprises (BVI) Ltd.
165 Broadway, 23rd Floor
New York, New York 10006
Email: accounts@ltbholding.com

Aberdeen Enterprises (BVI) Ltd.
165 Broadway, 23rd Floor
New York, New York 10006
Email: accounts@ltbholding.com

Aberdeen Enterprises Holdings (BVI) Ltd.
165 Broadway, 23rd Floor
New York, New York 10006
Email: accounts@ltbholding.com

with copy to:    Brett L. Messinger, Esq.
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103
Email: blmessinger@duanemorris.com

If to Lender:    Bay Point Capital Partners II, LP
3050 Peachtree Road NW, Suite 740
Atlanta, Georgia 30305
Attn: Charles Andros
Email: charlesandros@bay-pointadvisors.com

with copy to:    John F. Isbell, Esq.
Law Offices of John F. Isbell LLC
3050 Peachtree Road NW, Suite 740
Atlanta, Georgia 30305
john@jfi-law.com

with copy to:    John C. Allerding, Esq.
Thompson Hine LLP
3560 Lenox Road NW, Suite 1600
Atlanta, Georgia 30326
john.allerding@thompsonhine.com

Any notice, demand, request, or other communication delivered under this section shall be deemed given (27.1) if hand delivered, when delivered; (27.2) if mailed by certified mail, three Business Days after mailing; (27.3) if by nationally recognized overnight courier service, on the next Business Day after delivered to such courier service for delivery on the next Business Day; or (27.4) notwithstanding the foregoing, so long as copy is provided by electronic mail on the same day as provided, with proper and correct address, to a courier service, the United States Post Office, or other nationally recognized overnight delivery service, on the day of transmission of such electronic mail.

The parties hereto may change the address at which they are to receive notices, demands, requests, and other communications hereunder, by written notice, delivered in accordance herewith, to each of the Guarantors, Borrowers, and Lender.

27.    **Joint and Several Liability.** The liability of each Guarantor and any Other Guarantors shall be joint and several. If any Guarantor is an individual and resides in a community property state, then, unless such Guarantor's obligations hereunder are otherwise limited by a specific annotation either on the first page of this Guaranty or following Guarantor's signature below, any married person or registered domestic partner who signs this Guaranty warrants that it is an obligation incurred on behalf of his or her marital community/domestic partnership and agrees that this Guaranty shall bind the marital community/domestic partnership. Lender may join each Guarantor in any suit in connection with the Loan Documents or proceed against any Guarantor in a separate action.

**28.    Powers of Attorney.** The powers of attorney granted by each Guarantor to Lender in this Guaranty shall be unaffected by the disability of the principal so long as any portion of the Loan remains unpaid or unperformed. Lender shall have no obligation to exercise any of the foregoing rights and powers in any event.

**29.    GOVERNING LAW.  THIS GUARANTY, THE NOTE, AND ALL OTHER INSTRUMENTS EVIDENCING AND SECURING THE LOAN WERE NEGOTIATED IN THE STATE OF GEORGIA, AND DELIVERED BY EACH GUARANTOR OR BORROWER, AS APPLICABLE, AND ACCEPTED BY LENDER IN THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND THE UNDERLYING TRANSACTIONS EMBODIED HEREBY.  IN ALL RESPECTS, INCLUDING, WITHOUT LIMITATION, INTERPRETATION, PERFORMANCE, AND ENFORCEMENT OF THIS GUARANTY AND THE OBLIGATIONS ARISING HEREUNDER, THIS GUARANTY SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF GEORGIA APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE AND ANY APPLICABLE LAWS OF THE UNITED STATES OF AMERICA.**

**30.    Disposition of Loan Proceeds.** Lender shall be entitled to honor any request for proceeds of the Loan made by any Borrower and shall have no obligation to see to the proper disposition of such disbursements. Each Guarantor agrees that such Guarantor's obligations hereunder shall not be released or affected by reason of any improper disposition by any Borrower of such disbursements.

**31.    No Modification or Waiver.** No modification or waiver of any of the provisions of this Guaranty shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered by Lender.

**32.    Counterparts.** This Guaranty may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

**33.    Electronic Signatures.** The electronic signature of a party to this Guaranty shall be as valid as an original signature of such party and shall be effective to bind such party to this Guaranty.  The parties agree that any electronically signed document (including this Guaranty) shall be deemed (36.1) to be "written" or "in writing," (36.2) to have been signed, and (36.3) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files. Such paper copies or "printouts," if introduced as evidence in any proceeding, will be admissible as between the parties to the same extent and under the same conditions as other original business records created and maintained in documentary form. Neither Guarantor nor Lender shall contest the admissibility of true and accurate copies of electronically signed documents on the basis of the best evidence rule or as not satisfying the business records exception to the hearsay rule. For purposes hereof, "electronic signature" means a manually signed original signature that is then transmitted via the internet as a "pdf" (portable document format), "tif" or "jpeg" or other replicating image, including without limitation Docusign or similar software, and "electronically signed document" means a document containing an electronic signature.

**34.    Credit Verification.** Each legal entity and individual obligated on this Guaranty, whether as a Guarantor, general partner of a Guarantor or in any other capacity, hereby authorizes Lender, its employees, agents, successors, assigns and Affiliates, to (37.1) obtain credit reports from credit reporting agencies of Lender's choice and check credit references until repayment in full of the Loan, (37.2) obtain other information regarding such Guarantor's deposit accounts, income, credit, employment,

and business relationships in connection with any monitoring, collection, or future transaction concerning the Guaranteed Obligations, including any modification, extension, restatement or renewal of the Guaranteed Obligations, and (37.3) verify such reports and information.

**35.    No Indirect Actions**.    Unless otherwise expressly stated, if a party may not take an action under this Guaranty, then it may not take that action indirectly, or support any other Person in taking that action directly or indirectly. "Taking an action indirectly" means taking an action that is not expressly prohibited for the party but is intended to have substantially the same effects as the prohibited action.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK –
SIGNATURE PAGE TO IMMEDIATELY FOLLOW]

IN WITNESS WHEREOF, the following Guarantor has duly executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

*Louise T Blouin*

LOUISE BLOUIN, an individual

STATE OF _New York_ )
                                        ) SS:
COUNTY OF _New York_ )

On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared Louise Blouin, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her individual capacity. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

WITNESS my hand and official seal.

_____
                                Notary

My Commission expires: _1/5/2024_

(SEAL)

PAUL COTTER
Notary Public, State of New York
No. 01CO6103636
Qualified in Ulster County
Commission Expires Jan. 5, 2024

IN WITNESS WHEREOF, the following Guarantor has duly executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

_(signature)_

MATHEW KABATOFF, an individual

STATE OF _New York_    )
                     )    SS:
COUNTY OF _New York_    )

On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared Mathew Kabatoff, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that the executed the same in her individual _PVC_ capacity. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

WITNESS my hand and official seal.

_(signature)_
_____
Notary

My Commission expires: _1/5/2024_

(SEAL)

PAUL COTTER
Notary Public, State of New York
No. 01CO6103636
Qualified in Ulster County
Commission Expires Jan. 5, 2024

IN WITNESS WHEREOF, the following Guarantor has duly executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

_(signature)_

BRICKCHURCH ENTERPRISES (BVI) LTD., a company organized under the laws of the British Virgin Islands

STATE OF _New York_ )

COUNTY OF _New York_ )  SS:

On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared ~~Louise Blouin~~ _mathew kabatoff_, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that ~~she~~ _his_ executed the same on behalf of Brickchurch Enterprises (BVI) Ltd. in ~~her~~ capacity as the _Director_ of Brickchurch Enterprises (BVI) Ltd. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

WITNESS my hand and official seal.

_(signature)_

Notary

My Commission expires: _1/5/2024_

(SEAL)

PAUL COTTER
Notary Public, State of New York
No. 01CO6103636
Qualified in Ulster County
Commission Expires Jan. 5, 2024

IN WITNESS WHEREOF, the following Guarantor has duly executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

_[signature]_

ABERDEEN ENTERPRISES (BVI) LTD., a company organized under the laws of the British Virgin Islands

STATE OF _New York_ )
                                         )  SS:
COUNTY OF _New York_ )

On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_, personally appeared ~~Louise Blouin~~ _Mathew Kabatoff_, known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that ~~she~~ _his_ executed the same on behalf of Aberdeen Enterprises (BVI) Ltd. in ~~her~~ capacity as the _Director_ of Aberdeen Enterprises (BVI) Ltd. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

WITNESS my hand and official seal.

_[signature]_
_____
Notary

My Commission expires: _1/5/2024_

(SEAL)

PAUL COTTER
Notary Public, State of New York
No. 01CO6103636
Qualified in Ulster County
Commission Expires Jan. 5, 2024

IN WITNESS WHEREOF, the following Guarantor has duly executed and delivered this Guaranty as of the date first written above.

**GUARANTOR:**

_[signature]_

ABERDEEN ENTERPRISES HOLDINGS (BVI) LTD.,
a company organized under the laws of the British
Virgin Islands

STATE OF _New York_          )
                                                     )    SS:
COUNTY OF _New York_        )

On this _9th_ day of _December_, 2022, before me, _Paul Cotter, Notary Public_ personally appeared ~~Louise~~ _mathew Kabatoff_ ~~Blouin,~~ known to me or proven on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that ~~she~~ he executed the same on behalf of Aberdeen Enterprises Holdings (BVI) Ltd. in ~~her~~ his capacity as the _Director_ of Aberdeen Enterprises Holdings (BVI) Ltd. This is an acknowledgement clause. No oath or affirmation was administered to the signor.

WITNESS my hand and official seal.          _P E C_

                                                                    Notary

My Commission expires: _1/5/2024_

(SEAL)

PAUL COTTER
Notary Public, State of New York
No. 01CO6103636
Qualified in Ulster County
Commission Expires Jan. 5, 2024

---