# Exhibit G

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

**WRITTEN CONSENT OF**
**THE SOLE STOCKHOLDER OF**
**ABERDEEN ENTERPRISES, INC.**
**IN LEIU OF MEETING**

**JULY 18, 2023**

Bay Point Capital Partners II, LP (the "***Lender***"), pursuant to the Security Agreement (as defined below) and the irrevocable proxy granted to Lender thereunder by Aberdeen Enterprises (BVI), Ltd., a British Virgin Islands limited company (the "***Stockholder***"), the sole stockholder of Aberdeen Enterprises, Inc., a Delaware corporation (the "***Corporation***"), acting by written consent without a meeting in accordance with Delaware General Corporation Law, hereby adopts the following resolutions in lieu of meeting:

WHEREAS, the Lender issued notices to the Stockholder on June 16, 2023 and July 5, 2023, and notice to the Corporation on June 16, 2023, of, inter alia, the occurrence and continuance of a Specified Event of Default and the application of the Default Rate (as defined in the notices) under and pursuant to certain loan documents, including (i) that certain Loan and Security Agreement, dated as of November 9, 2022, by and between the Lender, on one hand, and Brickchurch Enterprises, Inc. and the Corporation as borrowers, on the other hand; (ii) that certain Promissory Note, dated as of December 9, 2022, by and between the Lender, on one hand, and Brickchurch Enterprises, Inc. and the Corporation as borrowers, on the other hand, (iii) that certain Guaranty Agreement, dated as of December 9, 2022, by and between Louise Blouin, Mathew Kabatoff, Brickchurch Enterprises (BVI) Ltd., the Stockholder, and Aberdeen Enterprises Holdings (BVI) Ltd., as guarantors on one hand, and the Lender, on the other hand; and (iv) that certain Pledge and Security Agreement, dated as of December 9, 2022, by and between the Stockholder, as pledgor on one hand, and the Lender, on the other hand (the "***Security Agreement***"), attached as Exhibit A;

WHEREAS, pursuant to the terms of the Security Agreement, the Stockholder, inter alia, pledged and granted a security interest in all of the shares of common stock of the Corporation as collateral to secure Stockholder's obligations to Lender;

WHEREAS, pursuant to Section 9 of the Security Agreement, the Stockholder granted the Lender "an irrevocable proxy coupled with an interest to exercise as to such Collateral, upon the occurrence of an Event of Default, all rights, powers and remedies of an owner and all of the rights, powers and remedies hereinabove set forth, the proxy herein granted to exist until the Obligations have been satisfied in full";

WHEREAS, the elections and resolutions contained herein are in exercise of Lender's powers described above;

NOW, THEREFORE, BE IT RESOLVED, that the number of directors of the Board of Directors of the Corporation (the "***Board***") be, and it hereby is, fixed at one (1);

FURTHER RESOLVED, that Mathew Kabatoff and all other persons, if any, are hereby

1

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

removed as directors of the Corporation;

FURTHER RESOLVED, that Charles Andros be, and hereby is, elected as a director of the Corporation to serve until the next meeting of the Stockholder (or action by written consent in lieu thereof) for the election of directors, and until his respective successor is duly qualified and elected.

**Enabling Resolution**

FURTHER RESOLVED, that any act taken or done by any officer or agent of the Corporation to facilitate the transactions contemplated by these resolutions is hereby ratified and approved; and the officers and agents of the Corporation are authorized and directed to do such further acts and deeds, and to execute, acknowledge, file, and deliver for and on behalf of the Corporation such other agreements, documents, papers, and instruments as they deem necessary, appropriate, advisable, or required, in order to effectuate the purpose and intent of these resolutions and to resolve, in their individual discretion, all questions of method, form, and detail; and the taking of any such acts and deeds, and the execution and delivery of any such documents, papers, and instruments is hereby ratified and approved.

FURTHER RESOLVED, any copy, facsimile or other reliable reproduction of this action by written consent may be substituted or used in lieu of the original writing for any and all purposes for which the original writing could be used.

FURTHER RESOLVED, this action by written consent shall be filed with the minutes of the proceedings of the Stockholder.

[*Signature page follows*]

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

IN WITNESS WHEREOF, this written consent has been executed on and shall be effective on the date first set forth above.

**BAY POINT CAPITAL PARTNERS II, LP,**
*authorized proxy of Aberdeen Enterprises (BVI),*
*Ltd. pursuant to the Security Agreement*

By:  BAY POINT ADVISORS LLC, its General
Partner

By: _Charles Andros_____
Charles Andros, its Manager

*Signature Page – Stockholder Written Consent (Aberdeen Enterprises, Inc.)*

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

**Exhibit A**

**Security Agreement**

See Attached

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

## PLEDGE AND SECURITY AGREEMENT

This Pledge and Security Agreement (the "Agreement") is entered into as of this December 9, 2022, by and between **ABERDEEN ENTERPRISES (BVI), LTD.**, a British Virgin Islands limited company ("Pledgor") and **BAY POINT CAPITAL PARTNERS II, LP,** a Delaware limited partnership ("Lender").

WHEREAS, BRICKCHURCH ENTERPRISES, INC., a Delaware corporation ("Brickchurch DE"), as debtor and debtor-in possession in the Bankruptcy Case (defined below), and ABERDEEN ENTERPRISES, INC., a Delaware corporation ("Aberdeen DE," and collectively with Brickchurch DE, the "Borrowers," and each a "Borrower") has requested a loan (the "Loan") in the original principal amount of SIXTY TWO MILLION DOLLARS AND NO CENTS ($62,000,000.00) (the "Original Principal Amount") from Lender, and Lender has agreed to make such Loan, subject to approval and applicable order(s) of the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") in the case captioned as *In re Brickchurch Enterprises, Inc.*, Chapter 11 Case No. 22-70914-ast (Bankr. E.D. N.Y.) (the "Bankruptcy Case");

WHEREAS, said Loan is evidenced by that certain Loan and Security Agreement (the "DIP Loan Agreement") and Promissory Note (the "Note") in the Original Principal Amount, each dated of even date herewith, and certain other Loan Documents[1] evidencing, securing, or otherwise relating to the DIP Loan Agreement or Loan;

WHEREAS, Pledgor has entered into that certain Guaranty of even date herewith in favor of Lender, pursuant to which Pledgor absolutely and unconditionally guaranteed, *inter alia,* all of Borrowers' Obligations to Lender under the Loan Documents (the "Guaranty");

WHEREAS, Pledgor is the owner of shares of common stock of Aberdeen DE, as set forth on Schedule A attached hereto (together with any securities received by Pledgor in connection with any merger or reorganization with respect to such shares, the "Shares" or "Collateral");

WHERAS, Pledgor has agreed to pledge the Shares to Lender pursuant to the terms of this Agreement and any other relevant provisions of the other Loan Documents to secure Pledgor's obligations to Lender under the Loan Documents, including without limitation under the Guaranty.

NOW, THEREFORE, for and in consideration of the sum of $10.00 in hand paid and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to secure Pledgor's Obligations under the Guaranty and Borrowers' Obligations under the Note, DIP Loan Agreement, and other Loan Documents, Pledgor hereby agrees, for the benefit of Lender as follows:

1.    Pledge of Stock. Pledgor hereby pledges, mortgages, assigns, transfers, sets over and delivers to Lender and its successors and assigns the Shares as collateral security for the faithful performance of Pledgor's Obligations under the Guaranty and Borrowers' Obligations under the Note, the DIP Loan Agreement, and the other Loan Documents, and hereby grants to Lender a security interest in the Shares listed on Schedule A.

2.    Events of Default. For purposes of this Agreement, any of the following events shall constitute an "Event of Default" hereunder:

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Loan Agreement, the express terms of which are fully incorporated herein by reference.

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

(a)     Failure by Pledgor to perform any of its monetary Obligations under this Agreement, the Guaranty, or any of the other Loan Documents;

(b)     Failure by Pledgor to perform any of its other Obligations under this Agreement, the Guaranty, or any of the other Loan Documents which is not cured within five (5) days after written notice from Lender to Pledgor;

(c)     A monetary Default or Event of Default shall have occurred under the DIP Loan Agreement, the Note, or any of the other Loan Documents;

(d)     A non-monetary Default or Event of Default shall have occurred under the DIP Loan Agreement, the Note, or any of the other Loan Documents and such non-monetary Default shall not have been cured in accordance with the terms of the applicable Loan Document;

(e)     Any person other than Lender shall have taken an action, or failed to take an action, the actual or anticipated effect thereof having a negative impact on the value of the Shares or any of Lender's rights with respect to the Shares;

(f)     Any person other than Lender shall have taken any action, or failed to take an action, the actual or anticipated effect thereof being a transfer or intended transfer of the Shares;

(g)     The occurrence of the Termination Date under the DIP Order; or

(h)     Any representation or warranty made in connection with this Agreement shall prove to have been materially false or misleading in any respect when made.

3.      <u>Collection of Dividends or Distributions and Voting Rights</u>.  During the term of this Agreement, subject to all of Lender's rights, claims, and defenses under this Agreement and any other Loan Document, and so long as no Event of Default has occurred, Pledgor shall have (i) the right to receive and retain any and all cash dividends or distributions paid with respect to the Collateral which are in the ordinary course of business and derived from ordinary operations (but not capital events such as sale of all or any part of the Collateral or a refinancing of the Collateral, the proceeds of which shall be paid to Lender), and (ii) the right to vote all or any portion of the Collateral on all corporate or company questions for all purposes; *provided, however*, that nothing contained herein shall create any right, claim, or defense on the part of Pledgor that is contrary or inconsistent with any other term or condition of any other Loan Documents, including any excess cash flow sweep and any assignment of rents.

4.      <u>Representations and Warranties of Pledgor</u>.  Pledgor warrants and represents that: (a) Pledgor is the legal and beneficial owner of the Collateral; (b) all of the Collateral has been duly and validly issued and is owned by Pledgor free of any liens, charges or encumbrances, except for Lender's security interest hereunder or as otherwise disclosed in the Loan Documents; (c) there are no restrictions upon the voting rights or upon the transfer of any of the Collateral; and (d) the execution, delivery and performance by Pledgor of this Agreement and the exercise by Lender of its rights and remedies hereunder, do not and will not result in the violation of any agreement, indenture or instrument or any license, judgment, decree, order, law, statute or other governmental rule or regulation, including, without limitation, any federal or state laws or regulations governing the sale or exchange of securities; and Pledgor has the full power, authority and legal right to transfer and pledge the Collateral free of any encumbrances.

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

5.     Affirmative Covenants of Pledgor.  Pledgor further covenants and agrees:  (a) from time to time to promptly, after written notice from the Lender, to execute, assign, endorse and deliver to Lender all applications, acceptances, chattel paper, documents, instruments or other evidences of payment of writing constituting or relating to any of the Collateral, and all such other assignments, certificates, supplemental writings, and financing statements and do all other acts or things as Lender may reasonably request in order more fully to evidence and perfect the security interest granted hereby; (b) promptly to furnish Lender with any information or writings which Lender may reasonably request in writing concerning the Collateral; (c) to allow Lender to inspect all records of Pledgor relating to the Collateral at the offices of Pledgor or such other offices as Lender may request in the Atlanta, Georgia metropolitan area, and to make and take away photocopies of such records during normal business hours; (d) promptly to notify Lender of any material change in any fact or circumstance warranted or represented by Pledgor in this Agreement or in any other writing furnished by Pledgor to Lender in connection with the Collateral; (e) promptly to notify Lender of any claim, action or proceeding affecting title to the Collateral or any part thereof, or the security interest granted herein, and, at the request of Lender, appear in and defend, at Pledgor's expense, any such action or proceeding; (f) promptly to pay Lender the amount of all court costs and reasonable attorneys' fees actually incurred by Lender at ordinary hourly rates hereunder in any legal proceeding initiated by Lender to enforce its rights under this Agreement or any other Loan Document; and (g) except to the extent prohibited by applicable law, pay all reasonable expenses incurred in the custody, preservation, use or operation of the Collateral.  Should any covenant, duty or agreement of Pledgor fail to be performed in accordance with its terms hereunder, Lender may, but shall not be obligated to, perform or attempt to perform such covenant, duty or agreement on behalf of Pledgor, and any amount expended by Lender in such performance or attempted performance shall become part of the Note, except to the extent prohibited by applicable law, and, at the request of Lender, or unless otherwise agreed, Pledgor agrees to pay such amount promptly to Lender.

6.     Negative Covenants of Pledgor.   Until the Obligations have been paid in full, Pledgor covenants that, without the prior written consent of Lender, Pledgor will not (a) sell, convey or otherwise alienate any of the Collateral or any interest therein; (b) incur or permit to be incurred any pledge, lien, charge, or encumbrance on, or any security interest whatsoever in or with respect to, any of the Collateral or the proceeds thereof, other than the security interest created hereby and such security interests as to which Lender has given its prior consent in writing; or (c) authorize any direct or indirect change, transfer, sale, conveyance, encumbrance or other alienation of (i) any stock, voting interest, economic interest or otherwise, or (ii) any assets owned by the Company.  Further, for so long as any Obligations under the Loan Documents and/or the Obligations under the Guaranty remain unpaid, Pledgor relinquishes and transfers and assigns to Lender all right, power, and authority to take or effect any of the actions prohibited by the foregoing sentence, and any such purported action shall be null and void and of no further force and effect.

7.     Waiver of Defenses.    To the extent permitted under the applicable law, Pledgor hereby waives any and all defenses, claims and discharges at law, in equity or otherwise, including but not limited to any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available in any action against Pledgor under this Agreement, except the defense of discharge by payment in full.

8.     Interest Adjustments.   If during the term of this Agreement any reclassification, readjustment or other change is declared or made to the Collateral, or any option included within the Collateral is exercised, or both, all new, substituted and additional interests, or other securities, issued in respect of the Collateral by reason of any such change or exercise shall be delivered to and held by Lender under the terms of this Agreement and shall be a part of the Collateral in the same manner as the Collateral originally pledged hereunder without any further agreement by the parties or the execution of any additional documents.

- 3 -

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

9.      Remedies Upon Default.  Upon the occurrence of an Event of Default, and after the expiration of any applicable notice and cure period set forth in the Loan Documents, in addition to any and all other rights and remedies which Lender may then have hereunder, under the UCC or otherwise, Lender may, at its discretion and without notice to Pledgor unless required by applicable law, do any one or more of the following, without liability except to account for property actually received by it, Pledgor having agreed that it is commercially reasonable for Lender to so do any of the following:  (a) transfer to or register in its name or the name of its nominee (if the same has not already been done) any of the Collateral with or without indication of the security interest herein created, and whether or not so transferred or registered, receive the income, dividends and other distributions thereon and hold them or apply them to the Obligations in any order of payment as decided by landlord in its sole and absolute discretion; (b) exercise or cause to be exercised all voting and corporate powers with respect to any of the Collateral so registered or transferred, including all rights to conversion, exchange, subscription or any other rights, privileges or options pertaining to such Collateral, as if the absolute owner thereof; (c) insure any of the Collateral; (d) exchange any of the Collateral for other property upon a reorganization, recapitalization or other readjustment and, in connection therewith, deposit any of the Collateral with any committee or depository upon such terms as Lender may reasonably determine; (e) in its name or in the name of Pledgor demand, sue for, collect or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral and, in connection therewith, endorse notes, checks, drafts, money orders, documents of title or other evidence of payment, shipment or storage in the name of Pledgor; (f) make any compromise or settlement deemed advisable with respect to any of the Collateral; (g) take or release any other Collateral as security for the Obligations; (h) add or release any guarantor, endorser, surety or other party to the Loan Documents; (i) reduce its claim to judgment or foreclose or otherwise enforce the security interest, in whole or in part, by any available judicial or non-judicial procedure; (j) without demand of performance or other demand, advertisement or notice of any kind (except the notice specified below of time and place of public or private sale or as otherwise required by applicable law) to Pledgor or any other person (all of which are, to the extent permitted by law, hereby expressly waived), forthwith realize upon the Collateral or any part thereof, and may forthwith sell or otherwise dispose of or deliver the Collateral or any part thereof or interest therein, in one or more parcels at public or private sale or sales (it being understood and agreed that a sale of all the Collateral at once may adversely affect the price paid for the Collateral), at such prices and on such terms as Lender may determine in its sole and absolute discretion (it being agreed that the sale of any part of the Collateral shall not exhaust Lender's power of sale, but sales may be made from time to time until all of the Collateral has been sold or until all Obligations have been paid in full without any intention to make any distribution thereof), for cash or on credit, or for future delivery without assumption of any credit risk, with the right of Lender or any purchaser to purchase upon any such sale the whole or any part of the Collateral free from any right or equity of redemption in Pledgor, which right or equity is hereby expressly waived and released, and at any such sale it shall not be necessary to exhibit the Collateral; (k) apply by appropriate judicial proceedings for appointment of a receiver for the Collateral, or any part thereof, and Pledgor hereby consents to any such appointment; (l) at its reasonable discretion, retain the Collateral in satisfaction of the Obligations whenever the circumstances are such that Lender is entitled to do so under the UCC or otherwise; (m) exercise any and all other rights it may have thereunder or under the UCC or otherwise; (n) buy the Collateral at any public sale; and (o) buy the Collateral at any private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations. Pledgor hereby grants to Lender an irrevocable proxy coupled with an interest to exercise as to such Collateral, upon the occurrence of an Event of Default, all rights, powers and remedies of an owner and all of the rights, powers and remedies hereinabove set forth, the proxy herein granted to exist until the Obligations have been satisfied in full. The proceeds of any disposition of the Collateral or other action by the Lender shall be applied as follows:

(i)      First, to those reasonable costs and expenses related to Lender's exercising of its rights hereunder, including attorneys' fees and legal expenses and costs;

- 4 -

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

(ii)     Then, to the satisfaction of the Obligations arising under the other Loan Documents in the order of application as set forth in such Loan Documents;

(iii)    Then, to the payment of any other amounts required by applicable law; and

(iv)    Then, to Pledgor to the extent of any surplus proceeds.

In addition to the rights and remedies granted to Lender in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Loan and/or Obligations arising under the Loan Documents, Lender shall have all rights and remedies of a secured party under the UCC. Lender will be under no duty to exercise or to withhold the exercise of any of the rights, powers, privileges and options expressly or implicitly granted to Lender in this Agreement, and shall not be responsible for any failure to do so or delay in so doing.

10.    Laws and Agreements. Pledgor agrees that there may be legal and/or practical restrictions or limitations affecting Lender in attempting to dispose of certain portions of the Collateral and enforce its rights hereunder, because of the Securities Act of 1933, as amended, or any other laws or regulations. For these reasons, Lender is hereby authorized by Pledgor, but not obligated, in the event of the occurrence of an Event of Default, to sell all or any part of the Collateral at a private sale, subject to investment letter or in any other manner which will not require the Collateral, or any part thereof, to be registered in accordance with any laws or regulations, including but not limited to the Securities Act of 1933, as amended, or the rules and regulations promulgated thereunder, at the best price reasonably obtainable by Lender at such private sale of other disposition in the manner mentioned above. Lender is also hereby authorized by Pledgor, but not obligated, to take such actions, give such notices, obtain such consents and do such other things as Lender may deem reasonably necessary or appropriate in the event of sale or disposition of any of the Collateral. Pledgor understands that Lender may in its reasonable discretion approach a restricted number of potential purchasers and that a sale under such circumstances may yield a lower price for the Collateral, or any part or parts thereof, than would otherwise be obtainable if same were either offered to a large number of potential purchasers, or registered and sold in the open market. Pledgor agrees (i) that at such private sale or sales, Lender shall have the right to rely upon the advice and opinion of any national brokerage firm or a national securities exchange as to the best price reasonably obtainable upon such private sale thereof, and that such reliance shall be conclusive evidence that Lender handled such matter in a commercially reasonable manner under applicable law, and (ii) that Lender has no obligation to delay sale of any Collateral to permit the issuer thereof to register it for public sale under any applicable federal or state securities laws, and (iii) that Lender shall not be liable or accountable to Pledgor, nor shall the Obligations be subject to any reduction by reason of the fact that the proceeds of sale subject to any such limitation or restriction are less than otherwise might have been obtained.

11.    Notification of Sale. Reasonable written notification of the time and place of any public sale of the Collateral, or reasonable written notification of the time after which any private sale or other intended disposition of the Collateral is to be made, shall be sent to Pledgor and to any other person entitled under the UCC to notice. It is agreed that notice sent or given not less than ten (10) calendar days prior to the taking of the action to which the notice relates is reasonable notification and notice for the purposes of this paragraph.

12.    Term. This Agreement shall remain in full force and effect until the Obligations are extinguished, at which time this Agreement shall terminate and Lender shall deliver to Pledgor, at Pledgor's expense, such of the Collateral as shall not have been sold or otherwise applied pursuant to this Agreement.

13.    Indemnification. Pledgor hereby agrees to indemnify and to hold Lender harmless from and against any loss, claim, demand or expense (including all reasonable attorney's fees and other legal

- 5 -

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

fees and expenses) by reason, or in any manner related to, the Collateral, including any such claim as may arise by reason of any alleged breach of warranty concerning the Collateral, by reason of the failure of Pledgor to comply with any state or federal statute, rule, regulation, order or decree, or by reason of Lender's efforts to enforce payment of the Obligations, including expenses incurred in satisfying any applicable securities and banking laws, except to the extent that such loss, claim, demand or expense arises out of the negligence or willful misconduct of Lender.

14.      Duties of Lender.  Lender's duty with respect to any Collateral now or hereafter in the possession of Lender is solely to use reasonable care in the custody and preservation of the Collateral. Lender shall be deemed to have exercised reasonable care in the custody and preservation in the Collateral if the Collateral is accorded treatment substantially equal to that which Lender accords its own property, it being understood that Lender shall not have any responsibility for ascertaining or taking action with respect to fixing or preserving rights against prior parties to the Collateral, calls, conversions, exchanges, maturities, tenders or other matters relative to any Collateral or for informing Pledgor of such matters whether or not Lender has or is deemed to have any knowledge of such matters.  Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties or to protect, perfect, preserve or maintain any security interest given to secure the Collateral.  Lender shall not be liable for its failure to use due diligence in the collection of the Obligations, or any part thereof, or for its failure to give notice to Pledgor of default in the payment of the Obligations, or any part thereof, or in the payment of or upon any security, whether pledged hereunder or otherwise.  Lender shall not be liable for a decline in the market value of the Collateral.

15.      Expenses.  Pledgor shall, within five (5) days of written demand, pay to Lender the amount of any and all expenses, including Lender's reasonable attorney fees, expert fees and costs, agent fees and costs, and other legal costs and expenses, which Lender may incur in connection with (i) the custody or preservation of, or the sale of, collection from, or other realization upon, any of the Collateral, (ii) the exercise or enforcement of any of the rights of Lender hereunder.

16.      Security Interest Absolute.  All rights of Lender and the pledge and security interest hereunder, and all obligations of Pledgor hereunder, shall be absolute and unconditional in all respects and shall not be released, diminished, impaired, or affected for any reason, including without limitation the occurrence of any one or more of the following events:

(a)      The taking or accepting of any other security or assurance for the Loan Documents;

(b)      Any neglect, delay, omission, failure, or refusal of Lender to take or prosecute any action in connection with this Agreement or the Loan Documents;

(c)      The insolvency, bankruptcy, or lack or authority of Pledgor; or

(d)      Any other circumstance which might otherwise constitute a defense available to a discharge of Pledgor in respect of the obligations of Pledgor in respect of this Agreement.

17.      Successors and Assigns.   This Agreement shall be binding upon Pledgor and his/her/its administrators, executors, successors and assigns, and shall inure to the benefit of Lender and its heirs, successors and assigns.

18.      Construction and Applicable Law.   Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Agreement shall be held to be prohibited or invalid under any applicable law, such provision shall

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

19.    <u>Further Assurances</u>.  The parties further agree that each will cooperate with the other and will, upon the other's request, execute and deliver, or cause to be executed and delivered, all such other instruments and documents, and will take all such other action as the other party may reasonably request from time to time in order to carry out the provisions and purposes hereof.

20.    <u>Service of Process</u>:  To the fullest extent permitted by applicable law, Pledgor irrevocably consents to the service of process in the manner provided for notices in Section 21.  Nothing in this Agreement will affect the right of Pledgor or Lender to serve process in any other manner permitted by law.

21.    <u>Notices</u>.  Subject to the other provisions of this Agreement, any notice, demand, request, or other communication that any party hereto may be required or may desire to give hereunder shall be in writing and (except for financial statements and other informational documents which may be sent by first-class mail, postage prepaid) shall be personally delivered or sent by a recognized overnight delivery service, certified mail, postage prepaid, return receipt requested, with copy by electronic mail to Pledgor or to Lender, as the case may be, at its addresses set forth below, or at such other address as the party to be served with notice has furnished in writing to the party seeking or desiring to serve notice as a place for the service of notice:

| | |
|---|---|
| If to Lender: | Bay Point Capital Partners II, LP<br>3050 Peachtree Road NW, Suite 740<br>Atlanta, Georgia 30305<br>Attn:  Charles Andros<br>Email:  charlesandros@bay-pointadvisors.com |
| with copy to: | John F. Isbell, Esq.<br>Law Offices of John F. Isbell LLC<br>3050 Peachtree Road NW, Suite 740<br>Atlanta, Georgia 30305<br>john@jfi-law.com |
| with copy to | John C. Allerding, Esq.<br>Thompson Hine LLP<br>3560 Lenox Road NW, Suite 1600<br>Atlanta, Georgia 30326<br>john.allerding@thompsonhine.com |
| If to Pledgor: | Aberdeen Enterprises Ltd.<br>Attn: Louise Blouin<br>165 Broadway 23rd Floor<br>New York, NY 10006<br>Email:  lt@ltbholding.com |
| with a copy to: | Brett L Messinger<br>Duane Morris LLP<br>30 South 17th Street<br>Philadelphia, PA 19103<br>Email:  blmessinger@duanemorris.com |

Pledge and Security Agreement – Aberdeen Enterprises Ltd.

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

Any notice, demand, request, or other communication delivered under this section shall be deemed given (a) if hand delivered, when delivered; (b) if mailed by certified mail, three Business Days after mailing; (c) if by nationally recognized overnight courier service, on the next Business Day after delivered to such courier service for delivery on the next Business Day; or (d) notwithstanding the foregoing, so long as copy is provided by electronic mail on the same day as provided, with proper and correct address, to a courier service, the United States Post Office, or other nationally recognized overnight delivery service, on the day of transmission of such electronic mail.

The parties hereto may change the address at which they are to receive notices, demands, requests, and other communications hereunder, by written notice, delivered in accordance herewith, to each of the Pledgor and Lender.

22.    Paragraph Headings. The paragraph headings herein are for convenience of reference only and shall not affect in any way the interpretation of any of the provisions hereof.

23.    Counterparts. This Agreement may be executed in two or more counterparts, and it shall not be necessary that any one of the counterparts be executed by all of the parties hereto. Each fully or partially executed counterpart shall be deemed an original, but all of such counterparts taken together shall constitute one and the same instrument. Receipt of an executed copy hereof by facsimile or electronic transmission via email attachment shall constitute receipt of an original.

24.    Electronic Signatures. The electronic signature of a party to this Agreement shall be as valid as an original signature of such party and shall be effective to bind such party to this Agreement. The parties agree that any electronically signed document (including this Agreement) shall be deemed (i) to be "written" or "in writing," (ii) to have been signed, and (iii) to constitute a record established and maintained in the ordinary course of business and an original written record when printed from electronic files. Such paper copies or "printouts," if introduced as evidence in any proceeding, will be admissible as between the parties to the same extent and under the same conditions as other original business records created and maintained in documentary form. Neither Pledgor nor Lender shall contest the admissibility of true and accurate copies of electronically signed documents on the basis of the best evidence rule or as not satisfying the business records exception to the hearsay rule. For purposes hereof, "electronic signature" means a manually signed original signature that is then transmitted via the internet as a "pdf" (portable document format), "tif" or "jpeg" or other replicating image, including without limitation Docusign or similar software, and "electronically signed document" means a document containing an electronic signature.

25.    **JURISDICTION AND VENUE.** **THE VALIDITY, INTERPRETATION, ENFORCEMENT AND EFFECT OF THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED ACCORDING TO THE LAWS OF, THE STATE OF GEORGIA. BY EXECUTION AND DELIVERY OF THIS GUARANTY, PLEDGOR EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, TO THE PERSONAL JURISDICTION OF THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, THE UNITED STATES DISTRICT COURT FOR THE NORHTERN DISTRICT OF GEORGIA, AND EACH AND EVERY STATE COURT WITHIN THE TERRITORIAL JURISDICTION OF ANY OF THE AFOREMENTIONED COURTS IN ANY LEGAL ACTION OR PROCEEDING (EACH A "PROCEEDING") ARISING UNDER, OUT OF, OR IN ANY MANNER RELATING TO THIS AGREEMENT, THE NOTE, THE LOAN AGREEMENT, OR THE EXTENSION OF CREDIT EVIDENCED THEREBY, AND ACKNOWLEDGES THAT THE NEGOTIATION, EXECUTION, AND DELIVERY OF THIS GUARANTY CONSTITUTE SUFFICIENT CONTACTS WITH THE AFOREMENTIONED COURTS FOR PURPOSES OF INDEPENDENTLY CONFERRING SUCH JURISDICTION.**

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

PLEDGOR FURTHER AGREES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THAT THE EXCLUSIVE VENUES OF ANY SUCH LEGAL ACTION OR PROCEEDING ARISING OUT OF OR IN ANY MANNER RELATING TO THIS PLEDGOR SHALL BE IN THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK OR SUCH OTHER OF THE AFOREMENTIONED COURTS AS LENDER, IN ITS SOLE OR ABSOLUTE DISCRETION, SHALL CHOOSE. PLEDGOR IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, (I) ANY OBJECTION IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDING BROUGHT IN ANY SUCH COURT; (II) ANY CLAIM THAT ANY PROCEEDING HAS BEEN BROUGHT IN AN INCONVENIENT FORUM, AND (III) THE RIGHT TO OBJECT, WITH RESPECT TO SUCH PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER PLEDGOR. NOTWITHSTANDING THE FOREGOING, FINAL JUDGMENT IN ANY SUCH PROCEEDING BROUGHT IN ANY SUCH COURT SHALL BE CONCLUSIVE AND BINDING UPON PLEDGOR AND MAY BE ENFORCED IN ANY COURT TO WHOSE JURISDICTION PLEDGOR IS SUBJECT, BY A SUIT UPON SUCH JUDGMENT PROVIDED THAT SERVICE OF PROCESS IS EFFECTED UPON PLEDGOR IN A MANNER SPECIFIED IN THIS AGREEMENT OR AS OTHERWISE PERMITTED BY APPLICABLE LAW.

26.    <u>JURY TRIAL WAIVER</u>.    PLEDGOR, AND BY ACCEPTANCE HEREOF, LENDER, HEREBY MUTUALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT TO A TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION, OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS PLEDGE, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR THEREWITH, OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATING TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS PLEDGE, ANY OTHER LOAN DOCUMENT, OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED (I) IN CONNECTION HEREWITH OR THEREWITH, (II) IN CONNECTION WITH ANY TRANSACTIONS RELATED THERETO OR CONTEMPLATED THREBY, OR (III) THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE. PLEDGOR AND LENDER AGREE THAT ANY OF THEM MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED AGREEMENT BETWEEN THE PARTIES TO IRROVCABLY WAIVE TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN THEM SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY. PLEDGOR HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF LENDER, INCLUDING LENDER'S COUNSEL, HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LENDER WOULD NOT, IN THE EVENT OF SUCH DISPUTE OR CONTROVERSY, SEEK TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH, AND PLEDGOR ACKNOWLEDGES THAT LENDER HAS, IN PART, BEEN INDUCED TO MAKE THE EXTENSION OF CREDIT EVIDENCED BY THE NOTE IN RELIANCE ON THE PROVISIONS OF THIS PARAGRAPH.

27.    <u>No Modification or Waiver</u>. No modification or waiver of any of the provisions of this Agreement shall be binding upon Lender except as expressly set forth in a writing duly signed and delivered by Lender.

Pledge and Security Agreement – Aberdeen Enterprises Ltd.

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

28.     <u>No Indirect Actions</u>.  Unless otherwise expressly stated, if a party may not take an action under this Guaranty, then it may not take that action indirectly, or support any other Person in taking that action directly or indirectly. "Taking an action indirectly" means taking an action that is not expressly prohibited for the party but is intended to have substantially the same effects as the prohibited action.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK –
SIGNATURE PAGE TO IMMEDIATELY FOLLOW]

Pledge and Security Agreement – Aberdeen Enterprises Ltd.

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

**IN WITNESS WHEREOF**, Pledgor has signed, sealed and delivered this Agreement, on the day and year first above written.

**PLEDGOR:**

**ABERDEEN ENTERPRISES (BVI), LTD.**
a British Virgin Islands limited company

By: _Louise T Blouin_ (SEAL)
LOUISE BLOUIN, Designated to Act by Resolution

**LENDER:**

**BAY POINT CAPITAL PARTNERS II, LP,**
a Delaware limited partnership

By:  BAY POINT ADVISORS, LLC,
its General Partner

By: _____ (SEAL)
Charles Andros, its Authorized Signatory

- 11 -

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

**IN WITNESS WHEREOF**, Pledgor has signed, sealed and delivered this Agreement, on the day and year first above written.

PLEDGOR:

ABERDEEN ENTERPRISES (BVI), LTD.
a British Virgin Islands limited company

By:_____(SEAL)
      LOUISE BLOUIN, Designated to Act by Resolution

LENDER:

BAY POINT CAPITAL PARTNERS II, LP,
a Delaware limited partnership

By:  BAY POINT ADVISORS, LLC,
     its General Partner

     By: _____(SEAL)
        Charles Andros, its Authorized Signatory

DocuSign Envelope ID: 3835684C-0A21-44DC-8220-75BA517C6C1E

## SCHEDULE "A" TO PLEDGE AND SECURITY AGREEMENT

### DESCRIPTION OF COLLATERAL

For purposes of this Agreement, the term "Collateral" shall mean the following items of property that are owned by Pledgor:

| Issuer | Certificate No. | Class of Shares | No. of Shares Pledged | % of Shares Hold by Pledgor Pledged | % of Total Interests that Pledgors Pledged Interest Represents |
|---|---|---|---|---|---|
| Aberdeen Enterprises, Inc. | 1 | Ordinary Share | 1 | 100.00% | 100.00% |

Pledge and Security Agreement – Aberdeen Enterprises Ltd.