| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | Hearing Date: |
| EASTERN DISTRICT OF NEW YORK | Hearing Time: |

-------------------------------------------------------------X
In re:                                              Chapter 11

    BRICKCHURCH ENTERPRISES, INC.,        Case No. 22-70914-ast

    Debtor
-------------------------------------------------------------X
In re:                                              Chapter 11

    ABERDEEN ENTERPRISES, INC.,           Case No. 23-72834-ast

    Debtor.
-------------------------------------------------------------X

**ABERDEEN ENTERPRISES (BVI) LTD. AND BRICKCHURCH ENTERPRISES (BVI) LTD.S' OPPOSITION TO BAYPOINT CAPITAL PARTNERS II, LP'S MOTION PURSUANT TO 11 U.S.C. SECTION 105**

    Aberdeen Enterprises (BVI) LTD, ("AEL") and Brickchurch Enterprises (BVI) LTD. ("BEL" together "Equity") as and for their opposition ("Opposition") to Bay Point Capital Partners II, LP's ("Bay Point") Motion for Relief pursuant to 11 U.S.C. Section 105 (the "Motion"), respectfully represents as follows:

1. When the undersigned first read the Motion and the text, I was amazed that one of the principals of my clients would sent such a text and made a number of assumptions. I have since learned the danger in making assumptions. At the outset, the undersigned wants to make it crystal clear that the undersigned has repeatedly advised Ms, Blouin and opposing counsel that the clients should not be communicating directly given the strong feelings in this case and to avoid exactly this type of situation. This firm does not represent Ms. Blouin in her individual capacity and submits this Opposition on behalf of its clients that are impacted by the real reason for the filing of this Motion.

2. As soon as the undersigned came into these cases, the clients were instructed that all communications were to go through counsel. That was an express condition of the settlement and the undersigned reiterated it several times to all parties. For some reason, Mr. Aldridge continued to copy Ms. Blouin and Mr. Kabatoff, on emails even after she asked him to stop several times. His emails often upset her, as I believed they were designed to. In addition, the texts and call logs demonstrate that Bay Point's principal continued to interact with Ms. Blouin on a daily basis, including multiple calls and texts *after* the offensive text, throughout that day. Here is the call log for that day:



3. It is also clear that he initiated many of the interactions. Thus, it is somewhat disingenuous that they ask for her to have no further involvement in the process when

they are the ones that have disregarded my instructions and contact her without my knowledge. Moreover, when one actually sees a few more of the texts between the two of them it becomes apparent that the text was in response to Mr. Andros's comments about being a mafia type person.  The afternoon before the text, he quipped:



4. The Mafia reference was in response to prior texts and conversations where in Mr. Andros had mentioned to Ms. Blouin that prior mortgagors who had opposed him had died from heart attacks:



5. The genesis of this banter came from the fact that Ms. Blouin had repeatedly told Mr. Androus that she felt bullied by him:



6. Thus, as inappropriate as the Godfather text may seem, it was in fact, not a threat against him, but a reference to what she thought he was doing to intimidate her. In the context of the other texts, this now makes sense. That counsel for Bay Point did not

investigate further before making accusations that they knew would end up in the press is sanctionable.

7.  The timing of what transpired over the last few days is also highly suspect and quite unprofessional. Immediately after the hearing on Wednesday, the undersigned reached out to Mr. Alldering. I told him I would revise the Bid Procedures and get them to him that evening and to set up a call the next day. He had advised us that he would be away the entire weekend and was leaving Friday afternoon, so we had a very limited window to get things done. He advised that he was not available until 3:00 pm on Thursday.

8.  I worked late and sent the red-lined order as promised that evening. The entire email chain on these issues is annexed hereto as Exhibit "A". The marked up Bid Procedures Order is annexed hereto as Exhibit "B". The text at the heart of this dispute was sent at 8:12 a.m., At 2:09 p.m., almost six hours after this "threat" was made, Mr. Alldering sent me an email that stated, "Avrum, I haven't had a chance to make it through your proposed modified bid procedures yet and want to do so before our call. Are you available at 8:00 pm tonight?"

9.  Though, that meant changing plans at the last minute, understanding the short time period, I accommodated. No mention was made of what had transpired or the real reason for the postponement. The Motion was then filed shortly before our 8:00 p.m. call, and, of course Mr. Alldering refused to have that call and has not responded to attempts to reschedule it.

10. As was stated in my responsive e-mail:

    I will not defend the bad taste of this,but I will point out a few things. Despite your insistence that she not be involved at all, and my instructions for her not to contact anyone on your side, as well as my direction to all of you to go through me, your client has been in constant contact with her. The text you

> attach appears to be part of an extensive chain between your client and her over showings.  So it would appear that your client did not appear threatened and you all seized upon this to reverse your losses in court the other day.  I understand they spent several hours today discussing a new broker and she was very pleased with Charles suggestion.  John you also continued to copy her despite multiple emails from her directing you not to. It is clear you have been trying to goad her. If you were so concerned why were we not advised of the incident right away instead of sandbagged?.  Instead John wasted my day by scheduling and rescheduling meetings with me.  It will be interesting to see all of the communications between them today and on prior days to get a true picture of what was going on.

11. The subsequent review of the other texts bore out that suspicion. The simple fact is that Bay Point has been attempting to blow up this sale process to get the Debtors and this firm's clients to agree not to object to its claim. An issue that was expressly reserved in the settlement put on the record. Once this Court directed the parties to negotiate in good faith and come to a resolution by Monday, or the issue of control would be decided, they had no intention of agreeing to anything.  The undersigned gave them everything they wanted in the Bid Procedures (and what the Court directed) and they would not even review it.  The undersigned came up with several proposals to resolve the plan issues, again, they would not review it. Mr. Nash send them the draft Plan Outline that resolved all their issues and they have not responded at all.

12. Instead, they seized upon an isolated statement in a long text chain to project Ms. Blouin as a threat, where she, rightly or wrongly, perceived herself as the victim, after Bay Point's principal boasted that two of his prior borrowers had died from heart attacks and joked about being in the mafia, the text of the intimidation from the Godfather is put in perspective.  This motion was a distraction to poison the well and should be taken as such.

WHEREFORE, AEL and BEL respectfully request that this court (i) deny the Motion; and (ii) grant such other and further relief as this Court deems just and proper.

Dated:  September15, 2023  
        Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By: */s/ Avrum J. Rosen*  
Avrum J. Rosen, Esq.  
38 New Street  
Huntington, New York 11743  
(631) 423 8527  
arosen@ajrlawny.com