**BIDDING PROCEDURES**

These terms and conditions of sale (the "Bid Procedures") are being promulgated in connection with that certain *Joint Chapter 11 Liquidating Plan* (the "Joint Plan") filed by Debtors Aberdeen Enterprises, Inc. and Brickchurch Enterprises, Inc. in the jointly administered bankruptcy cases styled as *In re Aberdeen Enterprises, Inc.* (Case No. 23-72834-AST (Lead Case)) and *In re Brickchurch Enterprises, Inc.* (Case No. 22-70914-AST) pending before the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Joint Plan.

1. **Details of the Sale**

    a. The following properties (collectively, the "Properties" and each being a "Property") are being sold (collectively and individually, the "Sale") pursuant to these Bidding Procedures, subject to the approval of the same by the Bankruptcy Court:

        i. 366 Gin Lane, Southampton, New York 11968 (the "Brickchurch Property"), which is owned by Debtor Brickchurch Enterprises, Inc.; and

        ii. 376 Gin Lane, Southampton, New York 11968 (the "Aberdeen Property"), which is owned by Debtor Aberdeen Enterprises, Inc.

    b. The Properties shall be offered for sale in bulk and individually through the Sale Process. Bidders may make pre-Auction, Private Sale offers on one or both Properties and may bid on one or both Properties at the Auction.

    c. Information regarding the Properties can be obtained by contacting the Broker. The identity of the Broker can be obtained by contacting the following counsel for the Debtors, respectively:

        Counsel for Aberdeen Enterprises, Inc.:

        Kevin J. Nash
        Goldberg Weprin Finkel Goldstein LLP
        125 Park Avenue, 12th Floor
        New York, New York 10017
        Phone: 212.301.3944
        Email:  knash@gwfglaw.com

        Counsel for Brickchurch Enterprises, Inc.:

        Camisha L. Simmons
        Simmons Legal PLLC

6060 N. Central Expressway, Suite 500<br>
Dallas, Texas 75206<br>
Phone: 917.721.3833<br>
Email: camisha@simmonslegal.solutions

2. **Overview of the Sale Process**

   a. <u>Authority</u>. The Sale Process shall be run by Mathew Kabatoff ("<u>Kabatoff</u>") and Bay Point Capital Partners II, LP ("<u>Bay Point</u>," and collectively with Kabatoff, the "<u>Decision Makers</u>," each a "<u>Decision Maker</u>"). Each act and every decision to be made by Debtors under these Bid Procedures shall be made at the direction, and shall be completely consistent with such direction, of the Decision Makers, such direction being valid and enforceable only upon the mutual agreement of both Decision Makers. For the avoidance of doubt, Louise Blouin ("<u>Blouin</u>") shall have no authority to act with respect to either of the Debtors and shall completely refrain from taking part in, or interfering with, the Sale Process or any aspect thereof.

   b. <u>Broker</u>. The Debtors shall engage a reputable real estate broker (the "<u>Broker</u>") to market the Properties for both a Private Sale and Auction consistent with the terms of these Bid Procedures. The cost of the Broker, with respect to a particular Property, shall be paid out of the Gross Sale Proceeds realized from the Sale of such Property. The Broker shall take direction during the Auction Process exclusively from the Debtors.

   c. <u>Private Sale</u>. Prior to and including November 5, 2023, the Debtors and the Broker may solicit and accept offers (each, a "<u>Private Sale Offer</u>"), subject to any applicable agreements between Bay Point and the Debtors, for a private sale of one or both Properties (each, a "<u>Private Sale</u>").

   d. <u>Auction</u>. Contemporaneously with the solicitation of Private Sale Offers, the Broker, at the direction of the Debtors, shall market the Properties for a Sale pursuant to an in-person auction to be held on November 16, 2023 at 10:00 am (Eastern) at the offices of Thompson Hine LLP, 300 Madison Avenue, 27th Floor, New York, New York 10017-6232 (the "<u>Auction</u>").

3. **The Private Sale Process.** The solicitation and acceptance of Private Sale Offers shall be conducted according to the following terms and conditions, processes and procedures (the "<u>Private Sale Process</u>"):

   a. <u>Qualified Offers</u>. Only a Qualified Offeror may submit a Private Sale Offer. To become a "<u>Qualified Offeror</u>," the Debtors, in their sole and absolute discretion, must determine that the offeror is financially able to consummate the proposed Private Sale pursuant to the terms of the offer submitted by such offeror.

   b. <u>Qualified Offers</u>. Each offer submitted by a Qualified Offeror that meets the following requirements shall be deemed a "<u>Qualified Offer</u>:"

      i.      Each Qualified Offer shall be stated as an unqualified offer to purchase the Properties (or respective Property) in an amount of Cash (the "Purchase Price"), without any contingencies other than as expressly permitted hereby, subject only to acceptance by the Debtors (or the respective Debtor) and the entry of an Approval Order by the Bankruptcy Court;

      ii.     To the extent that any part of a Qualified Offer is being financed by a person other than the Qualified Offeror, such financing must be, in the sole discretion of the Debtors, committed financing from a financially sound financier and be subject only to such contingencies that Debtors believe to be reasonable and to not to cause unnecessary risk to the Sale Process;

      iii.    Each Qualified Offer shall be accompanied by an asset purchase agreement, executed by the Qualified Offeror, that encompasses the terms of the Qualified Offer, which shall be wholly-consistent with these Bid Procedures and shall include the requirement that the Qualified Offeror make the Good Faith Deposit associated with the Qualified Offer within one (1) Business Day after acceptance of the same by the respective Debtor, and which shall state that the acceptance of such asset purchase agreement by the respective Debtor through execution of the same shall make such asset purchase agreement irrevocable by the Qualified Offeror, provided that such asset purchase agreement shall remain subject to the entry of an Approval Order (in such form and as the same may be modified by agreement of the Qualified Bidder and the respective Debtor, a "Proposed APA");

c.    Qualified Offer Deadline. All Qualified Offers must be submitted to the Debtors on or before 11:59 pm (Eastern) November 5, 2023 (the "Offer Deadline").

d.    Offer Letters. All Qualified Offers shall be in the form of an offer letter (each, an "Offer Letter"). The Offer Letter shall state:

      i.      that such offeror offers to purchase the subject Property (or Properties) upon the terms and conditions set forth in an attached clean executed asset purchase agreement (and electronic version in Word format) as well as, in the case a Stalking Horse is selected, an attached version of such asset purchase agreement redlined against the Stalking Horse APA (also an electronic version in Word format) together with all exhibits and schedules, including terms relating to price, the time of Closing, and an acknowledgement that "time is of the essence" with respect to such Closing (the "Proposed Offer APA");

      ii.     that such offeror shall remit a Good Faith Deposit within one (1) Business Day of the offeror's receipt of notice that its Qualified Offer has been

        accepted by the Debtor (or the respective Debtor in the case of a Private Sale of a single Property);

    iii.    that such offeror is prepared to consummate the Private Sale within one (1) day of the entry of an Approval Order;

    iv.    that, in the event such offer becomes a Qualified Offer is accepted by the Debtors, such Qualified Offer shall be irrevocable until the closing of the Private Sale, the denial of the Debtors' request for an Approval Order, or the written agreement of the Debtors to permit such Qualified Offer to be withdrawn; and

    v.    that the offeror consents to the jurisdiction of the Bankruptcy Court as to all matters relating to the Sale Process, the offer, and the proposed Private Sale.

e.    <u>Good Faith Deposit</u>. Within one (1) Business Day of either Debtor's acceptance of a Qualified Offer, the Qualified Offeror shall deposit into escrow with the Escrow Agent an amount equal to the greater of (a) five percent (5.00%) of the Purchase Price; and (b) Five Million Dollars ($5,000,000.00) (the greater of such amounts being a "<u>Good Faith Deposit</u>").

f.    <u>Determination of Qualified Offer Status</u>. Upon determination that any Private Sale Offer is not a Qualified Offer, the Debtors, or the Broker at the direction of the Debtors, shall notify the offeror of such determination forthwith and shall provide such offeror with the basis for such determination.

g.    <u>Acceptance of a Qualified Offer</u>. At any point prior to the scheduled date of the Auction, the Debtors may accept a Qualified Offer for the purchase of the Properties, and each respective Debtor may accept a Qualified Offer for the purchase of the Property owned by such Debtor, through a Private Sale (each, an "<u>Acceptance Decision</u>"). In determining whether to accept a Qualified Offer, the Debtors shall exercise their reasonable business judgment, and may, but are not required to, consult with any significant constituency or Creditors or other stakeholders. For the avoidance of doubt, the Debtors may not accept a Qualified Offer unless such Qualified Bid is greater than the amount of Bay Point's Secured Claim (without consideration of any objection thereto that may be filed) unless Bay Point shall consent to the same. Upon an Acceptance Decision, the Qualified Offeror that submitted the Qualified Offer that is the subject of the Acceptance Decision shall be deemed a "<u>Successful Offeror</u>") and such Qualified Offer shall be deemed an "<u>Accepted Offer</u>"). The proposed Sale set forth in an Accepted Offer shall be an "<u>Accepted Private Sale</u>."

4.    **The Auction Process.** The solicitation and acceptance of bids in connection with the Auction shall be conducted according to the following terms and conditions, processes and procedures (the "<u>Auction Process</u>"):

a. <u>Qualified Offers</u>.  Only a Qualified Bidder may submit a Qualified Bid.  To become a "<u>Qualified Bidder</u>," the Debtors, in their sole and absolute discretion, must determine that the bidder is financially able to consummate the proposed Sale pursuant to the terms of the bid submitted by such offeror.

b. <u>Qualified Offers</u>.  Each bid submitted by a Qualified Bidder that meets the following requirements shall be deemed a "<u>Qualified Bid</u>:"

   i. Each Qualified Bid shall be stated as an unqualified offer to purchase the Properties (or respective Property) in an amount of Cash (the "<u>Purchase Price</u>"), without any contingencies other than as expressly permitted hereby, subject only to being deemed the highest and best Qualified Bid by the Auctioneer and the entry of an Approval Order by the Bankruptcy Court;

   ii. To the extent that any part of a Qualified Bid is being financed by a person other than the Qualified Offeror, such financing must be, in the sole discretion of the Debtors, committed financing from a financially sound financier and shall not be subject to any contingencies;

   iii. Each Qualified Bid shall be accompanied by an asset purchase agreement, executed by the Qualified Bidder, that encompasses the terms of the Qualified Bid, which shall be wholly-consistent with these Bid Procedures, and which shall state that the acceptance of such asset purchase agreement by the Debtor(s) through execution of the same shall make such asset purchase agreement irrevocable by the Qualified Bidder, provided that such asset purchase agreement shall remain subject to the entry of an Approval Order (in such form and as the same may be modified by agreement of the Qualified Bidder and the respective Debtor, a "<u>Proposed APA</u>"); and

   iv. Each Qualified Bid must be submitted on or before the Qualified Bid Deadline.

   v. Each Qualified Bid must be accompanied by a deposit into escrow with the Escrow Agent of an amount equal to the greater of (a) five percent (5.00%) of the Purchase Price; and (b) Five Million Dollars ($5,000,000.00) (the greater of such amounts being a "<u>Good Faith Deposit</u>"); *provided that* a Secured Creditor that submits a Qualified Bid that includes a Credit Bid does not need to submit a Good Faith Deposit unless the Good Faith Deposit that would otherwise be associated with such Qualified Bid exceeds the amount of the Credit Bid portion of the Secured Creditor's Qualified Bid, in which case the amount of the Credit Bid portion of the Secured Creditor's Qualified Bid shall be deducted from the amount of the Good Faith Deposit otherwise required by these Bid Procedures.

c. <u>Qualified Bid Deadline</u>. All Qualified Bids must be submitted to the Debtors on or before 5:00 pm (Eastern) November 14, 2023 (the "<u>Bid Deadline</u>").

d. <u>Offer Letters</u>. All Qualified Bids shall be in the form of an offer letter (each, an "<u>Offer Letter</u>"). The Offer Letter shall state:

   i. that such bidder offers to purchase the subject Property (or Properties) upon the terms and conditions set forth in an attached clean executed asset purchase agreement (and electronic version in Word format) as well as, in the case a Stalking Horse is selected, an attached version of such asset purchase agreement redlined against the Stalking Horse APA (also an electronic version in Word format) together with all exhibits and schedules, including terms relating to price, the time of closing, and an acknowledgement that "time is of the essence" with respect to such Closing (the "<u>Proposed Bid APA</u>," and each, along with each Proposed Offer APA, being a "<u>Proposed APA</u>");

   ii. that such offeror is prepared to consummate the proposed Sale within one (1) day of the entry of an Approval Order;

   iii. that, in the event such bid is deemed to be a Qualified Bid by the Debtors, such Qualified Bid shall be irrevocable after the Bid Deadline unless (i) the Debtors agree to permit such Qualified Bid to be withdrawn; or (ii) such Qualified Bid is not deemed to be the Successful Bid or a Backup Bid at the Auction;

   iv. that the bidder consents to the jurisdiction of the Bankruptcy Court as to all matters relating to the Sale Process, the offer, and the proposed Sale.

e. <u>Determination of Qualified Bid Status</u>. Upon determination that any bid is not a Qualified Bid, the Debtors, or the Broker at the direction of the Debtors, shall notify the bidder of such determination forthwith and shall provide such bidder with the basis for such determination.

f. <u>Value of Qualified Bids</u>. All Qualified Bids, other than a Qualified Bid that includes a Credit Bid, must be in an amount such that the Purchase Price is greater than the Purchase Prices (or any other value to the Debtors) of any Stalking Horse Bid; *provided that* any Potential Bidder that has submitted a bid that otherwise satisfies the terms to be deemed a Qualified Bid at the time that the Auctioneer receives and accepts a Stalking Horse Bid shall be given five (5) business days' notice that such Potential Bidder must increase its offered Purchase Price or that its bid will not be deemed to be a Qualified Bid.

g. <u>Credit Bid</u>. A holder of a Secured Claim against the Properties (or one of the Properties) (each, a "<u>Secured Creditor</u>") may credit bid the full amount of such Secured Claim as a bid (or part of a bid) for such Properties (or the respective Property) pursuant to 11 U.S.C. 363(k) and applicable law (each, a "<u>Credit Bid</u>," and the act of submitting a Credit Bid being, "<u>Credit Bidding</u>").

        Notwithstanding anything to the contrary herein, each Secured Creditor is automatically deemed a Qualified Bidder and each Credit Bid is automatically deemed a Qualified Bid. For the avoidance of doubt, Bay Point shall be permitted to submit a Qualified Bid that includes (or is made up solely of) a Credit Bid despite Bay Point's status as a Decision Maker and regardless of any role that Bay Point plays in the Sale Process, including regardless of whether Bay Point or anyone related to Bay Point serves as the Auctioneer or is otherwise a consulting party with respect to any aspect of the Sale Process. For the avoidance of doubt, the amount of the secured debt so bid as a Credit Bid shall be deemed to be the "Purchase Price" with respect to such Credit Bid.

h.   Stalking Horse Bids. In the event a stalking horse bidder is selected (the "Stalking Horse Bidder"), the Stalking Horse is deemed a Qualified Bidder and the Stalking Horse's bid (the "Stalking Horse Bid") is a Qualified Bid. Notwithstanding any other provision in these Bid Procedures, in the event that the Stalking Horse Bid is not selected as the Successful Bid, the Stalking Horse Bid shall not be a Backup Bid unless the Stalking Horse expressly consents. In the event that one or more Qualified Bids other than the Stalking Horse Bid (if any) is selected as the Successful Bid(s) and such Successful Bid(s) are approved by the Bankruptcy Court pursuant to an Approval Order, the Stalking Horse shall be entitled to a break-up fee, expense reimbursement, and a refund of the Good Faith Deposit in accordance with, and subject to, the terms of the Proposed APA submitted by the Stalking Horse (the "Stalking Horse APA"). The Auctioneer shall provide notice to all parties in interest as soon as reasonably practicable after selection of a Stalking Horse, if any. Notwithstanding anything to the contrary herein, Bay Point shall be permitted to serve in the role as a Stalking Horse if Bay Point chooses to submit a Credit Bid in the full amount of its Secured Claim and agrees that it shall not be permitted to receive a breakup fee or any other compensation solely on account of such Stalking Horse Bid not being deemed to be the Successful Bid at the Auction. If the Debtors accept a Stalking Horse Bid, and the Debtors do not receive any other Qualified Bids by the Qualified Bid Deadline, then the Debtors shall cancel the Auction and consummate the Sale with the Stalking Horse pursuant to the terms of the Stalking Horse APA.

i.   The Auction. If the Debtors receive more than one Qualified Bid prior to the Bid Deadline, and the Properties (or respective Property) are not sold pursuant to a Private Sale, the Auctioneer shall conduct the Auction at 10:00 a.m. (Eastern) on November 16, 2023 at the offices of Thompson Hine LLP, 300 Madison Avenue, 27th Floor, New York, New York 10017-6232.

    i.   Auction Attendance. Only the Auctioneer, the Debtors, each Secured Creditor, the Stalking Horse (if any), the United States Trustee, the Internal Revenue Service, and any Qualified Bidders who have submitted Qualified Bids, and representatives of each of the foregoing, are entitled to attend the Auction.

ii. <u>Procedural Rules</u>.  The Auctioneer, at the direction of the Debtors and with the consent of Bay Point, may announce at the Auction procedural rules in addition to those set forth herein that the Debtors, in their reasonable discretion, deem to be reasonable under the circumstances for conducting the Auction.

iii. <u>Interim Highest and Best Bids</u>.  Upon the commencement of the Auction and at the conclusion of each round of bidding, the Auctioneer shall announce the then highest or otherwise best offer, along with the basis for such determination, including identification of any non-economic terms that form the basis for such determination. In comparing the proposed Purchase Price in any competing Qualified Bid to the bid of the Stalking Horse, if any, the proposed Purchase Price of such competing Qualified Bid shall be reduced by the break-up fee and expense reimbursement that would be paid to the Stalking Horse.

iv. <u>Minimum Bid Increments</u>. At the Auction, overbids bids shall be made in minimum increments of not less than One Hundred Thousand Dollars ($100,000), or such other amount as shall be determined by the Debtors and announced at the Auction.

v. <u>Rejection of Bids</u>.  The Auctioneer, with the consent of Bay Point, may reject, at any time before announcing the Successful Bid at the Auction, any bid that, in its reasonable discretion, is: (a) inadequate or insufficient; or (b) not in conformity with the Bankruptcy Code or the Auction Process, including the Bid Procedures; *provided that*, notwithstanding the foregoing, the Auctioneer is not permitted to reject a valid Credit Bid.

vi. <u>Reservation of Rights</u>.  Without limitation, at any point during the Auction, the Auctioneer, in consultation with the Debtors, shall have the absolute right to convert the Bidding Process from an open auction to a "sealed bid auction," in which case all Qualified Bidders shall have one opportunity to make a final, sealed bid. If this option is exercised, then the Auctioneer shall collect all sealed bids, analyze them, and determine the highest and best bid (i.e., the Successful Bidder) and Backup Bid (i.e., Backup Bidder) as set forth above.

vii. <u>Selection of the Successful Bid</u>.  Prior to concluding the Auction, the Debtors shall: (a) review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Auction Process, including those factors affecting the speed and certainty of consummating the Sale Transaction; and (b) identify and announce to all attending the Auction, the highest or otherwise best Qualified Bid (the "<u>Successful Bid</u>") and second-best Qualified Bid (the "<u>Backup Bid</u>") for the Properties (or for each respective Property if it is determined that selling the Properties separately creates the aggregate highest and best offer for the Properties as a whole) and the basis for such determination. In

    determining the Successful Bid and any Backup Bid, the Debtors shall exercise their reasonable business judgment, and may, but are not required to, consult with any significant constituency or Creditors or other stakeholders. For the avoidance of doubt, the Debtors may not select a Qualified Bid as the Successful Bid or a Backup Bid unless such Qualified Bid is greater than the amount of Bay Point's Secured Claim (without consideration of any objection thereto that may be filed) unless Bay Point shall consent to the same.

    viii.    <u>No acceptance of Tardy Bids</u>. Absent irregularities in the conduct of the Auction, the Auctioneer will not consider bids made after the announcement of the Successful Bid.

5.    **Due Diligence.** Each Qualified Offeror and Qualified Bidder (collectively, the "<u>Qualified Potential Purchasers</u>" and each, a "<u>Qualified Potential Purchaser</u>"), and each other person that has established that such person could qualify as a Qualified Potential Purchaser in a meaningful amount, as determined in the sole and absolute discretion of the Debtors (collectively with the Qualified Potential Purchasers, the "<u>Potential Purchasers</u>") shall, subject to such Potential Purchaser's execution of a confidentiality agreement in form and substance satisfactory to the Debtors, if the same shall have been requested by the Debtors in their sole and absolute discretion, the Debtors and/or Broker shall afford such Potential Purchaser due diligence access to the Properties. Due diligence access shall include onsite inspections, and such other matters which a Potential Purchaser may request and to which the Debtors may agree; *provided that* all such information shall be made available to each Potential Purchaser on an equal basis, subject only to such Potential Purchaser's execution of the above-referenced confidentiality agreement (if any).

6.    **No Representations or Warranties.** Each Property shall be sold "AS IS", "WHERE IS", "WITH ALL FAULTS", without representations, warranties, covenants or guarantees of any kind, nature, or description whatsoever; *provided that* nothing contained herein shall limit the relief that may be granted by the Bankruptcy Court pursuant to 11 U.S.C. § 363. Except as otherwise provided in the Proposed APA, each Property shall be acquired free and clear of all liens, claims, and encumbrances of any kind or nature thereon (collectively, the "<u>Transferred Encumbrances</u>"), with such Transferred Encumbrances to attach to the Sale Proceeds generated by such Property in the same order of priority as such Transferred Encumbrances encumbered such Property prior to such Sale. Each Potential Purchaser shall be deemed to acknowledge and represent that it has relied solely upon its own independent review, investigation and/or inspection of any documents and information in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Properties, or the completeness of any information provided in connection with the Properties and/or the Sale Process (including each and every aspect thereof), except as expressly stated in these Bid Procedures or, as to the Successful Offeror and/or Successful Bidder (each, a "<u>Successful Purchaser</u>"), in the applicable

Proposed APA. Without limiting the "AS IS, WHERE IS" nature of the Sale(s), the Sale(s) shall be subject to, among other things, (a) any state of facts that an accurate survey may show, (b) any covenants, restrictions and easements of record, (c) any state of facts a physical inspection may show, (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof, and (e) environmental conditions, including without limitation, the Properties' compliance or lack of compliance with environmental laws, and the presence or absence of underground fuel storage tanks, any hazardous materials or asbestos anywhere on the subject Property.

7. **Closing of the Sale(s).**

   a. **Time is of the Essence. Time is of the essence with respect to all of the actions and deadlines set forth herein, including, without limitation, those actions and deadlines relating to the closing of the Sale(s).**

   b. Execution of APA Post-Auction. The Plan Administrator, on behalf of the respective Estate that owns the subject Property, and the Successful Purchaser shall execute the Proposed APA for the Successful Bid at the conclusion of the Auction or immediately thereafter. Any other Qualified Bidder holding a Backup Bid shall also execute the Proposed APA for its Backup Bid, contingent on the failure of any Successful Bidder to close the respective Sale.

   c. Approval Order. The Debtors shall file a motion with the Bankruptcy Court seeking one or more Orders approving the Sale(s) of the Properties in accordance with the Bid Procedures (each, an "Approval Order"). Upon the filing of any such motion, and after due notice to Creditors, the Bankruptcy Court will conduct a hearing (the "Approval Hearing") to approve the Sale(s). At the Approval Hearing, the Debtors shall seek entry of an Approval Order, among other things, authorizing and approving the Sale(s). The Approval Hearing may be adjourned or rescheduled without notice other than by an announcement in open court. Subject to the introduction of evidence in support, the Approval Order approving the Sale(s) shall contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the Sale(s) and the asset purchase agreement(s) with respect to the same are fair and reasonable, (b) that the Sale(s), and the purchase of the respective Property is non-collusive, fair and reasonable, and was conducted openly and in good faith, without any fraud, (c) that the transfer of the Property to the Successful Purchaser(s) represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the Successful Purchaser, as transferee of the respective Property, is a good faith purchaser under Bankruptcy Code section 363(m) and, as such, is entitled to the full protection of Bankruptcy Code section 363(m), (e) that the respective Property is sold free and clear of all Liens, Claims, interests, and encumbrances pursuant to sections 363(f), 1123(a)(5)(D), and 1141(c) of the Bankruptcy Code, (f) that such Sale(s) was not controlled by an agreement among potential purchasers for purposes of section 363(n) of the Bankruptcy Code, and (g) that no cause

of action exists against the Successful Purchaser or with respect to the sale of the respective Property to the Successful Purchaser. All stay provisions under Bankruptcy Rule 6004(h) or elsewhere will be waived

d. <u>Return of Good Faith Deposit</u>.  The Good Faith Deposit of those Qualified Bidders submitting a Successful Bid or Backup Bid will be retained by the Escrow Agent, and such Successful Bid or Backup Bid will remain open and irrevocable notwithstanding Bankruptcy Court's entry of an Approval Order, until the closing of the Sale(s). If a Successful Bidder fails to consummate the Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Disbursing Agent will not have any obligation to return the Good Faith Deposit deposited by such Successful Bidder (each being a "<u>Forfeited Deposit</u>"). The Disbursing Agent shall distribute the funds constituting a Forfeited Deposit in the same manner and in the same priorities as set forth in Sections 5.8 and 5.9 of the Joint Plan. All Good Faith Deposits held by the Escrow Agent, except that of a Successful Bidder and any Backup Bidder, shall be returned on or before the third (3rd) Business Day following the Auction. The Good Faith Deposit of a Backup Bidder, unless the same has become a Forfeited Deposit, shall be returned to such Backup Bidder on or before the third (3rd) Business Day following the closing of the respective Sale.

e. <u>Sale to Backup Bidder</u>.  In the event the Successful Bidder, as determined at the Auction and whose bid is approved by the Bankruptcy Court in the Approval Order, fails to close through no fault of the Debtors, the Debtors shall sell the Properties (or subject Property) to the holder of the Backup Bid and may do so without further approval of the Bankruptcy Court.

f. <u>Title Insurance</u>.  Debtors shall convey the Properties by delivery of a quitclaim deed or deeds. At Debtors' option, if a Successful Bidder's title company refuses to insure title based upon the Orders entered by the Bankruptcy Court or makes unreasonable demands as determined by the Debtors, the Debtors may arrange for the issuance of a title insurance policy by a reputable title company, if such Successful Bidder is unable to do so, at the sole cost and expense of such Successful Bidder, at no additional premium. Debtors shall provide all documents reasonably required by the Successful Bidder's title company for them to "omit" any exceptions from the Successful Bidder's title policy.

8. **Breach of an Offer Letter or Proposed APA.**  In the event the Successful Bidder, as determined at the Auction and whose bid is approved by the Bankruptcy Court in the Approval Order, fails to close through no fault of the Auctioneer, the Auctioneer may sell the Real Property to the holder of the Backup Bid without further approval of the Bankruptcy Court

9. **Modification of Auction Process Timeline.**  The Debtors shall have the right, without further order of the Bankruptcy Court, to modify the Bid Procedures,

      including modifying the timeline of the Sale Process and the deadlines set forth in the Bid Procedures, as the Debtors deem necessary to promote consummation of the Joint Plan; *provided that*, notwithstanding the foregoing, the Debtors shall not be permitted to modify the date of the Auction without approval of the Bankruptcy Court. If the Bid Procedures are modified, the Debtors shall provide notice of the same to the Stalking Horse (if any), the Plan Administrator, the United States Trustee, the Internal Revenue Service, any Potential Purchasers that have expressed written interest in participating in the Sale Process.

10. **<u>Property Turnover at Closing</u>.** Subject to and without affecting the Debtors' obligations under any other document or agreement, including, without limitation, the DIP Financing Order and the DIP Loan Documents, (a) the Debtors shall turnover possession of each Property at the closing of the Sale with respect to the same to the respective Successful Purchaser or its designee, together with all files and records pertaining to such Property, including, but not limited to construction documents, building permits, violations, architectural plans, leases and repair invoices to the extent that any such documents exist within the possession, custody, or control of the Debtors at that time.