UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
-----------------------------------------------------------X  
In re:

ABERDEEN ENTERPRISES, INC.  
BRICKCHURCH ENTERPRISES, INC.

                        Debtors.  
-----------------------------------------------------------x

Hearing date: February 13, 2024 at 10:00am

Chapter 11

Case No. 23-72834-ast  
Case No. 22-70914-ast

(Jointly Administered)

## UNITED STATES TRUSTEE'S OBJECTION TO THE RETENTION OF GARY F. HERBST AS CHIEF LIQUIDATING OFFICER AND IN FURTHER SUPPORT OF THE UNITED STATES TRUSTEE'S MOTION FOR THE <u>APPOINTMENT OF A CHAPTER 11 TRUSTEE</u>

**TO:**    **THE HONORABLE ALAN S. TRUST;**  
         **CHIEF UNITED STATES BANKRUPTCY JUDGE:**

      William K. Harrington, the United States Trustee for Region 2 ("United States Trustee") in furtherance of his duties and responsibilities set forth in 28 U.S.C. §586(a)(3) and (5) interposes the within objection to the retention of Gary F. Herbst, Esq., as Chief Liquidating Officer ("CLO") of the Joint Debtors, hereinafter defined, and it further support of the United States Trustee's motion to appoint a chapter 11 trustee in these cases. In support of his position, the United States Trustee represents and alleges as follows:

<h3 style="text-align:center"><u>PRELIMINARY STATEMENT</u></h3>

      Aberdeen Enterprises, Inc. and Brickchurch Enterprises, Inc. ("Joint Debtors") together with the DIP lender, Bay Point Capital Partners II, L.P.'s ("Bay Point"), filed a joint motion (the "Motion") seeking entry of an order retaining Gary F. Herbst, Esq., ("Mr. Herbst") to act as a Chief Liquidation Office ("CLO") on behalf of the Joint Debtors. The United States Trustee submits that the Motion further demonstrates the creditor's lack of trust in Joint Debtors' present management, and how the sale proceeds should be handled, thereby mandating the estates' need for the appointment of a chapter 11 trustee -- the only Bankruptcy Code fiduciary

1

who can replace a debtor in possession.

With respect to the appointment of a CLO, the Motion fails to articulate the basis by which Mr. Herbst qualifies as a professional person under the Bankruptcy Code and fails to address any of the issues concerning the retention of Mr. Herbst as an officer. Moreover, the Motion, merely references Bankruptcy Code section 364, but fails to analyze whether there is any statutory authority or case law supporting the request that Mr. Herbst's fees should be granted super priority status over other retained professionals and creditors. Accordingly, because of Bay Point's distrust of present management as evidenced by its continuing course of conduct to displace management, and because the appointment of a chapter 11 trustee is consistent with the statutory structure, the United States Trustee requests the Court grant the motion to appoint a Chapter 11 and deny Mr. Herbst's retention as the Joint Debtors' CLO.

## RELEVANT FACTUAL BACKGROUND

1. The facts set forth in the United States Trustee's Motion to Dismiss this Case, or, in the alternative, Motion to Convert this Case From One Under Chapter 11 to One Under Chapter 7, or, in the alternative, Motion to Appoint a Chapter 11 Trustee are incorporated herein and made a part hereof. (Aberdeen ECF Docket No. 99).

2. On January 24, 2024, an auction was conducted resulting in the sale of the sole property of Brickchurch Enterprises, Inc.[1] located at 366 Gin Lane, Southampton ("366 Gin Lane") and the sole property of Aberdeen Enterprises, Inc. located at 376 Gin Lane, Southampton ("376 Gin Lane") (collectively the "Properties") for $41,920,000 and

---

[1] Unless specifically referenced as individual debtors, Brickchurch Enterprises Inc. and Aberdeen Enterprises Inc. will be collectively referred to as "Joint Debtors."

$44,160,000.00 respectively[2].

3. On January 24, 2024, the Joint Debtors and Bay Point filed the Motion seeking entry of an order retaining Gary F. Herbst, Esq. to act as the Chief Liquidation Officer. (ECF Docket No. 158).

4. On January 26, 2024, this Court issued an order, without hearing, Authorizing the Retention of Mr. Herbst as the CLO on an interim basis pursuant to Bankruptcy Code sections 327(a) and 328(a). (ECF Docket No. 164).

5. On January 27, 2024, counsel for Bay Point filed a letter informing the Court of the auction results. (ECF Docket No. 168). Additionally, Bay Point's counsel sought a further extension of time within which to file a second amended disclosure statement and plan.

6. On January 30, 2024, counsel for Bay Point filed Bay Point Capital Partners II L.P.'s Chapter 11 Plan of Liquidation and Bay Point Capital Partners II L.P.'s Disclosure Statement (the "Bay Point Plan" and "Bay Point Disclosure Statement"). (ECF Docket Nos. 173 and 174).

## ARGUMENT

**The Application To Retain Mr. Herbst Should Be Denied Because He Does Not Qualify as a "Professional Person" Under Bankruptcy Code §327(a)**

7. While the Bankruptcy Code does not provide a definition for "professional persons," it is generally accepted that "to qualify as a 'professional person' under §327(a), a person must be a professional in the ordinary sense of the word – that is, a person must perform high-level specialized services requiring 'discretion or autonomy.'" *In re Smith,* 524 B.R. 689, 694 (Bankr. Ct. S.D. Texas 2015); *In re Semenza,* 121 B.R. 56, 57 (Bankr. D.Mont. 1990). "A

---

[2] According to Bay Point's Disclosure Statement at page 15 these amounts reflect the sale price, together with the Buyer's Premium. The High Bid for 376 Gin Lane was reported as $40.5 million and the High Bid for 36 Gin Lane was reported as $38.5 million.

professional person is one who plays a central role in the administration of the bankruptcy estate and in the bankruptcy proceedings." *In re Ponce Marine Farm, Inc.,* 259 B.R. 484, 494 (Dist. Ct. Puerto Rico 2001); *In re That's Entertainment Marketing Group, Inc.,* 168 B.R. 226, 230 (N.D. Cal. 1994). The inquiry is not whether the person is a professional in their stated discipline, but "[i]f the duties involved are central to the administration of the estate." *Id.*

8. As per the Motion, Mr. Herbst's vaguely defined function will be "the administration of the proceeds of the Sale of the properties." (ECF Docket No. 158, Motion ¶ 4). While the Motion indicates that the parties are seeking Mr. Herbst's retention so he can perform "highly specialize and discrete tasks," (see Motion at ¶ 15), the Motion fails to articulate, with any degree of specificity, what highly specialized and discrete tasks are contemplated or any unique qualifications that Mr. Herbst possesses. Rather, the Motion merely recites that Mr. Herbst will administer the sales proceeds, which is hardly a high-level specialized service requiring discretion or autonomy.

9. The Properties have been sold and the Debtor has only a hand full of creditors. The sale proceeds are to be deposited into a debtor-in-possession account and held until their Court ordered distribution. Accordingly, Mr. Herbst's proposed retention would have Mr. Herbst do nothing more than perform the ministerial task of opening a DIP bank account, a task that is properly performed by the debtor in possession and should be performed by the Joint Debtors. Accordingly, Mr. Herbst does not qualify as a "professional person" under §327(a) and his retention should be denied.

**The CLO is the Functional Equivalent of a Receiver and the Post-Petition Appointment of a Receiver Violates the Bankruptcy Code.**

10. The Motion seeks to retain Mr. Herbst to administer the proceeds of the

sale. But the parties' solution is unworkable. Despite the characterization of the position as a liquidation officer, the duties and functions to be performed by the CLO are similar – if not identical – to the duties and functions of a receiver appointed by a state court. Section 105(b) of the Bankruptcy Code specifically precludes the Bankruptcy Court from appointing a receiver. Even if the officer is not called a "receiver" by name, if that person is given control of the debtor's sole asset, subject only to further orders of the court, that person is exercising the types of *in rem* powers and performing the types of duties traditionally given to receivers.

11. Only a receiver appointed by another court, such as a state or federal district court, can take on the role of receiver or a receiver-equivalent in a bankruptcy case, 11 U.S.C. § 105(b); see *In re Bayou Group, L.L.C.*, 363 B.R. 674, 689 (S.D.N.Y. 2007), *aff'd sub nom. Adams v. Marwil (In re Bayou Group, LLC)*, 564 F.3d 541 (2d Cir. 2009) (in enacting section 105(b), Congress precluded bankruptcy courts from appointing a federal equity receiver, but did not bar a United States District Court from appointing a managing member to control property); *see also S.E.C. v. Byers*, 609 F.3d 87, 93 (2d Cir. 1987). As the Court in *Rudin v. Tax Comm'n of the City of New York (In re Olympia & York Maiden Lane Company, LLC),* 233 B.R. 662 (Bankr. S.D.N.Y. 1999), explained, section 105(b) prevents a bankruptcy court from appointing "receiver in lieu of a bankruptcy trustee,", but does not bar the court from "continuing the appointment of a state court equity receiver." Id. at 669 (emphasis added).

12. The Bankruptcy Court's appointment power is not to be found either in section 105(a) or in section 1107(a). *See id.; see also K.G. IM, LLC*, 620 B.R. 469, 482 (Bankr. S.D.N.Y. 2020), quoting *In re 1031 Tax Group, LLC*, No. 07-11448 (MG), 2007 WL 2085384, at *3 n.4 (Bankr. S.D.N.Y. July 17, 2007) ("Sections 105(a) and 1107(a) . . . do not provide the Court with an independent power of appointment"). These Bankruptcy Code sections certainly

do not authorize the appointment of a *de facto* receiver, whose appointment in a bankruptcy case is expressly prohibited by Section 105(b*). See, e.g., Olympia & York*, 233 B.R. at 669.

13. In the instant case, the CLO would be taking control of the debtor in possession bank accounts, into which the sale proceeds from the sale of the Joint Debtors' sole assets are deposited. As such, the CLO's job would be akin to that of a state-court *in rem* receiver because the CLO's tasks, like those of a receiver, are *in rem*, that is, relate to "the preservation and care of the property under [the receiver's] control." *In re 400 Madison Avenue Ltd. Partnership*, 213 B.R. 888, 894 (Bankr. S.D.N.Y. 1997).

14. Though the Court could have allowed a receiver appointed by the state court pre-petition to continue in his or her role, section 105(b) specifically precludes the Court from creating that role for the CLO.

**Mr. Herbst Duties as an "Officer" of the Debtor are Unspecified**

15. As set forth herein, Mr. Herbst's proposed duties are vague, but the title that he is seeking is that of an "officer." Since the Motion fails to fully specify Mr. Herbst's proposed duties, it is unknown is whether the proposed duties extend beyond opening of debtor in possession bank accounts. If the proposed duties envision hiring Mr. Herbst and having him perform in an operational capacity, the United States Trustee submits that there must be compliance with the J. Alix Protocol. Under the J. Alix Protocol, debtors can hire officers, such as a chief restructuring officer ("CRO") – who given that a CRO's firm could not be retained under section 327(a) because of the conflict issues that would arise – would otherwise be disqualified from serving as professional advisors. Under the J. Alix Protocol, the officer must report to, and take direction from, the manager.

16. In *In re 1031 Tax Group, LLC*, 2007 WL 2085384, the Court observed

that "positions of manager or director are creatures of state law specifically governed by the applicable state limited liability company acts and state corporation codes". *Id*. at *1, *3. These state laws must be followed to make the proposed appointment of a manager or director. *Id*. at *3. "The Bankruptcy Code does not authorize the bankruptcy court to fill these positions, or to bypass the procedures that the state statutes mandate." *Id*.

17. Based upon the proposed order, it is proposed that the CLO will ". . . exercise sole and exclusive control over each DIP bank account" but shall not be authorized to " . . . make any distribution or transfer of such Sale proceeds without prior written order authorizing the same from this Court." (See Proposed Order at ¶ 4). Here, if the retention application is approved, the CLO would not be accountable to the Joint Debtors' management, because the Debtors would have surrendered their authority over not only the sale proceeds, but also over the CLO. The parties are left with a situation they are asking the Court to step into the role of the ultimate manager of the Joint Debtors a role the Court cannot play.

18. Consequently, based upon the available information, the CLO cannot satisfy the requirements of the J.Alix Protocol. Until such time as the parties clarify the nature of the retention, the United States Trustee is reserving its rights to augment this response.

**There does not appear to be support for payment of Mr. Herbst's fees on a super-priority basis**

19. Additionally, the Motion does not articulate the basis, either in the Bankruptcy Code or in case law, for the payment of Mr. Herbst's fees on a super-priority basis under §364(c)(1). Based upon sales proceeds generated by the auction, it is apparent that the estates are insolvent. Increasing the administrative costs to the estates will only result in a reduced distribution to both creditors and other holders of administrative claims, with the exception of Mr. Herbst's. As such, if this Court grants, Mr. Herbst's retention, it is request that

the Court deny his administrative claim super-priority status under §364(c)(1).

**Retention of the CLO Usurps the Joint Debtors' Authority**

20. As has been stated in the United States Trustee's prior pleadings, the Bankruptcy Code does not authorize the Court to appoint an "alternative fiduciary" in the place of a chapter 11 trustee. *See In re Adelphia Comm. Corp.*, 336 B.R. 610, 664 (Bankr. S.D.N.Y. 2006) (court declined to use section 105(a) to "[a]ppoint a trustee equivalent"). The only true fiduciary that can supplant a debtor-in-possession in a chapter 11 case is a chapter 11 trustee. 11 U.S.C. § 1104; *see Adelphia*, 336 B.R. at 664 (section 1104 calls for only "two types of fiduciaries, trustees and examiners"). By retaining a CLO, the Joint Debtors are being compelled to surrender their authority to a third party who is statutorily ineligible to stand in the Joint Debtors' shoes.

21. This is the second time that Bay Point has expressed its lack of faith in the Joint Debtors' management. On July 19, 2023, Bay Point docketed a notice informing the Court that Bay Point had exercised its authority to supplant Ms. Blouin as the director of the Joint Debtors. (Brickchurch ECF Docket No. 278). Now with the proposed retention of Mr. Herbst, combined with the ouster of Louise Blouin, the principal of the Joint Debtors, Bay Point further evidences its lack of faith in the Joint Debtors' management. By filing of the Motion seeking the retention of a CLO, to basically watch over the sale proceeds, while prohibiting Ms. Blouin from acting, it is evident that Bay Point, the Joint Debtors' major creditor, lacks faith in the Joint Debtors' management. Because the Joint Debtors' major creditor lacks confidence in the Joint Debtors' management to manage the sale proceeds and the distribution process, and, by extension, this chapter 11 case, the case simply cannot move forward. The remedy is clear that the Court should direct the appointment of a chapter 11 trustee who would have the confidence

of the creditors with respect to the distribution of the sale proceeds, as well as all other aspects of the case.

22.     Should the Motion be viewed as the Joint Debtors' consent to the retention of a CLO, it is submitted this abdication of their role as Debtors in possession would still require the appointment of a Chapter 11 Trustee. As stated *supra*, only a Chapter 11 trustee can supplant the Joint Debtors as Debtors-in-possession.

## CONCLUSION

23.     The Bankruptcy Code provides that when a debtor in possession is unable to meet its fiduciary obligations, a chapter 11 trustee should be appointed (See 11 U.S.C. § 1104). ". . .  if the debtor-in-possession defaults in this respect, [s]ection 1104(a)(1) [of the Bankruptcy Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee." See *In re V. Savino Oil*, 99 B.R 518, 526 (Bankr. E.D.N.Y. 1989). The United States Trustee submits that seeking the retention of a CLO to hold the sale proceeds, demonstrates that current management of the Joint Debtors is not trusted by the creditors, and is otherwise unable to perform its fiduciary duties, thereby confirming that the statutory grounds for the appointment of a chapter 11 trustee have been satisfied.

24.     With respect to the retention Motion, the tasks that the parties seek to assign to CLO, while vaguely defined, appear to be ministerial in nature. The lack of specialization, inability to exercise discretion, and non-central role that the CLO would play all point to the fact that a CLO is not a "professional person" under §327(a). Additionally, the CLO duties indicate that the CLO would be the functional equivalent of a receiver, which is not in accord with the Bankruptcy Code. Moreover, the CLO's proposed retention as an officer of the

Joint Debtors does not appear to comply with the J. Alix Protocol. Finally, there is no statutory or case law supporting the payment of the proposed CLO on a super-priority basis.

25. Simply put, if the Court is not inclined to convert the cases to cases under chapter 7, it appears that the best course of action is the appointment of an independent estate fiduciary who would have full authority to act in the best interests of creditors. As such, the Motion should be denied, and the United States Trustee's motion for the appointment of a chapter 11 trustee should be granted.

**WHEREFORE,** based upon the foregoing it is respectfully requested that the retention of a CLO be denied, and that the Court grant such other and further relief as may be just and proper.

DATED: Central Islip, New York
       February 5, 2024

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE - REGION 2
Alfonse D'Amato Federal Courthouse
560 Federal Plaza
Central Islip, New York 11722
Telephone 631 715 7800

By: /s/ William J. Birmingham
    William J. Birmingham
    Trial Attorney