UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                            Chapter 11

ABERDEEN ENTERPRISES, INC.,                       Case No. 23-72834-AST
BRICKCHURCH ENTERPRISES, INC.                     Case No. 22-70914-AST

                                     Debtors.     Jointly Administered
--------------------------------------------------------x

## BAY POINT CAPITAL PARTNERS II, LP'S AND THE DEBTORS' ~~FIRST~~<u>SECOND</u> AMENDED JOINT LIQUIDATING PLAN UNDER CHAPTER 11 OF THE <u>BANKRUPTCY CODE</u>

Bay Point Capital Partners II, LP ("<u>Bay Point</u>"), together with Aberdeen Enterprises, Inc. ("<u>Aberdeen</u>") and Brickchurch Enterprises, Inc. ("<u>Brickchurch</u>", and collectively with Aberdeen, the "<u>Debtors</u>" and each a "<u>Debtor</u>"), propose this ~~first~~<u>second</u> amended joint liquidating plan (the "<u>Plan</u>") under Chapter 11 of the Bankruptcy Code.

The Debtors have pursued a Sale of their valuable and iconic, contiguous ocean front properties (as defined herein). The bid procedures governing the Sale were the subject of a separate application filed by the Debtors, were approved by the Bankruptcy Court (the "<u>Approved Bid Procedures</u>") pursuant to an Order entered on November 22, 2023 [D.I. 104], were amended by the Debtors on December 15, 2023 [D.I. 116] and again on January 26, 2024 [D.I. 166], and shall be deemed incorporated by reference for purposes of the Plan.

On January 24, 2024, the Debtors held an Auction under the terms of the Approved Bid Procedures. The highest and best bids at the Auction were in the respective sums of $40,500,000 (376 Gin Lane) and $38,500,000 (366 Gin Lane). Pursuant to the terms of the Approved Bid Procedures, the above-referenced bids are subject to a buyer's premium in the amount of $3,660,000 and $3,420,000, respectively. In addition, the prospective purchasers have agreed to

increase the amount of the high bid by $1,501,440 (376 Gin Lane) and $1,425,280 (366 Gin Lane), contingent upon the Properties being sold pursuant to the Plan and 11 U.S.C. § 1146 being applicable to relieve the prospective purchasers of their obligations to pay any transfer taxes with respect to the Sales of the Properties. The high bids for the Properties, plus the buyer's premiums and the contingent bid enhancements, provide for a combined total purchase price of $89,006,720 (the "Gross Sale Proceeds").    Copies of the respective Purchase and Sale Agreements for each Property are annexed hereto as Exhibit A and Exhibit B.

On January 30, 2024, Bay Point filed its *Chapter 11 Liquidating Plan* [D.I. 173] (the "Initial Bay Point Plan"). On February 12, 2023, Bay Point filed its *First Amended Chapter 11 Liquidating Plan* [D.I. 194] (collectively with the Initial Bay Point Plan, the "Bay Point Plan"). Contemporaneously, with the submission of this Plan, Bay Point will withdraw the Bay Point Plan.

On February 14, 2024, Bay Point and the Debtors filed their *Joint Liquidating Plan Under Chapter 11 of the Bankruptcy Code* [D.I. 209], which is amended and replaced by this Plan.

This Plan is proposed by Bay Point and the Debtors (collectively, the "Plan Proponents") and is intended to provide an efficient and effective method for distributing the Sale Proceeds resulting from the Auction and other monetary assets of the Debtors. Pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by Mathew Kabatoff ("Kabatoff") and Bay Point, consistent with the Approved Bid Procedures, unless otherwise provided herein. After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates.

# ARTICLE I

## DEFINITIONS

All capitalized terms used herein shall have the meanings set forth below.

1.1    "**Aberdeen**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.2    "**Aberdeen Administrative Expense Claim**" means an Administrative Expense Claim against Aberdeen.

1.3    "**Aberdeen Priority Claim**" means a Priority Claim against Aberdeen.

1.4    "**Aberdeen Property**" means the real property, and improvements thereon, located at and commonly known as 376 Gin Lane, Southampton, New York 11968.

1.5    "**Aberdeen Unsecured Claim**" means an Unsecured Claim against Aberdeen.

1.6    "**Administrative Expense Claims Bar Date**" shall mean the first Business Day that is thirty (30) days after the Effective Date.

1.7    "**Administrative Expense Claim**" means a Claim for the costs and expenses of administering the respective Cases under §§ 327, 330, 331, 364(c)(1), 503(b), 507(a)(2), 507(b) of the Bankruptcy Code, including, without limitation: (a) the actual and necessary costs and expenses of maintaining and preserving the Properties; and (b) Professional Fee Claims.

1.8    "**Allowed**" means, except as otherwise provided herein, (a) with respect to any Claim other than an Administrative Expense Claim, a Claim for which a proof of claim was timely and properly filed or, if no proof of Claim was filed, that has been scheduled by the Debtors as being liquidated and undisputed, and as to which: (i) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (ii) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; and (b) with respect to any Administrative Expense Claim, a Claim for which (i) a request for payment of such Administrative Expense Claim has been timely and properly filed and (A) no objection to allowance has been interposed within the applicable period fixed by the Plan; or (B) an objection has been interposed and such Claim has been allowed, in whole or in part, by a Final Order; or (ii) has been otherwise allowed by the Bankruptcy Court.

1.9    "**Approved Bid Procedures**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.10    "**Auction**" shall have the meaning as ascribed to such term in the Approved Bid Procedures.

1.11    "**Bankruptcy Cases**" means, collectively, the above-captioned cases, each being a "**Bankruptcy Case**."

1.12    "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the respective Petition Date of each Debtor.

1.13    "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of New York.

1.14    "**Bankruptcy Fees**" means (i) all fees and charges against the Estate under section 1930 of title 28 of the United States Code, and (ii) a Claim for reasonable compensation for services rendered, and reimbursement of actual and necessary expenses incurred, by the Escrow Agent as awarded by a Final Order of the Bankruptcy Court.

1.15    "**Bankruptcy Fees Reserve**" means the segregated account established pursuant to Section 5.3 of the Plan.

1.16    "**Bay Point**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.17    "**Bay Point Collateral Documents**" means (i) each security instrument, mortgage, deed of trust, document, pledge agreement, subordination agreement, account control agreement, or any other agreement pursuant to which either Debtor or any other Person granted Bay Point a Lien to secure repayment of the DIP Loan Obligations; and (ii) each of the JGB Assigned Documents.

1.18    "**Bay Point Debt**" shall have the meaning ascribed to such term in Section 3.1 of the Plan.

1.19    "**Bay Point Loan Documents**" means, collectively, the DIP Loan Documents, the Morgan Stanley Judgment, and each of the documents related to the debt referenced in the Morgan Stanley Judgment that were assigned to Bay Point.

1.20    "**Blouin**" means Louise Blouin, indirect upstream beneficial equity holder and Creditor of the Debtors.

1.21    "**Brickchurch**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.22    "**Brickchurch Administrative Expense Claim**" is an Administrative Expense Claim against Brickchurch.

1.23    "**Brickchurch Priority Claim**" means a Priority Claim against Brickchurch.

1.24    "**Brickchurch Property**" means the real property, and improvements thereon, located at and commonly known as 366 Gin Lane, Southampton, New York 11968.

1.25    "**Brickchurch Unsecured Claim**" means an Unsecured Claim against Brickchurch.

1.26    "**Broker**" means the person or firm engaged by the Debtors, with consent of both Decision Makers, and approved by the Bankruptcy Court to market and sell the Properties.

1.27    "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.28    "**Cases**" means, collectively, the above-captioned, jointly administered Chapter 11 cases commenced by the Debtors in the Bankruptcy Court, each being a "**Case**."

1.29    "**Cash**" means lawful currency of the United States of America.

1.30    "**Claim**" has the meaning ascribed to such term in 11 U.S.C. § 101(5), as the same has been, or may be, asserted against one or more of the Debtors.

1.31    "**Claims Objection Deadline**" shall mean (A) for Administrative Expense Claims, the later of (i) thirty (30) days after a request for payment, or Proof of Claim, seeking allowance of the Claim is filed, and (ii) one (1) Business Day prior to the Effective Date of the Plan, or such other date fixed by the Bankruptcy Court, and (B) for all Claims other than Administrative Expense Claims, one (1) business day prior to the Effective Date of the Plan.

1.32    "**Closing**," means that time at which the Debtors, after and pursuant to a Sale Approval Order, consummate one or more Sales of the Properties.

1.33    "**Confirmation**" means the entry of the Confirmation Order.

1.34    "**Confirmation Hearing**" means the hearing or hearings before the Bankruptcy Court to consider confirmation of the Plan.

1.35    "**Confirmation Order**" means an order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

1.36    "**Credit Bid**" means the right of Bay Point pursuant to 11 U.S.C. §363(k) to bid its Secured Claims at the Auction.

1.37    "**Creditor**" means the holder of a Claim against one or both of the Debtors.

1.38    "**Debtors**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.39    "**Decision Makers**" means, collectively, Bay Point and Kabatoff, each being a "**Decision Maker**;" *provided that*, notwithstanding anything to the contrary herein, Bay Point shall have the right, in its sole and absolute discretion, to withdraw as a Decision Maker. In the event that Bay Point withdraws as a Decision Maker, the terms "Decision Makers" and "Decision Maker" shall refer only to Kabatoff.

1.40    "**DIP Financing Order**" means the Order (I) Authorizing Debtor to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (II) Granting Liens and Super-Priority Claims, entered by the Bankruptcy Court on November 17, 2022 in Case No. 22-70914-AST (ECF No. 172).

1.41    "**DIP Lender Superpriority Claim**" means that Allowed Administrative Claim in the amount of the DIP Loan Obligations, granted to Bay Point pursuant to section 364(c)(1) of the Bankruptcy Code, with priority over all other Administrative Expense Claims, adequate protection and other diminution claims, Unsecured Claims, and all other Claims against the Debtors, now existing or hereafter arising, of any kind or nature whatsoever, including Administrative Expense Claims or other Claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 507, 546, 726, 1113, and 1114 of the Bankruptcy Code, or any other section of the Bankruptcy Code, whether or not such Administrative Expense Claims or Claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, except as otherwise provided herein.

1.42    "**DIP Loan Documents**" means (i) the Loan and Security Agreement, dated November 9, 2022, by and among Debtor, Aberdeen, and Bay Point (the "**DIP Loan Agreement**"), and (ii) each of the Bay Point Collateral Documents.

1.43    "**DIP Loan Obligations**" shall have the same meaning as is ascribed to the term "DIP Obligations" in the DIP Financing Order.

1.44    "**Disclosure Statement**" means the Disclosure Statement for the Plan, including all exhibits, attachments, or amendments thereto, approved by Order of the Bankruptcy Court.

1.45    "**Disputed Claims Reserves**" means, collectively, the segregated account(s) established pursuant to Section 5.2 of the Plan for the payment of Disputed Claims to the extent such Disputed Claims are Allowed by a Final Order, each being a "**Disputed Claims Reserve**."

1.46    "**Disputed**" means, except as otherwise provided herein, with respect to a Claim, (a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been timely filed;

(b) any Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order; *provided however, that* until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if: (A) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (B) no corresponding Claim has been listed in the Schedules; *and further provided that* until the earlier of (I) the filing of an objection to a Proof of Claim or (II) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in that amount by which the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules. Claims arising from the rejection of Executory Contracts will be treated as Disputed Claims unless and until such Claims have been settled, withdrawn, or determined by a Final Order. Notwithstanding the foregoing, any Claims held by Bay Point shall not be Disputed Claims, but shall be subject to the clawback provisions set forth in Section 5.11.

1.47    "**Distribution Date**" means the Effective Date or such other date as soon as reasonably practicable as may be set by the Debtors for the distribution of Sale Proceeds in accordance with the terms of the Plan.

1.48    "**Effective Date**" means the date upon which all of the conditions to effectiveness of the Plan as set forth in Section 7.5 of the Plan have been satisfied.

1.49    "**Equity Interests**" means the ownership interests of Aberdeen Enterprises (BVI) Ltd. and Brickchurch Enterprises (BVI) Ltd. in the respective Debtors.

1.50    "**Escrow Agent**" means Gary Herbst, or such other person selected by Debtors to hold the Bankruptcy Fees Reserve, Disputed Claims Reserves and the Professional Fee Reserve, and to disburse the Sale Proceeds and other funds of the Estate strictly in accordance with the Plan and order of the Bankruptcy Court.

1.51    "**Estates**" means, collectively, the bankruptcy estate of Brickchurch and the bankruptcy estate of Aberdeen, each as created on the respective Petition Date pursuant to section 541 of the Bankruptcy Code, each of the Estates being an "**Estate**."

1.52    "**Executory Contracts**" shall mean "executory contracts" and "unexpired leases" of the Debtor as such terms are used in section 365 of the Bankruptcy Code.

1.53    "**Federal Tax Liens**" includes and means, collectively, (a) that certain Lien filed by the IRS on August 17, 2022 against the Aberdeen Property with the Suffolk County Clerk (Recording No: LFED00034063); and (b) that certain Lien filed by

the IRS on February 17, 2023 against the Aberdeen Property with the Suffolk County Clerk (Recording No. LFED00034390), each being a "**Federal Tax Lien**;" *provided that,* nothing contained herein shall be an admission or an acknowledgement of the validity of above-referenced Federal Tax Liens, nor shall anything herein prejudice any person's (including either Debtor's or Bay Point's) right to challenge the validity of any Lien asserted against either Property by the IRS.

1.54   "**Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed, reversed, or vacated, and that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing.  The possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to an order will not cause it not to be a Final Order.

1.55   "**Governmental Unit**" means the United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States, a State, a Commonwealth, a District, a Territory a municipality, or a foreign state; or other foreign or domestic government.

1.56   "**Gross Sale Proceeds**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.57   "**IRS**" means the United States Internal Revenue Service.

1.58   "**IRS Litigation Reservation**" shall have the meaning ascribed to such term in Section 2.1 of the Plan.

1.59   "**JGB Assigned Documents**" shall have the same meaning as is ascribed to the term "Assigned Documents" in the DIP Financing Order.

1.60   "**JGB Judgment**" shall mean that certain Judgment of Foreclosure and Sale entered in favor of JGB Partners, LP and its related companies by the Supreme Court of the State of New York, County of Suffolk on February 2, 2022 in the case styled as *JGB Partners, LP, et al. v. Brickchurch Enterprises, Inc., et al.*, Index No. 623208/2019, the same having been assigned to Bay Point and constituting one of the JGB Assigned Documents.

1.61   "**Plan**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.62   "**Kabatoff**" shall have the meaning ascribed to such term in the introductory section of the Plan.

1.63    "**Lien**" has the same meaning as is ascribed to such term in 11 U.S.C. § 101(37), and includes charges, bills, encumbrances, mortgages, deeds of trust, security interests, and any other legally cognizable security device of any kind.

1.64    "**Morgan Stanley Judgment**" shall mean that certain Order Confirming Referee Report and Judgment of Foreclosure and Sale entered in favor of Morgan Stanley Private Bank, National Association by the Supreme Court of the State of New York, County of Suffolk on September 7, 2022 in the case styled as *Morgan Stanley Private Bank, National Association v. Aberdeen Enterprises, Inc., et al.*, Index No. 623196/2019, the same having been assigned to Bay Point.

1.65    "**Net Sale Proceeds**" means the Gross Sale Proceeds, less the costs and expenses incurred in connection with a Sale chargeable to the seller, including without limitation, brokerage fees, closing costs, and documentary costs, if any; *provided that,* nothing contained herein shall require a Debtor or any other person to pay any Transfer Taxes where such payment is otherwise excused by the Bankruptcy Code.

1.66    "**Petition Date**" means April 30, 2022 for Brickchurch and August 2, 2023 for Aberdeen, the dates on which the respective voluntary petitions commencing these Chapter 11 cases were filed.

1.67    "**Priority Claim**" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, including each Priority Tax Claim.

1.68    "**Priority Tax Claim**" means any Allowed Unsecured Claim of a federal, state or local taxing authority that is entitled to priority under 11 U.S.C. § 507(a)(8).

1.69    "**Private Sale**" shall have the meaning ascribed to such term in the Approved Bid Procedures.

1.70    "**Professional**" means a professional employed by a Debtor under section 11 U.S.C. §327.

1.71    "**Professional Fee Claim**" means a Claim for compensation for services rendered, and reimbursement of expenses incurred by a Professional as awarded by a Final Order of the Bankruptcy Court; *provided that*, for the avoidance of doubt, the fees of the Broker whose retention has been approved by the Bankruptcy Court and who solicits (a) an offer that directly results in a consummated Private Sale of such Property, or (b) a Qualified Bid from a Qualified Bidder that eventually becomes the Successful Bidder with respect to such Property at the Auction shall be paid directly from Gross Sale Proceeds without further order of the Bankruptcy Court and shall not be deemed to have a Professional Fee Claim; *and further provided that* a Broker whose retention has been approved by the Bankruptcy Court that does not solicit an offer that results in a consummated Sale of a Property may have a Professional Fee Claim in

accordance with the approved retention application, subject to the rights of Debtors and any party in interest to object to the same.

1.72    "**Professional Fees Reserve**" shall have the meaning ascribed to it under Section 5.3A of the Plan.

1.73    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.74    "**Properties**" means collectively the Aberdeen Property and the Brickchurch Property, each being a "**Property**."

1.75    "**Qualified Bidder**" has the meaning ascribed to such term in the Approved Bid Procedures, and shall, for the avoidance of doubt, include Bay Point by virtue of its Credit Bid rights.

1.76    "**Reorganized Debtors**" means the Debtors, as reorganized pursuant to and under the Plan, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

1.77    "**Sale**" shall mean a sale of the Properties, whether through a single transaction or multiple transactions, pursuant to one or more Sale Approval Orders.

1.78    "**Sale Approval Order**" means an order of the Bankruptcy Court authorizing and directing the sale of one or more of the Properties pursuant to 11 U.S.C. § 363 or any other applicable provision of the Bankruptcy Code, including the Confirmation Order.

1.79    "**Sale Proceeds**" means the Net Sale Proceeds available from a Sale of a Property as defined in the introductory section of the Plan.

1.80    "**Sale Process**" shall have the meaning ascribed to such term in Section 4.2 of the Plan.

1.81    "**Schedules**" means the schedules of assets and liabilities and statement of financial affairs filed by the Debtors with the Bankruptcy Court in accordance with section 521(a)(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.82    "**Section 1031**" shall have the meaning ascribed to such term in Section 4.9 of the Plan.

1.83    "**Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on property in which either Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in the Estate's interest in such

property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.84    "**Successful Bid(s)**" shall mean the highest and best bid for one or both of the Properties as (i) collectively recommended by Debtors and Bay Point and approved by the Bankruptcy Court; or (ii) as decided by the Bankruptcy Court after notice and hearing of the same if Debtors and Bay Point are not able to agree on the same.

1.85    "**Successful Bidder**" shall mean the Qualified Bidder that submits a Successful Bid.

1.86    "**Transfer Taxes**" means, without limitation, (a) Suffolk County or other applicable local real property transfer taxes, including but not limited to the Peconic Bay transfer tax; (b) New York state TP 584 deed and transfer taxes; and (c) any and all other stamp taxes, similar taxes, or mansion taxes, which, but for the applicability of § 1146(a) of the Bankruptcy Code, would be applicable to any transfer made in accordance with, pursuant to, or in furtherance of the Plan.

1.87    "**Transferred Encumbrances**" shall have the meaning ascribed to such term in the Approved Bid Procedures.

1.88    "**Unsecured Claim**" means an Allowed Claim which is not an Administrative Claim, a Bankruptcy Fee, a Priority Claim, a Post-Petition Administrative Tax Claim, or a Secured Claim.

1.89    "**Unsecured Creditor**" means the holder of an Allowed Unsecured Claim against one or both of the Debtors.

## ARTICLE II

## UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Tax Claims, or Bankruptcy Fees, all of which shall be paid in full, or such other amount as agreed upon with the holders of such unclassified Claims.

2.1    **Administrative Expense Claims**.  Each holder of an Allowed Administrative Expense Claim - other than the DIP Lender Superiority Claim and any Administrative Expense Claim held by the IRS - shall be paid in full satisfaction of its Claim, pursuant to agreement or Final Order, the amounts specified in Sections 5.8 and 5.9 of the Plan. Payment shall be made on

(a) the later of (i) the Distribution Date, (ii) the date payment of such Claim is due under the terms thereof or applicable law, and (iii) three (3) Business Days after such Claim becomes an Allowed Claim; or (b) upon such other terms as may be agreed to, in writing, between the Debtors and the holder of such Claim.  For the avoidance of doubt, the $1 million payment to the IRS under Section 2.3 is only a partial payment, to be made from the Sale Proceeds at Closing, and shall not be treated as a full satisfaction of any claim or expense.  Nothing contained in the Plan shall otherwise prejudice the rights and claims of the non-debtor parties in connection with the pending litigation entitled *Aberdeen Enterprises Inc. v. USA*, 2:22-cv-07190 (E.D.N.Y.) all of which are hereby preserved to the fullest extent possible (the "<u>IRS Litigation Reservation</u>").

Except as otherwise set forth herein or in 11 U.S.C. § 503(b)(1)(D), requests for payment of Administrative Expense Claims not previously Allowed must be filed no later than the Administrative Expense Claim Bar Date. Holders of Administrative Expense Claims not previously Allowed that do not file requests for payment of Administrative Expense Claims on or before the Administrative Expense Claim Bar Date shall be forever barred from asserting such Claims against the Debtors or the Properties.  The bar under this paragraph shall not apply to any administrative expense of the IRS, including any administrative expense that could be the subject matter of a request under 11 U.S.C. § 505(b)(2), or to the DIP Lender Superpriority Claim.

2.2    **Professional Fees**.  All Professionals seeking an award by the Bankruptcy Court of a Professional Fee Claim shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is thirty (30) days after the Effective Date.  Pending consideration of the application, appropriate reserves shall be established as set forth herein from the Sale Proceeds in accordance with the provisions of Section 5.3A of the Plan to pay Professional Fee Claims as Allowed; *provided*,

*however*, that notwithstanding anything to the contrary herein, the Allowed Professional Fee Claim of Simmons Legal PLLC shall not exceed $135,000, plus expenses; the Allowed Professional Fee Claim of Goldberg Weprin Finkel Goldstein LLP shall be $100,000, plus expenses, through confirmation of the Plan (subject to Bankruptcy Court approval), plus an additional amount for post-confirmation services not to exceed an agreed upon cap of $40,000; and the Allowed Professional Fee Claim of Duane Morris LLP shall not exceed $151,905.95.

Each holder of an Allowed Professional Fee Claim shall be paid, in full satisfaction of its Allowed Administrative Expense Claim, the amounts specified in Sections 5.8 and 5.9 of the Plan upon the later of (a) the Distribution Date and (b) the date upon which the Order Allowing such Professional Fee Claim becomes a Final Order. Payments made to a Professional in accordance with the provisions of Section 2.1 shall constitute payment in full of the Professional's Allowed Professional Fee Claim, and the Professional shall have no further recourse against the Debtors or Bay Point for such Claim.

2.3    **Priority Tax Claims**.   The New York State Department of Taxation and Finance has asserted Unsecured Priority Tax Claims in the total amount of $161.39 (the "**Unsecured Priority Tax Claims of the New York State Department of Taxation and Finance**"). *See* Claim No. 1-1, *In re Aberdeen Enterprises, Inc*., Case No. 23-72834; *see also* Am. Claim No. 1-3, *In re Brickchurch Enterprises, Inc*., Case No. 22-70914. The Unsecured Priority Tax Claims of the New York State Department of Taxation and Finance shall be paid in full on the Effective Date.

The IRS shall receive the fixed sum of $1 million for application toward the IRS's Administrative Expense Claims and Priority Tax Claims in these cases. The IRS's Administrative Expense Claims and Priority Tax Claims are Allowed in full and are not

Disputed for all purposes without prejudice to the IRS Litigation Reservation. The IRS agrees to accept partial payment towards its claims and expenses as set forth in this Section.  The IRS may apply all or any part of the $1 million payment toward its Administrative Expense Claim or Priority Tax Claim in its sole discretion. This $1 million distribution to the IRS shall not be subject to any Disputed Claims Reserve under Section 5.2 of this Plan. Rather, the full $1 million will be distributed to the IRS from the Sale Proceeds at Closing; notwithstanding anything else to the contrary herein, the $1 million payment shall not be subject to return, disgorgement, or refund for any reason whatsoever.

2.4    **Bankruptcy Fees**.

(a)    <u>Quarterly United States Trustee Fees</u>.  The Debtors shall pay, on the Effective Date, all Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon as of the Effective Date. All remaining Bankruptcy Fees assessed against the Debtors under 28 U.S.C. § 1930 from the Effective Date through the date of dismissal, conversion or entry of final decree, shall be paid from the Bankruptcy Fees Reserve.

(b)    <u>Escrow Agent Fees</u>.  The Bankruptcy Fees payable to the Escrow Agent shall be paid within five (5) business days, or as soon as reasonably practicable thereafter, after the date that such Claim is Allowed by Final Order of the Bankruptcy Court. No later than twenty-one (21) Business Days prior to the hearing on the allowance of such Claim, the Escrow Agent shall serve upon counsel for Debtors, the United States Trustee, Bay Point, and any other Creditor requesting such information: (a) the current amount of its unpaid Bankruptcy Fees, and (b) a good faith estimate of its expected unpaid Bankruptcy Fees (if any) through dismissal, conversion or entry of a final decree.

(c)    <u>Funding</u>.  The Debtors shall use the Sale Proceeds to pay Bankruptcy Fees assessed against the Debtors on the Effective Date, and to fund the Bankruptcy Fees Reserve in accordance with the provisions of Sections 5.8 and 5.9 of the Plan.

## ARTICLE III

## <u>CLASSIFICATION AND TREATMENT OF CLAIMS</u>

Pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, the Plan classifies Claims and Interests as summarized below:

| | | | |
|---|---|---|---|
| Class 1 | Secured Claims of Bay Point | Yes | Yes |
| Class 2 | Secured Claims of New York State Department of Taxation and Finance | No | No |
| Class 3 | Non-Tax Priority Claims | No | No |
| Class 4 | General Unsecured Claims | Yes | No |
| Class 5 | Equity Interests | Yes | No |

**Class 1: Secured Claims of Bay Point**

3.1 **Classification** – Class 1 consists of the Secured Claims of Bay Point, which include the following: (a) the DIP Loan Obligations; (b) the JGB Judgment, *provided that*, for the avoidance of doubt, Bay Point is obligated to credit all amounts collected pursuant to the JGB Judgment to the outstanding DIP Obligations; and (c) the Morgan Stanley Judgment (collectively, the "Bay Point Debt"). The Morgan Stanley Judgment is secured by a first-priority Lien on the Aberdeen Property. The JGB Judgment is secured by a second-priority Lien on the Aberdeen Property and a first-priority Lien on the Brickchurch Property. The DIP Obligations in excess of the amount of the JGB Judgment are secured by a second-priority lien on the Brickchurch Property and a Lien on the Aberdeen Property that Bay Point asserts is a third-priority Lien and the IRS contends is a fourth-priority Lien (behind the IRS's asserted Lien on the Aberdeen Property).  Nonetheless, this potential lien-priority dispute between the IRS and Bay Point will be moot if the auction sale is confirmed because then there will be no funds available for distribution toward a third-priority lien against the Aberdeen Property.

**Treatment** – Bay Point shall be paid in accordance with the priority provisions set forth in Sections 5.8 and 5.9 of the Plan, up to the full amount of the Bay Point Debt (as asserted in good faith by Bay Point at the time of the Closing) from the Sale Proceeds at Closing.

Bay Point's assertion of a Claim in the amount of principal and interest (default and non-default with respect to the DIP Loan Obligations and at the statutory rate with respect to the Morgan Stanley Judgment), plus all fees and expenses as provided by the Bay Point Loan Documents, plus the Indemnification Reserves shall be deemed, *prima facie,* to be asserted in good faith despite any pending objection by any person with respect to the same. If the Bankruptcy Court shall subsequently issue a Final Order establishing that the amount of Bay Point's Claim is less than the amount Bay Point was paid pursuant to the Plan, Bay Point shall return the excess amount that it received to the proper Debtor's Estate within thirty (30) days of the entry of such Final Order, and such excess amount shall thereafter be distributed in accordance with the Bankruptcy Code.

Bay Point shall be entitled to collect post-petition interest (default interest and non-default interest with respect to the DIP Loan Obligations and at the statutory rate with respect to the Morgan Stanley Judgment), along with those fees, costs, or charges as provided for under the Bay Point Loan Documents and the DIP Financing Order, as part of its Secured Claim pursuant to 11 U.S.C. § 506(b) and the DIP Financing Order; *provided, however*, that nothing contained herein shall prejudice any right that Debtors may have to challenge the amount of the Bay Point Debt, including Bay Point's right to default interest and late fees under the DIP Loan Documents; *further provided that* nothing contained herein shall alter or amend the Bay Point Loan Documents or the DIP Financing Order, shall not waive or release any claims or defenses that Bay Point may have, including those arising under the Bay Point Loan Documents or the DIP Financing Order, or grant Debtors (or any other person) any right to challenge the amount of the Bay Point Debt (or any part thereof) that did not exist prior to the entry of the Confirmation Order; *and further provided that* Debtors' reservation of rights shall not impair, impact, or

otherwise affect Bay Point's right to Credit Bid absent the entry of Final Order by the Bankruptcy Court reducing the amount of Bay Point's Secured Claim; and *further provided that* Debtors' reservation of rights shall not impair Bay Point's indemnification rights under the Bay Point Loan Documents and the DIP Financing Order.  For the avoidance of doubt, the decision of the Debtors to challenge the amount of the Bay Point Debt may be made following the Effective Date without the concurrence of Bay Point as a Decision Maker. Any challenge shall be filed within thirty (30) days of the Effective Date.

**Voting** – Class 1 is impaired under the Plan and, therefore, Bay Point is entitled to vote to accept or reject the Plan.

**Class 2:  Secured Claims of New York State Department of Taxation and Finance**

3.2    **Classification** – Class 2 consists of the Secured Claims of the New York State Department of Taxation and Finance.

**Treatment** – The holder of the Allowed Secured Claims of the New York State Department of Taxation and Finance shall be paid in full, in accordance with the provisions of Sections 2.1, 5.8, and 5.9 of the Plan.

**Voting** – Class 2 is unimpaired under the Plan and, therefore, the holder of the New York State Department of Taxation and Finance's Secured Claims is deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and is not entitled to vote to accept or reject the Plan.

**Class 3:  Non-Tax Priority Claims**

3.3    **Classification** – Class 3 consists of Priority Claims, other than Priority Tax Claims.

**Treatment** – The Debtors do not believe there are any Non-Tax Priority Claims. To the extent there are any such Claims, they shall be paid in full from the Sale Proceeds, provided that the aggregate amount of all Allowed Non-Tax Priority Claims does not exceed $5,000 in the aggregate.

**Voting** – Class 3 is unimpaired under the Plan and, therefore, each holder of a Class 3 Non-Tax Priority Claim is not entitled to vote to accept or reject the Plan.

**Class 4:  General Unsecured Claims**

3.4     **Classification** – Class 4 consists of all Unsecured Claims.

**Treatment** – Class 4 will not receive any distributions under the Plan.

**Voting** – Class 4 will not receive any distributions under the Plan and is therefore deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**Class 5:  Equity Interests**

3.5     **Classification** – Class 5 consists of the Equity Interests in the Debtors.

**Treatment** – Class 5 will not receive any distributions under the Plan.

**Voting** – Class 5 will not receive any distributions under the Plan and is therefore deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code

**ARTICLE IV**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

4.1     **Authority to Act / Limitation of Liability.**  Each act and every decision to be made by Debtors under the Plan through the Effective Date shall be made at the direction, and shall be completely consistent with such direction, of the Decision Makers, such direction being valid and enforceable only upon the mutual agreement of both Decision Makers; *provided*, *however*, that Kabatoff, as the Debtors' fiduciary, shall be authorized and directed in the

Confirmation Order to prepare and file tax returns of the Debtors reflecting the Sale of the Properties and shall be the exclusive Decision Maker after the closing. If the Decision Makers are not able to reach a mutual agreement regarding a decision or act of the Debtors, each Decision Maker agrees that either Decision Maker shall be permitted to seek relief from the Bankruptcy Court on shortened notice; *provided that*, for the avoidance of doubt, the discretion of whether to hear any issues raised by such Decision Maker on shortened notice shall remain with the Bankruptcy Court. For the avoidance of doubt, Blouin shall have no authority to act with respect to either of the Debtors and shall completely refrain from taking part in, or interfering with, any of the decisions, processes, or procedures set forth or governed by the Plan. The Decision Makers, solely as a result of their status as a Decision Maker under the Plan, shall not be deemed officers, fiduciaries or agents of the Debtors. The Decision Makers may employ or contract with such third parties as appropriate to assist in the implementation of the Plan; *provided that* the employment of any such person on behalf of the Debtors shall require a decision of the Debtors.  Kabatoff shall have the responsibility to file, or cause to be filed, tax returns or similar reports with the appropriate taxing authorities relating to the Debtors and the sale of the Properties. **Except for gross negligence or willful misconduct, the Decision Makers shall not have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan; *provided*, *however*, that nothing contained herein shall in any way negate Kabatoff's fiduciary responsibilities on behalf of the Debtors' estates.**

4.2    **Sale Free and Clear of All Claims, Liens, Taxes and Interests.**  The Plan shall be funded through the disposition of the Sale Proceeds, funds currently in the Debtors' possession, and any remaining funds previously advanced by Bay Point to the Debtors pursuant to the DIP Financing Order.

4.3    **[Reserved].**

4.4    **Provisions Relating to the Sale Process.**

    (a)    Approved Bid Procedures.  The Sale Process, including the consummation of one or more Sales, was conducted in accordance with the Approved Bid Procedures.

    (b)    Free and Clear Sale(s).  All transfers of the Properties shall be effectuated by one or more Bargain and Sale Deeds, free and clear of all Liens, Claims, taxes and interests pursuant to 11 U.S.C. §§ 363(b) and (f) and 1123(a)(5), with such Liens, claims, taxes and interests attaching to the Sale Proceeds of the respective Property in the same order, extent and priority as existed prior to Confirmation, except as paid at Closing.

    (c)    **[Reserved].**

    (d)    Deadline to Close.  The Closing with respect to any Sale that has been approved by the Bankruptcy Court shall close by **February 20, 2024 or such other date as fixed by the Court**.

    (e)    Payment of Sale Transaction Costs.  The Escrow Agent shall distribute the following amounts from the Gross Sale Proceeds with respect to each Property: (i) subject to any agreement between the Debtors and the Auctioneer, the fees and expenses of the Auctioneer (if any) with respect to such Property; (ii) subject to any agreement between a Broker and the Debtors, the fees and expenses of a Broker whose retention has been approved by the Bankruptcy Court and who solicits (a) an offer that directly results in a consummated Private Sale of such Property, or (b) a Qualified Bid from a Qualified Bidder that eventually becomes the Successful Bidder with respect to such Property at the Auction; (iii) any other closing costs associated with the Sale of such Property; and (iv) subject to and without waiving Section 4.6 of the Plan and section 1146(a) of the Bankruptcy Code, any documentary and Transfer Taxes; *provided that*, for the avoidance of doubt, the provisions of this Section 4.4(e) of the Plan shall be subject to any employment and/or listing agreements that have been approved by the Bankruptcy Court in connection with Debtors' request to retain one or more professionals.

    (f)    Vesting of Assets.  The Properties shall remain in the Debtors' respective

Estates under section 541(a) of the Bankruptcy Code until the closing of a Sale of the same and shall remain subject to all Liens and Claims that exist as of the date of Confirmation.  Upon the closing of a Sale involving one or both Properties, such Properties (or Property) shall vest in the Successful Purchaser, free and clear of all Liens and Claims other than Transferred Encumbrances. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, authorizing and directing any necessary party to execute or deliver, or to join in the execution or delivery, on the Closing date of the Sale(s), of any instrument required to effect a transfer of Properties (or a respective Property) as required by the Plan, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

4.5    **The Escrow Agent**.

(a)    <u>Escrow Agent</u>.  The Escrow Agent shall hold the proceeds of the Sale(s) of the Properties in the separate DIP account (the "**Escrow DIP Account**") established by the Debtors at a depository institution that has been previously approved by the UST with the Escrow Agent identified as the sole signatory on such account. The Confirmation Order shall approve the Debtors' appointment of the Escrow Agent, with the power and duty to (i) hold the proceeds of the Sale(s) in the Escrow DIP Account, and (ii) distribute the Sale Proceeds and other funds of the Estates strictly in accordance with the provisions of the Plan.

(b)    <u>Escrow Agent Protections</u>.  The Escrow Agent shall not be deemed an officer or agent of the Debtors.  The Escrow Agent may, with the consent of the Debtors, employ or contract with such third parties as appropriate to assist in the performance of its duties under the Plan.  Except for gross negligence, or willful misconduct, the Escrow Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan (including, without limitation, distributions of Sale Proceeds pursuant to the Plan), the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, except in the case of gross negligence or willful misconduct. For the avoidance of doubt, the Escrow Agent shall have no responsibility or liability to any entity for the failure of Kabatoff to fulfill any of his obligations under the Plan. The Escrow Agent is not a receiver, trustee, or assignee.

(c)    <u>No Interference</u>.  No Person, including Debtors, Bay Point, Charles Andros, the holders of any Equity Interests, Kabatoff, and Blouin, shall interfere with the Escrow Agent in the performance of its duties, and any party with notice of the Confirmation Order shall be enjoined from taking any action that could reasonably be deemed to be an intentional interference with the Escrow Agent in the performance of its duties; *provided that*, nothing contained herein shall

prohibit or inhibit a Decision Maker from exercising the discretion provided to it under the terms of the Plan and Approved Bid Procedures.

(d)     <u>Execution of Documents</u>. Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtors and any other necessary party shall be authorized, and shall be directed by the Confirmation Order, to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance, including without limitation, any Lien, Claim or encumbrance not expressly provided for in the Plan, that is necessary for consummation of the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

(e)     <u>Filing of Documents</u>.  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

4.6     **Transfer Taxes**.  The Sale of the Properties constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan, including an instrument of transfer and deed executed by the Debtors shall not be subject under any law imposing a stamp tax, real estate transfer tax, mansion tax, mortgage recording tax or similar tax (previously defined as the "<u>Transfer Taxes</u>").  For avoidance of doubt, this does not apply to any income, employment, or unemployment  tax claims, or capital gains tax, under the Internal Revenue Code, 26 U.S.C. Accordingly, the appropriate officials or agents of state or local governmental units, including New York State, Suffolk County and the Town of Southampton, shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

4.7    **[Reserved].**

4.8    **Preservation of Causes of Action.**  Subject to the Liens granted to Bay Point pursuant to the DIP Loan Documents and/or the DIP Financing Order, all claims, causes of action, damages or remedies in favor of the Debtors' respective bankruptcy estates relating to any prior transactions (including all avoidance claims under the Bankruptcy Code or state law) shall be preserved for the benefit of the Debtors' estates and proceeds realized thereon shall be distributed in accordance with the priority structure set forth in the Bankruptcy Code and/or applicable Order of the Court after payment of reasonable attorney's fees.

4.9    **1031 Exchange Provisions.** Provided that there is no prejudice or harm to the Debtors' respective estates or to the interests of each Debtor's respective Creditors, including with respect to such Creditors' right to promptly be paid in accordance with the provisions of the Plan, nothing contained herein shall prohibit the Debtors from structuring a Sale in a manner that permits the Sale to qualify under the exchange provisions of Section 1031 of the Internal Revenue Code of 1986 as amended ("Section 1031"), including use of a qualified intermediary. For the avoidance of doubt, nothing contained herein shall (a) permit either Debtor from transferring any Estate property outside of the Estate; and/or (b) permit either Debtor to delay the Sale Process, a Sale, or a Closing for any purpose relating to Section 1031.

4.10    **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local government agency or department shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

4.11 **Preservation of Insurance.** The Plan shall not diminish or impair the enforceability of any insurance policy, right or claim that may cover Claims against the Debtor, the Properties (or any individual Property), or any other Person or entity. Likewise, the Plan and the Confirmation Order shall not impair any insurance carrier's rights, claims, defenses or disputes under any policy and shall not act to increase or extend any rights of the Debtors or any insurance carrier.

## ARTICLE V

## DISTRIBUTIONS

5.1 **Method of Payment**. Unless otherwise expressly agreed, in writing, payments to be made pursuant to the Plan shall be made at the times and in the amounts set forth in the Plan by either electronic funds wire transfer or check drawn on a domestic bank.

5.2 **Disputed Claims Reserves**. No distributions shall be made with respect to any Disputed Claim. Instead, the Escrow Agent shall deposit into one or more segregated accounts (the "Disputed Claims Reserves," each being a "Disputed Claims Reserve") funds equal to 100% of the Cash that would be distributed under the Plan to the holder of a Disputed Claim that would be an Allowed Claim, but for the dispute, including, but not limited to (i) Disputed Secured Claims (ii) Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (iii) Disputed Claims of Governmental Units for any tax, and (iv) any disputed cure amount. In determining the amount of the Cash to be distributed under the Plan to the holders of Allowed Claims on the Distribution Date, the calculation of the amount to be distributed to each holder of an Allowed Claim in such class shall be made as if all Disputed Claims in the applicable class were Allowed Claims in their respective face amounts. The Debtors or any other party in interest shall have the right to

seek an Order of the Bankruptcy Court, after notice and a hearing, estimating the amount of a Disputed Claim, and limiting the amount of Cash that must be so deposited. Any Creditor whose Claim is so estimated and limited shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other entity or property if the Allowed Claim of the Creditor (whose Claim was so estimated and limited) as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims Reserve applicable to such Disputed Claim (on a *pro rata* basis with any other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims associated with that particular Disputed Claims Reserve that are allowed by Final Order; *provided that*, for the avoidance of doubt, any Disputed Claim that is deemed to be an Allowed Claim by a Final Order shall participate in any future distributions as an Allowed Claim. Separate Disputed Claims Reserves shall be set up for Claims of different payment priority under the terms of this Plan.  Furthermore, the IRS's Allowed Administrative Expense Claim and Allowed Priority Tax Claim are not subject to this Section 5.2 because those Claims are Allowed in full and are not Disputed, and the IRS agrees to accept a partial payment toward those claims and expenses in the amount of $1 million, as set forth in Section 2.3.

      5.3      **Bankruptcy Fee Reserve.**  The Debtors shall utilize the Sale Proceeds to deposit in a segregated account on the Distribution Date (the "Bankruptcy Fees Reserve"), in accordance with the provisions of the Plan, an amount equal to the Bankruptcy Fees estimated to accrue from and after the Effective Date through the date of dismissal, conversion, or entry of a final decree.

      5.3A      **Professional Fees Reserve**.   The Debtors shall utilize the Sale Proceeds to deposit in a segregated account on the Distribution Date (the "Professional Fees Reserve") the

following amounts for the benefit of the Debtors' Professionals specified below:

| Debtor(s) | Professional | Amount |
|---|---|---|
| Aberdeen | Goldberg Weprin Finkel Goldstein LLP | $140,000.00 |
| Brickchurch | Simmons Legal PLLC | $135,000.00 |
| Brickchurch | Duane Morris LLP | $151,905.95 |
| Aberdeen and Brickchurch | The Law Offices of Avrum J. Rosen, PLLC | $50,676.50 |
| Aberdeen and Brickchurch | TBD Tax Professional for Assistance with Preparation and Filing of Tax Returns | $10,000 (estimated) |

For the avoidance of doubt, and subject to Sections 5.8, 5.9, and 5.12, the inclusion of the above-referenced amounts in the Professional Fees Reserve shall not be a request or an agreement by the Debtors or Bay Point that such Professional shall have an Allowed Claim in such amount.

Three (3) Business Days after the Administrative Expense Claim of the Professional becomes an Allowed Claim, funds equal to the amount of the Allowed Claim shall be withdrawn from the Professional Fee Reserve and paid to the Professional. Any funds remaining in the Professional Fee Reserve designated for such Professional shall be released from the Professional Fee Reserve and transferred to the Escrow Agent for distribution in accordance with the provisions of Sections 5.8 and 5.9.

5.4    **Prosecution of Objections.**    Debtors shall have the right to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. Objections to Claims shall be served and filed on or before the Claims Objection Deadline.  Notwithstanding that, Brickchurch's objection to the IRS's claim (ECF No. 205 in Case No. 22-70914) is

withdrawn and the IRS's claim in the Brickchurch case (Claims Register, Clam No. 13-1) is Allowed as filed. The IRS's claim in the Aberdeen case (Claims Register, Claim No. 2-1) is also Allowed as filed. As set forth in Section 2.3, the IRS has agreed to accept a partial payment of $1 million total toward its Allowed Administrative Expense Claims and/or Allowed Priority Tax Claims in these cases, as set forth in Section 2.3.  Notwithstanding the foregoing, the Plan shall not impact the IRS Litigation Reservation which is preserved.

5.5     **Distribution After Allowance.**  Within ten (10) days after entry of a Final Order finding all (or part of) a Disputed Claim to be an Allowed Claim (or as soon thereafter as practicable), the Debtors shall distribute from the funds placed in the Disputed Claims Reserve with respect to such Claim, all Cash, including any interest or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

5.6     **Distribution After Disallowance.**  The balance of a Disputed Claims Reserve remaining after all Disputed Claims have been resolved by Final Order shall be used to satisfy any outstanding Bankruptcy Fees, Claims, and Interests in the order of priority specified in Sections 5.8 and 5.9 of the Plan.

5.7     **Delivery of Distributions.**  Distributions to holders of Allowed Claims shall be made: (i) at the address set forth on the respective Proof(s) of Claim or other request(s) for payment filed by the holder of such Allowed Claim; (ii) at the addresses set forth in any written notices of address change delivered to the Debtors; or (iii) at the address reflected in the Schedules if no Proof of Claim, or other request for payment, is filed and the Debtors have not received a written notice of change of address.

5.8     **Distribution to Allowed Claims Against Aberdeen.**

(A)     Except as otherwise provided herein, the Sale Proceeds realized from or allocable to, the Aberdeen Property, currently estimated to be in the amount of

$45,661,440,_less the closing adjustments identified in <u>Schedule A</u> attached hereto, shall be distributed on the Distribution Date to the holders of Allowed Claims and Interests in the following order:

(i)     $168.20 shall be paid to the New York State Department of Taxation and Finance for payment in full of its Allowed Secured Claim against Aberdeen;

(ii)    $16,248,932 shall be paid to Bay Point for application to the amounts due and owing to Bay Point under the Morgan Stanley Judgment;

(iii)   $26,767,332.93 shall be paid to Bay Point for application to the amounts due and owing to Bay Point under the JGB Judgment;

(iv)    $6.87 shall be paid to the New York State Department of Taxation and Finance for payment in full of its Priority Tax Claim against Aberdeen;

(v)     Up to $300,000 shall be paid towards Bankruptcy Fees;

(vi)    $575,000 shall be paid to the IRS for application to the IRS's Administrative Expense Claim and/or Priority Tax Claim in the Aberdeen case (subject to the provisions set forth in Section 2.3 of this Plan);

(vii)   Subject to Bankruptcy Court approval, $100,000 shall be paid to Goldberg Weprin Finkel Goldstein LLP in full payment of its Allowed Professional Fee Claims for services rendered up to confirmation of the Plan; *provided*, that Goldberg Weprin Finkel Goldstein LLP shall be entitled to (a) an additional amount of up to $20,000 to close the transaction relating to the Sales of the Properties and, (b) up to $20,000 for services related to closing the Bankruptcy Cases;

(viii)  Up to $25,382.75 for payment of the Professional Fee Claim of The Law Offices of Avrum J. Rosen, PLLC;

(ix)    The Allowed amount, not to exceed $10,000, of the Professional Fee Claim of the TBD Tax Professional for assistance with preparation and filing of tax returns;

(x)     The Allowed amount, not to exceed $30,000, of an Administrative Expense Claim that may be filed by Kabatoff, in full payment of the same; and

(xi)    Any remaining funds shall be paid to Bay Point for application to the DIP Lender Superpriority Claim.

(B)     Any remaining monetary or liquidated assets of Aberdeen, including funds on deposit in any debtor-in-possession bank accounts, shall be distributed in

accordance with the priority scheme set forth in the Bankruptcy Code; *provided, however*, that the sum of $108,317.25 which is comprised of certain casualty insurance proceeds related to the Aberdeen property in which Bay Point has a first priority security interest, shall be paid to Bay Point for application to the outstanding DIP Loan Obligations.

**5.9** **Distribution to Allowed Claims Against Brickchurch.**

(A)    The Sale Proceeds realized from or allocable to, the Brickchurch Property, currently estimated to be in the amount of $43,345,280, less the closing adjustments identified in Schedule A attached hereto, shall be distributed on the Distribution Date to the holders of Allowed Claims and Interests in the following order:

(i)    $1,997.79 shall be paid to the New York State Department of Taxation and Finance for payment in full of its Allowed Secured Claim against Brickchurch;

(ii)    $30,509,867.53 shall be paid to Bay Point for application to the amounts due and owing to Bay Point under the JGB Judgment;

(iii)    $10,231,354.21 shall be paid to Bay Point for application to outstanding Obligations under the DIP Loan Documents;

(iv)    $154.52 shall be paid to the New York State Department of Taxation and Finance for payment in full of its Priority Tax Claim against Brickchurch;

(v)    Up to $300,000 shall be paid towards Bankruptcy Fees;

(vi)    $425,000 shall be paid to the IRS for application to the IRS's Allowed Administrative Expense Claim and/or Priority Tax Claim (subject to the provisions set forth in Section 2.3 of the Plan).

(vii)    Up to $135,000 shall be paid to Simmons Legal PLLC in full payment of its Allowed Professional Fee Claims; and $151,905.95 shall be paid to Duane Morris LLP in full payment of its Allowed Professional Fee Claims;

(viii)    Up to $25,382.75 for payment of the Professional Fee Claim of The Law Offices of Avrum J. Rosen, PLLC;

(ix)    The Allowed amount, not to exceed $10,000, of the Professional Fee Claim of the TBD Tax Professional for assistance with preparation and filing of tax returns;

(x)    The Allowed amount, not to exceed $30,000, of an Administrative Expense Claim that may be filed by Kabatoff, in full payment of the

same; and

    (xi)   Any remaining funds shall be paid to Bay Point for application to the DIP Lender Superpriority Claim.

(B)    Any remaining monetary or liquidated assets of Brickchurch, including funds on deposit in any debtor-in-possession bank account, shall be distributed in accordance with the priority scheme set forth in the Bankruptcy Code.

5.10   **Creditor's Right to Accept Lesser Payment**.  For the avoidance of doubt, nothing contained herein shall prevent a Creditor or Class of Claims from voluntarily accepting a lesser amount (or other disparate treatment) than such Creditor or Class of Claims would otherwise be entitled to under the Plan.

5.11   **Estates' Right to Clawback**.  For the avoidance of doubt, distributions to Bay Point under the Plan shall be made in the full amount of the Claim asserted by Bay Point and no amounts related to a Bay Point Claim shall be held in the Disputed Claims Reserve. To the extent that it is later determined by a Final Order that the amount distributed to Bay Point under the Plan resulted in an overpayment of Bay Point's Claims, Bay Point shall return the amount of such overpayment to the respective Estate that made such overpayment within ten (10) Business Days of the entry of such Final Order. The funds so returned by Bay Point (if any) shall be re-distributed without any further payment to Bay Point in accordance with the priority provisions of the Bankruptcy Code.

5.12   **Agreements as to Certain Professional Fees.**   Goldberg Weprin Finkel Goldstein LLP and Simmons Legal PLLC have agreed to limit their request for compensation to those amounts set forth in Sections 5.8(A)(vii) and 5.9(A)(vii), respectively. In consideration thereof,  Bay Point has agreed that it will not challenge (a) an award of an Allowed Claim to Goldberg Weprin Finkel Goldstein LLP in the amount specified in Section 5.8(A)(vii); and/or (b)

an award of an Allowed Claim to Simmons Legal PLLC in the amount specified in Section 5.9(A)(vii).

## ARTICLE VI

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1    **Rejection of Executory Contracts.**    On the Effective Date, all Executory Contracts to which the Debtor is a party shall be deemed rejected.

6.2    **Rejection Damages Claims.**    Allowed Claims arising from the rejection of Executory Contracts of a Debtor pursuant to Section 6.1 of the Plan shall be treated as Unsecured Claims.

6.3    **Bar to Rejection Claims.** A Proof of Claim seeking payment of any Unsecured Claim for damages arising from the rejection of an Executory Contract pursuant to Section 6.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtors within thirty (30) days after the Confirmation Date.  Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtors and may not be enforced against the Properties, any purchaser of the Properties, or any Creditor under any indirect or equitable legal theory such as unjust enrichment.

## ARTICLE VII

## CONFIRMATION AND CONSUMATION OF THE PLAN

7.1    **Injunction Against Interference with Plan.  Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the**

implementation or consummation of the Plan; *provided that*, for the avoidance of doubt, nothing contained herein shall limit any rights previously granted to Bay Point under the DIP Financing Order and the DIP Loan Documents in relation to non-Debtor property.

7.2    **[Reserved]**.

7.3    **No Discharge**.    Pursuant to section 1141(d)(3) of the Bankruptcy Code, as applicable, the Debtors will not be discharged from debts that arose prior to Confirmation.

7.4    **Liens and Claims**.    All Liens and Claims with respect to the Properties and all other assets of the Debtors shall survive Confirmation and remain attached in their respective order of priority as existed as of the date of Confirmation; *provided that*, as set forth in this Plan, the Sale(s) of the Properties shall be free and clear of any Liens, Claims, and/or Interests pursuant to Section 363 of the Bankruptcy Code and such Liens, Claims, and/or Interests shall attach to the respective Sale Proceeds in the same order of priority as existed as of the date of the Closing of the Sale.

7.5    **Conditions to Effective Date**.    The Plan will not become effective, and the Effective Date will not occur, unless and until:

    (a)    the Confirmation Order ~~has become a Final Order~~, including a provision waiving the stay under Fed. R. Bankr. P. 3020(e), shall have been entered;

    (b)    the ~~Bankruptcy Court shall have entered the Order approving the Sale Transaction~~Sale Approval Order, including a provision waiving the stay under Fed. R. Bankr. P. 6004(h), shall have been entered;

    (c)    the Sale Transaction shall have closed; and

    (d)    the payments required pursuant to Sections 5.8 and 5.9 of the Plan shall have been made; *provided that* nothing contained herein shall condition the effectiveness of the Plan on payment of any Disputed Claims so long as a Disputed Claims Reserve is established (if so required) pursuant to the terms of the Plan.

7.6    **Binding Effect**.    Subject to the occurrence of the Effective Date, on and after

entry of the Confirmation Order, the provisions of the Plan will bind every holder of a Claim against or Interest in one or more of the Debtors and inure to the benefit of and be binding on such holder's respective heirs, successors and assigns, regardless of whether the Claim or Interest of such holder is impaired under the Plan and whether such holder accepted the Plan.

## ARTICLE VIII

## RETENTION OF JURISDICTION

8.1 **Retention of Jurisdiction**.  The Bankruptcy Court shall retain post-confirmation jurisdiction over the following matters:

(a)    To issue any orders necessary or appropriate to authorize the sale of substantially all of the assets of the Debtors or Reorganized Debtors, as applicable, pursuant to sections 105(a), 363(b), 363(f), 365, 503, 507, 1123, 1142 and 1146(a) of the Bankruptcy Code.

(b)    To adjudicate any dispute relating to the sale of the Properties;

(c)    To resolve all matters and disputes arising under or relating to the Plan, including, without limitation, (i) disputes relating to the Sale Process; (ii) any disputes relating to, or involving the amount of the allowance of Claims; and (iii) distribution or disbursement of the Sale Proceeds;

(d)    To Allow or disallow in whole or in part any objections to Claims filed prior to the Closing that have not been previously Allowed or disallowed;

(e)    To grant or deny the applications for allowance of final compensation and reimbursement of expenses of Professionals;

(f)    To enter an order or final decree concluding the Cases following the Sale of the Properties, payment of allowed claims, resolution of all disputes, and distribution of all reserves;

(g)    To compel the Debtors, Blouin, the Escrow Agent, or any other person to take such action and execute such documents, or to refrain from such action, as may be necessary to effectuate the Plan;

(h)    To enter Orders that may be necessary or appropriate to implement or consummate the provisions of the Plan and to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Cases;

(i)    Resolve any and all controversies, suits, or issues that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j)    Approve modifications of the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, and modifications of the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)    Issue and enforce injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(l)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)    To enter a Sale Approval Order with respect to the Properties regardless of the failure to timely achieve substantial consummation of the Plan and regardless of whether the Plan shall become effective pursuant to Section 7.5 of the Plan;

(n)    Issue any Orders necessary to consummate a sale of the Properties pursuant to 11 U.S.C. 363 or any other applicable provision of the Bankruptcy Code after any failure to timely achieve substantial consummation the Plan and/or any failure of the Plan to become effective pursuant to Section 7.5 of the Plan; and

(o)    Issue any Orders as may be appropriate to convert the Cases to chapter 7 if the Plan is not substantially consummated or otherwise fails to become effective pursuant to Section 7.5 of the Plan.

## ARTICLE IX

## GENERAL PROVISIONS

9.1    **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation and/or consummation of the Plan directing the implementation of matters or actions required by the Plan.

9.2    **Compliance with Tax Requirements.**  In connection with the Plan, the Debtors shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and distributions under the Plan shall be subject to applicable withholding and reporting requirements; *provided, however*, that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code. For the avoidance of doubt, the foregoing

*provisio* does not apply to any income, employment, or unemployment tax claim, or capital gains tax, under the Internal Revenue Code, 26 U.S.C. § 1 *et seq*. Notwithstanding anything else to the contrary, nothing contained in the Plan determines the federal tax effects of the Plan.

9.3 **Due Authorization by Creditors.** Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4 **Amendments and Modifications.** The Plan may be altered, amended or modified by Debtors, solely with the consent of Bay Point, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019; *provided that* Debtors may only modify the Approved Bid Procedures consistent with the terms of such Approved Bid Procedures.

9.5 **Revocation.** Bay Point may revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is revoked or withdrawn, or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against the Debtors, or (ii) prejudice in any manner the rights of the Debtor or any Creditor in any further proceedings involving the Debtors or their Estates.

9.6 **Request for Relief under Section 1129(b).** If the Plan is accepted by one or more, but not all, classes of Creditors that are found to be impaired by the Plan, Bay Point may request confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor or Bay Point may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.8    **Headings.**  The headings in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein.

If to Brickchurch Enterprises, Inc.:

    Simmons Legal PLLC
    Camisha L. Simmons, Esq.
    6060 N. Central Expressway, Suite 500
    Dallas, Texas 75206
    Camisha@SimmonsLegal.Solutions

If to Aberdeen Enterprises, Inc.:

    Goldberg Weprin Finkel Goldstein LLP
    Kevin Nash
    125 Park Avenue, 12th Floor
    New York, New York 10017
    knash@gwfglaw.com

If to the holders of the Equity Interests:

Brickchurch Enterprises (BVI) Ltd.
165 Broadway, 23rd Floor
New York, New York 10006
lt@ltbholding.com

*-and-*

Aberdeen Enterprises (BVI) Ltd.
165 Broadway, 23rd Floor
New York, New York 10006
lt@lbtholding.com

<u>If to Bay Point Capital Partners II, LP</u>:

The Law Offices of John F. Isbell LLC
John F. Isbell, Esq.
3050 Peachtree Road NW, Suite 740
Atlanta, Georgia 30305
John@JFI-Law.com

*-and-*

Thompson Hine LLP
John C. Allerding, Esq.
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
John.Allerding@ThompsonHine.com

<u>If to any other Creditor</u>:

At (a) the addresses set forth on the applicable Proofs of Claim or other request for payment filed by such holder, (b) the addresses set forth in any written notices of address changes delivered to the Debtors, or (c) the address reflected in the Schedules if no Proof of Claim is filed and the Debtors have not received a written notice of a change of address.

<u>If to any entity that has filed a notice of appearance</u>:

At the address set forth on such notice of appearance.

9.12    **Other Actions.**  Nothing contained herein shall prevent any person from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may

not specifically be provided for within the Plan; *provided, however,* that no person shall take action expressly prohibited by or contrary to the express provisions of this Plan.

9.13    **Severability.**    In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.14    **Business Day.**    In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

9.15    **Quarterly Fees.**    All fees payable pursuant to 28 U.S.C. § 1930, together with any applicable interest thereon, shall be paid by the Debtors until the closing of the Cases under 11 U.S.C. §350(a).

9.16    **Post-Confirmation Reports.**    The Debtors shall file quarterly status reports until the Cases are closed.

9.17    **Continuation of the Debtors.**    The Debtors shall continue in existence, duly authorized to carry out the terms of the Plan and the distribution of the Sale Proceeds. The Debtors shall not be dissolved until after the entry of a Final Decree closing the Cases. If the holders of the Equity Interest determine it desirable for the Debtors to exist after the closing of the Cases, and such continued existence does not prejudice any Creditors, nothing contained herein shall prevent the Equity Interest holders from choosing to continue the corporate existence of the Debtors.

## ARTICLE X

## CLOSING OR CONVERSION OF THE CASE

10.1    **Substantial Consummation.**    Following entry of the Confirmation Order and satisfaction of the conditions in Section 7.5 of the Plan, Debtors shall file a notice with the

Bankruptcy Court of the substantial consummation of the Plan. Upon the filing of such notice of substantial consummation, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

10.2    **Closing of the Case.**  Within fourteen (14) days following the full administration of the Debtors' Estates, the Debtors shall file, on notice to the United States Trustee's Office, an application and proposed order seeking a final decree, closing the Cases pursuant to Bankruptcy Rule 3022.

10.3    **Conversion or Dismissal of the Cases Following Plan Failure.**  If the Plan is unable to be substantially consummated, then, after entry of any Sale Approval Orders pursuant to Section 10.3 of the Plan, the Bankruptcy Court shall, upon the request of the Debtors or on its own volition, enter an Order (a) converting the Bankruptcy Cases to chapter 7 cases and appointing a chapter 7 trustee; or (b) dismissing the Bankruptcy Cases.

*[Remainder of Page Intentionally Left Blank]*

Dated:    New York, NY
            February 16, 2024

Respectfully submitted,

BAY POINT CAPITAL PARTNERS II, LP

   By:   Bay Point Advisors LLC, its
          General Partner

      By:  /s/ Charles Andros

BRICKCHURCH ENTERPRISES, INC.              ABERDEEN ENTERPRISES, INC.

By:     /s/Mathew Kabatoff                  By:     /s/ Mathew Kabatoff
        Mathew Kabatoff                              Mathew Kabatoff

| Summary report: Litera Compare for Word 11.3.1.3 Document comparison done on 2/16/2024 6:36:10 PM | |
|---|---|
| **Style name:** Thompson Hine Standard | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4859-3414-5444/14/Bay Point-Brickchurch-Aberdeen - Joint Plan.docx | |
| **Modified DMS:** nd://4859-3414-5444/15/Bay Point-Brickchurch-Aberdeen - Joint Plan.docx | |
| **Changes:** | |
| Add | 4 |
| Delete | 4 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 8 |