UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x

In re:                                                         Chapter 11

ABERDEEN ENTERPRISES, INC.,                                    Case No. 23-72834-AST
BRICKCHURCH ENTERPRISES, INC.                                  Case No. 22-70914-AST

                                    Debtors.                   Jointly Administered
--------------------------------------------------------x

**BAY POINT CAPITAL PARTNERS II, LP'S (I) MEMORANDUM IN SUPPORT OF (A)
APPROVAL OF BAY POINT CAPITAL PARTNERS II, LP'S AND THE DEBTORS'
JOINT DISCLOSURE STATEMENT, AND (B) CONFIRMATION OF BAY POINT
CAPITAL PARTNERS II, LP'S AND THE DEBTORS' SECOND AMENDED JOINT
LIQUIDATING PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE,
AND (II) OMNIBUS REPLY TO OBJECTIONS**

TO THE HONORABLE ALAN S. TRUST
UNITED STATES BANKRUPTCY JUDGE:

Bay Point Capital Partners II, LP ("Bay Point") respectfully submits this combined (i)
memorandum in support of (a) approval of *Bay Point Capital Partners II, LP's and the Debtors'
Joint Disclosure Statement* [D.I. 218], filed on February 16, 2024 (the "Disclosure Statement"),
and (b) confirmation of *Bay Point Capital Partners II, LP's and the Debtors' Second Amended
Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 215], filed on February 16,
2024 (the "Plan" or the "Joint Plan"),[1] and (ii) omnibus reply to objections (the "Memorandum").
This Memorandum is filed in support of approval of the Disclosure Statement and confirmation of
the Plan, in addition to any testimony and evidence to be presented at the February 27, 2024,
hearing regarding approval of the Disclosure Statement and Plan (the "Confirmation Hearing").
The *Supplemental Declaration of John C. Allerding* (the "Supplemental Declaration") is attached
hereto as **Exhibit A** and incorporated herein by reference.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such
terms in the Plan.

## I.    **PRELIMINARY STATEMENT**

Aberdeen Enterprises, Inc. ("<u>Aberdeen</u>") and Brickchurch Enterprises, Inc. ("<u>Brickchurch</u>") (each a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") have continued to pursue a Sale of their valuable, contiguous ocean front Properties. The bid procedures governing the Sale were the subject of a separate application filed by the Debtors, were approved by the Bankruptcy Court (the "<u>Approved Bid Procedures</u>") pursuant to an Order entered on November 22, 2023 [D.I. 104], were amended by the Debtors on December 15, 2023 [D.I. 116] and again on January 26, 2024 [D.I. 166], and shall be deemed incorporated by reference for purposes of the Plan.

On January 24, 2024, the Debtors held an Auction under the terms of the Approved Bid Procedures. The highest and best bids at the Auction were in the respective sums of $40,500,000 (376 Gin Lane) and $38,500,000 (366 Gin Lane). Pursuant to the terms of the Approved Bid Procedures, the above-referenced bids are subject to a buyer's premium in the amount of $3,660,000 and $3,420,000, respectively. In addition, the prospective purchasers have agreed to increase the amount of the high bid by $1,501,440 (376 Gin Lane) and $1,425,280 (366 Gin Lane), contingent upon the Properties being sold pursuant to the Plan and 11 U.S.C. § 1146 being applicable to relieve the prospective purchasers of their obligations to pay any transfer taxes with respect to the Sales of the Properties. The high bids for the Properties, plus the buyer's premiums and the contingent bid enhancements, provide for a combined total purchase price of $89,006,720. Copies of the respective Purchase and Sale Agreements for each Property are annexed to the Plan as Exhibit A and Exhibit B.

On January 30, 2024, Bay Point filed its *Chapter 11 Liquidating Plan* [D.I. 173] (the "<u>Initial Bay Point Plan</u>"). On February 12, 2023, Bay Point filed its *First Amended Chapter 11 Liquidating Plan* [D.I. 194] (collectively with the Initial Bay Point Plan, the "<u>Bay Point Plan</u>").

On February 14, 2024, Bay Point and the Debtors filed their *Joint Liquidating Plan Under Chapter 11 of the Bankruptcy Code* [D.I. 209], which is amended and replaced by the Plan.

The Plan is proposed by Bay Point and the Debtors (collectively, the "Plan Proponents") and is intended to provide an efficient and effective method for distributing the Sale Proceeds resulting from the Auction and other monetary assets of the Debtors. Pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by Mathew Kabatoff ("Kabatoff") and Bay Point, consistent with the Approved Bid Procedures, unless otherwise provided herein. After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors.

At the Confirmation Hearing, the Plan Proponents seek approval of the Sale Transactions, the Plan, and the Disclosure Statement.  The Plan Proponents believe that the Plan presents the best means currently available for the orderly liquidation and distribution of the resulting Sale proceeds to the holders of allowed claims.  The Plan is the product of extensive work and good faith negotiations by and among the Debtors, Bay Point and the other constituents in this case. While three parties objected to Bay Point's initial plan and disclosure statement, the Plan Proponents believe that all objections are resolved by the Plan and/or will be resolved as of the Confirmation Hearing.  And, to the extent not otherwise resolved, the Plan Proponents respectfully request that any remaining objections be overruled for the reasons addressed further below.

This Memorandum demonstrates that the Disclosure Statement and the Plan satisfy all applicable provisions of the Bankruptcy Code and the requirements for approval and confirmation contained therein.  In sum, the Disclosure Statement contains adequate information and the Plan meets each of the applicable requirements for confirmation.  For these reasons, and the additional

reasons below, as will be demonstrated at the Confirmation Hearing, the Plan Proponents respectfully request that the Court overrule any objections, approve the Disclosure Statement, and confirm the Plan.

## II.   THE DISCLOSURE STATEMENT SHOULD BE APPROVED AS CONTAINING ADEQUATE INFORMATION

Under Section 1125 of the Bankruptcy Code, a disclosure statement must provide creditors and interest holders with "adequate information" regarding a proposed plan or reorganization.  The Bankruptcy Code defines "adequate information" as:

> [I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).  Thus, a disclosure statement must, as a whole, provide "adequate information so that an informed determination can be made whether to accept or reject a reorganization plan." *In re 266 Washington Assoc.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992).

The Court has broad discretion in determining whether a disclosure statement contains adequate information.  *See Mabey v. Southwestern Elec. Power Co. (In re Cajun Elec. Power Coop.)*, 150 F.3d 503, 518 (5th Cir. 1998).  The determination of the adequacy of information in a disclosure statement must be made on a case-by-case basis, focusing on the unique facts and circumstances of the case.  *See In re Scioto Valley Mortgage Co*., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988).

In this case, the Disclosure Statement contains information sufficient to make an informed judgment on the merits of the Plan.  *See 266 Washington*, 141 B.R. at 288.  The Disclosure Statement is extensive and comprehensive and contains information that is relevant and material

to the decision of a creditor whether to object to the Plan.  Specifically, the Disclosure Statement sets forth information with respect to, among other things, the following:  (a) the terms of the Plan, (b) events preceding the Debtors' Chapter 11 filings; (c) the Debtors' relationships with creditors; (d) the events that led to the development of the Plan; (e) the legal effects of the Plan; (f) the value of distributions to be received by holders of claims against the Debtors' estate; (g) risk factors affecting the Plan; (h) the method and timing of distributions under the Plan; (i) the voting procedures and confirmation requirements for the Plan; (j) the Sale of the Properties; (k) a statement explaining that the Plan satisfies the "best interest test" under Section 1129(a)(7) of the Bankruptcy Code even though certain classes of claims or interests were impaired by the Plan; (l) appropriate disclaimers; (m) certain tax consequences of the Plan; and (o) Plan alternatives.

Accordingly, Bay Point submits that the Disclosure Statement contains adequate information within the meaning of Section 1125 of the Bankruptcy Code and, on that basis, should be approved at the Confirmation Hearing.

## III.    THE PLAN SHOULD BE CONFIRMED BECAUSE IT COMPLIES WITH SECTION 1129 OF THE BANKRUPTCY CODE

To achieve confirmation of the Plan, the Plan Proponents must demonstrate that the Plan satisfies Section 1129 of the Bankruptcy Code by a preponderance of the evidence. *See In re Chemtura Corp.*, 439 B.R. 561, 608 (Bankr. S.D.N.Y. 2010); *see also In re Young Broad. Inc.*, 430 B.R. 99, 128 (Bankr. S.D.N.Y. 2010).  Based on the Court filings, as well as the argument and evidence that will be presented at the Confirmation Hearing, the Plan Proponents will demonstrate, by a preponderance of the evidence, that the Plan complies with all relevant provisions contained in Section 1129 of the Bankruptcy Code.

### A.    THE PLAN SATISFIES ALL APPLICABLE REQUIREMENTS OF SECTION 1129(A) OF THE BANKRUPTCY CODE

### (i)      The Plan Complies with Section 1129(a)(1)

Section 1129(a)(1) of the Bankruptcy Code requires the court to confirm a plan only if the plan complies with the applicable provisions of the Bankruptcy Code.  Sections 1122 and 1123 are the substantive provisions that are most relevant in satisfying Section 1129(a)(1).  *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d Cir. 1988).  Section 1122 governs classification of claims and interests, and Section 1123 sets forth the provisions that are required to be included - and those that may be included - in a Chapter 11 plan.  As shown below, the Plan satisfies the requirements of Section 1129(a)(1).

### (a)      Classification of Claims and Interests (§§ 1122 and 1123(a)(1))

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate, subject to Section 1122, classes of claims, other than claims of the kind specified in Sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (unsecured priority tax claims), and classes of interests.  In designating classes of claims and interests in the Plan, the Plan Proponents have satisfied the requirement of Section 1123(a)(1).

Under Section 1122(a) of the Bankruptcy Code, a claim or interest may be placed in a particular class under a plan only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan only places claims or interests in each class that are substantially similar to the other claims or interests in the Class.  Thus, the Plan complies with Section 1122(a).

### (b)      Identification of Unimpaired Claims and Interests (§ 1123(a)(2))

Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under the plan.  The Plan specifies the classes of claims that are not impaired under the Plan.  Specifically, Classes 2 and 3 are unimpaired. Thus, the Plan complies with Section 1123(a)(3).

(c)     <u>Specification of Treatment of Impaired Claims (§ 1123(a)(3))</u>

Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan.  The Plan specifies the treatment of claims in Classes 1, 4, and 5, which are impaired.  Thus, the Plan complies with Section 1123(a)(3).

(d)     <u>Same Treatment for Class Members (§ 1123(a)(4))</u>

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment. The Plan provides for the same treatment of each claim or interest of a particular class and complies with Section 1123(a)(4).

(e)     <u>Adequate Means for Implementation (§ 1123(a)(5))</u>

Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the plan's implementation and provides a number of examples of methods for doing so. One such method is "sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of property of the estate among those having an interest in such property of the estate."  11 U.S.C. § 1123(a)(5)(D).  The examples of adequate means for implementation of a plan provided in Section 1123(a)(5) are illustrative and the section does not exclude or limit any other means.  Here, the Plan contains adequate means of implementation; namely, the Sale of the Properties.

(f)     <u>Issuance of Non-Voting Equity Securities (§ 1123(a)(6))</u>

Section 1123(a)(6) of the Bankruptcy Code requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in the case of any

7

class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends.  The Plan is a liquidating plan and does not provide for the issuance of equity securities.  Accordingly, Section 1123(a)(6) is not applicable. *See*, *e.g.*, *In re PC Liquidating Corp.*, No. 05-89022-288, 2006 Bankr. LEXIS 4638, at *16 (Bankr. E.D.N.Y. Nov. 13, 2006) (approving disclosure statement for liquidating plan) ("Consistent with section 1123(a)(6), the Debtor is liquidating and will not issue any non-voting equity securities. Accordingly, the Plan satisfies section 1123(a)(6) of the Bankruptcy Code"); *see also In re Northfield Labs., Inc.*, No. 09-11924, 2009 Bankr. LEXIS 4993, at *11 (Bankr. D. Del. 2009) (confirming liquidating plan) ("Because the Plan is a liquidating plan, section 1123(a)(6), which requires a plan to provide for the inclusion in the debtor's corporate charter of provisions prohibiting the issuance of nonvoting equity securities, is inapplicable").

(g)      <u>Selection of Directors and Officers (§ 1123(a)(7))</u>

Section 1123(a)(7) of the Bankruptcy Code states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee under the plan. Section 1129(a)(5), which is discussed below, augments Section 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of any affiliate of the debtor participating in a plan with the debtor, or of a successor to the debtor under the plan.  In addition, Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of

any director, officer or voting trustee be consistent with the interests of creditors and equity security holders and with public policy.

As set forth in the introductory section of the Plan, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by Kabatoff and Bay Point, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker (as such term is defined in the Plan) and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors . The Plan, therefore, satisfies Section 1123(a)(7) of the Bankruptcy Code.

(h)      Discretionary Plan Provisions in Section 1123(b)

Section 1123(b) of the Bankruptcy Code grants broad authority to proponents of Chapter 11 plans to include discretionary plan provisions.  *See United States v. Energy Res. Co*., 495 U.S. 545, 549 (1990) ("The Bankruptcy Code grants the bankruptcy courts residual authority to approve chapter 11 plans including any appropriate provision not inconsistent with the applicable provisions of chapter 11") (cleaned up).   In accordance with Section 1123(b), the Plan contains various discretionary provisions addressed below, each of which is (i) appropriate and necessary to effectuate the Sale of the Properties contemplated in the Plan for the benefit of all stakeholders in these bankruptcy cases, and (ii) consistent with the applicable provisions of the Bankruptcy Code:

*The Plan's Treatment of Classes Should be Approved (§ 1123(b)(1))*

Section 1123(b)(1) of the Bankruptcy Code allows a plan to "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan impairs Classes 1, 4, and 5, but leaves Classes 2 and 3 unimpaired.  Such treatment is permitted

by the Bankruptcy Code.

### *The Plan's Treatment of Leases and Executory Contracts Should be Approved (§ 1123(b)(2))*

Section 1123(b)(2) of the Bankruptcy Code permits a plan, subject to Section 365, to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1123(b)(2). Article VI of the Plan states that, on the Plan's effective date, all executory contracts to which each Debtor is a party shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

### *The Sale of the Properties Pursuant to the Plan Should be Approved (§ 1123(b)(4))*

Section 1123(b)(4) of the Bankruptcy Code permits a plan to provide for the "sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4). Here, Article IV of the Plan provides for the Sale of the Properties and the distribution of sale proceeds for the benefit of the Debtors' creditors. The Sale Transactions under the Plan should be approved.

### *Modification of Claims (§ 1123(b)(5))*

Section 1123(b)(5) allows a plan to, *inter alia*, modify the rights of holders of secured claims and unsecured claims or leave unaffected the rights of holders of any class of claims. Here, to the extent the Plan modifies the rights of holders of claims or interests, such modifications should be approved.

### *The Plan's Limited Exculpation Provisions Should be Approved*

The Plan contains two narrowly tailored exculpation provisions for the benefit of the Decision Makers and for the Escrow Agent. First, Section 4.1 of the Plan states the following, in relevant part, with respect to the Decision Makers:

Except for gross negligence or willful misconduct, the Decision Makers shall not have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan; *provided*, *however*, that nothing contained herein shall in any way negate Kabatoff's fiduciary responsibilities on behalf of the Debtors' estates.

*Plan*, at 18-19.

Second, Section 4.5(b) of the Plan contains the following protections for the Escrow Agent:

The Escrow Agent shall not be deemed an officer or agent of the Debtors. The Escrow Agent may, with the consent of the Debtors, employ or contract with such third parties as appropriate to assist in the performance of its duties under the Plan. Except for gross negligence, or willful misconduct, the Escrow Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan (including, without limitation, distributions of Sale Proceeds pursuant to the Plan), the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, except in the case of gross negligence or willful misconduct. For the avoidance of doubt, the Escrow Agent shall have no responsibility or liability to any entity for the failure of Kabatoff to fulfill any of his obligations under the Plan. The Escrow Agent is not a receiver, trustee, or assignee.

*Plan*, at 20.

Exculpation provisions in Chapter 11 plans are important to enhance open and fair negotiations between adverse parties. Indeed, "exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures" and "seek vengeance against other parties; or simply wish to second guess the decisionmakers." *In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011). That is why "[c]ourts in this and other districts have approved exculpation provisions similar in scope and application for estate fiduciaries and non-estate fiduciaries." *In re Klaynberg*, No. 22-10165 (MG), 2023 Bankr. LEXIS 2055, at *51 (Bankr. S.D.N.Y. Aug. 21, 2023) (collecting cases). Here, the Plan's exculpatory

provisions are reasonable in scope, necessary to protect the Decision Makers and the Escrow

Agent, and essential to the Plan's execution.  Removing the Plan's exculpation provisions would

likely "unravel the entire fabric of the Plan, and would be inequitable to all those who participated

in good faith to bring it into fruition."  *In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005).  For

all of the reasons, and as will be demonstrated at the Confirmation Hearing, the Plan's exculpation

provisions are necessary, appropriate, and should be approved.

<u>*The Plan's Injunctions are Narrowly Tailored and Should be Approved*</u>

Section 7.1 of the Plan contains the following injunction against interference with the Plan:

> Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided that*, for the avoidance of doubt, nothing contained herein shall limit any rights previously granted to Bay Point under the DIP Financing Order and the DIP Loan Documents in relation to non-Debtor property.

*Plan*, at 30.

Next, Section 4.5(c) of the Plan states:

> No Person, including Debtors, Bay Point, Charles Andros, the holders of any Equity Interests, Kabatoff, and Blouin, shall interfere with the Escrow Agent in the performance of its duties, and any party with notice of the Confirmation Order shall be enjoined from taking any action that could reasonably be deemed to be an intentional interference with the Escrow Agent in the performance of its duties; *provided that*, nothing contained herein shall prohibit or inhibit a Decision Maker from exercising the discretion provided to it under the terms of the Plan and Approved Bid Procedures.

*Plan*, at 20-21.

These injunctions are reasonable in scope, necessary for the Plan's execution, and should

be approved as they are non-controversial.

*The Plan's Provisions are Consistent with the Other Provisions of the Bankruptcy Code*
*(§ 1123(b)(5))*

Finally, Section 1123(b)(6) of the Bankruptcy Code permits a plan to include "any other appropriate provision not inconsistent with the applicable provisions of this title."  The provisions in the Plan are necessary and appropriate to effectuate and consummate the Sale of the Properties contemplated therein for the benefit of all stakeholders in these bankruptcy cases.  And the Plan provisions are consistent with the applicable provisions of the Bankruptcy Code.

### (ii)    The Plan Complies with Section 1129(a)(2)

Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code.  The "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan." *In re Texaco. Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y. 1988) (holding that the "principal purpose of Section 1129(a)(2) is to assure that the proponents have complied with the requirements of section 1125 in the solicitation of acceptances to the plan."). Section 1125 prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1126 provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. 11 U.S.C. § 1126.

On October 10, 2023, the Court entered the Order Scheduling a Concurrent Hearing to consider confirmation of the Debtors' original joint plan and approval of the Debtors' original joint

disclosure statement.  On the same day, the Court entered a *Contested Matter Scheduling Order* [D.I. 75].

On October 11, 2023, the Debtors filed the First Am. Plan and the First Am. Disclosure Statement.

On October 12, 2023, a copy of the following documents were served on all necessary creditors and parties in interest: (i) a ballot, (ii) the First Am. Plan, (iii) the First Am. Disclosure Statement, and (iv) the Court's Order Scheduling a Concurrent Hearing. *See Affidavit of Service of Randy Lowry* [D.I. 78].

On October 27, 2023, counsel for Debtor Aberdeen filed the Aberdeen Certification, stating that the Debtors solicitated ballots from all creditors and interest holders, and only two ballots were received – Bay Point voted to accept the Debtors' First Am. Plan, and the IRS voted to reject the Debtors' First Am. Plan.

On November 13, 2023, a Notice of Adjournment was entered, indicating that the hearing to consider the First Am. Plan and First Am. Disclosure Statement was adjourned to December 20, 2023. *See Notice of Adjournment* [D.I. 95].

On November 29, 2023, the Court entered an Order adjourning the Confirmation Hearing to January 17, 2024. *See Amended Order* [D.I. 108]. The Court also entered a *Contested Matter Scheduling Order* [D.I. 109]. On January 17, 2024, the Confirmation Hearing was adjourned to February 13, 2024.

On January 27, 2024, counsel for Bay Point wrote a letter to the Court (i) notifying the Court of the results of the Auction, (ii) notifying the Court that Bay Point and the Debtors were finalizing a consensual plan of liquidation, and (iii) requesting an additional extension through January 30, 2024, to file an amended plan. [D.I. 168].

On January 30, 2024, Bay Point's Original Plan and Bay Point's Original Disclosure Statement were filed.

On February 9, 2024, the Debtors filed the Second Amended Plan, incorporating most of the provisions of Bay Point's Original Plan.

On February 12, 2024, Bay Point filed its (i) *First Amended Chapter 11 Liquidating Plan* [D.I. 194], (ii) *First Amended Disclosure Statement* [D.I. 195], and (iii) *Memorandum of Law in Support of (I) Approval of Bay Point's First Amended Disclosure Statement, and (II) Confirmation of Bay Point's First Amended Plan*. These filings were made by Bay Point in part to address the concerns raised by various objections to Bay Point's Original Plan. These filings were properly served upon all the parties listed in the Certificates of Service that were filed on February 12, 2024 [D.I. 204, 205].

At the February 13, 2024 hearing, the Court found that the Debtors' Properties had been extensively marketed, the sale process followed by the parties was fair, vigorous, and resulted in the highest and best achievable value for the Properties, and the Court approved the Sale of the Debtors' Properties.

On February 14, 2024, the Plan Proponents filed *Bay Point Capital Partners II, LP's and the Debtors' Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 209].

On February 16, 2024, the Plan Proponents filed (i) the Plan, (ii) the Disclosure Statement; and (iii) the Confirmation Hearing Notice (collectively, the "Filed Documents").  On the same day, the Court entered the Scheduling Order, establishing certain deadlines in connection with the adjourned Confirmation Hearing.

The Filed Documents were properly served on all necessary creditors and parties in interest. As set forth more fully in the Amended Certificate of Service, on February 16, 2023, the

Filed Documents were (i) served electronically upon the counsel and parties of record who consented to such service through the Court's Electronic Case Filing System; (ii) served via direct e-mail to the individuals listed in Exhibit A to the Amended Certificate of Service; (iii) deposited with a Federal Express carrier for Priority Overnight delivery to the parties listed in Exhibit B to the Amended Certificate of Service; and (iv) deposited with a USPS carrier for Overnight Express delivery to the parties listed in Exhibit C to the Amended Certificate of Service. Moreover, on February 17, 2024, the Filed Documents were also deposited with a courier for immediate hand delivery to Federal Express for Priority Overnight delivery to the parties listed in the service list attached as Exhibit D to the Amended Certificate of Service (each of whom had already received service via other means). Finally, on February 18 and 19, 2024, the Filed Documents were served via direct e-mail to the parties listed in the service list attached as Exhibit E to the Amended Certificate of Service.

In addition, on February 20, 2024, the undersigned caused a true and accurate copy of Schedule A to the Plan (which details certain closing adjustments from the Sale Proceeds) directly via e-mail to those individuals listed on Exhibit A to the *Certificate of Service* [D.I. 224] (the "February 20 Certificate of Service").  The February 20 Certificate of Service is incorporated herein by reference. Schedule A was inadvertently left off the Plan when it was filed.

The Plan Proponents did not solicit votes from Classes 2 and 3 of the Plan, which are unimpaired, and conclusively presumed to have accepted the Plan pursuant to Section 1126(f). The Plan Proponents likewise did not solicit votes from Classes 4 and 5, which are not entitled to any distributions under the Plan and are deemed to reject the Plan pursuant to Section 1126(g).  Class 1 is the only impaired Class entitled to vote on the Plan. The Plan Proponents delivered a ballot to Bay Point, who is the only holder of Claims in Class 1 entitled to vote on the Plan. As will be

evidenced by the Voting Report, Bay Point timely submitted its Ballot and voted to accept the Plan, thereby satisfying Section 1126(c) of the Bankruptcy Code.

Accordingly, the Plan Proponents have satisfied Section 1129(a)(2) of the Bankruptcy Code.

### (iii)    The Plan Complies with Section 1129(a)(3)

Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  Courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re The Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997).  The Plan was proposed in good faith. The Plan has the legitimate purpose of selling the Properties and distributing the Sale proceeds with the goal of maximizing the returns available to creditors.  Additionally, none of the mechanisms contained in the Plan are "forbidden by law."  Indeed, the Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtors' creditors.  Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with Section 1129(a)(3).

### (iv)    The Plan Complies with Section 1129(a)(4)

Section 1129(a)(4) of the Bankruptcy Code requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable.

The procedures provided by the Plan for review and ultimate determination by the Court of the professional fees and expenses to be paid by the Debtors satisfy the requirement of Section 1129(a)(4). *See In re Future Energy Corp.,* 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions – *e.g.*, §§ 328, 329, 330, 331 and 503(b) - - and need not be explicitly provided for in a Chapter 11 plan."). The Plan complies with Section 1129(a)(4).

### (v)    The Plan Complies with Section 1129(a)(5)

Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve, after confirmation, as a director, officer, or voting trustee of the debtor; that the appointment or continuance of such party be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors.

Here, the Plan explains that, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by the Decision Makers, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. The Plan also states that, after the Effective Date, Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates.  Thus, the requirements of Section 1129(a)(5) have been satisfied.

### (vi)    The Plan Complies with Section 1129(a)(7)

Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of creditors" test. That section provides that with respect to each impaired class of claims or interests, each holder

of a claim or interest of such class has accepted the plan or will receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 on such date.

The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a Chapter 7 trustee, as well as those fees and expenses that might be payable to attorneys and other professionals that such a trustee might engage. Those fees and expenses, as well as other claims that might arise in a liquidation case or result from the pending Chapter 11 Cases, including any unpaid fees and expenses incurred by the Debtors during the Chapter 11 Cases, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition unsecured claims. There is no reason to believe that a Chapter 7 liquidation will result in a higher Sale price than the proposed Chapter 11 liquidation. Because of the substantial secured debt that encumbers the Properties, which continues to accrue interest, the secured debt will undoubtedly be greater through a Chapter 7 liquidation (which is expected to take significantly longer than the Chapter 11 liquidation proposed as part of the Plan), resulting in a lower (or at least no greater) recovery for unsecured claims. This is in addition to Chapter 7 trustee fees, which are anticipated to be several million dollars, and legal fees that would be incurred by the Chapter 7 trustee in administering the bankruptcy estate. All of these fees will be avoided by having the Properties sold in accordance with the provisions of the Plan. Moreover, the sale will almost certainly be completed in substantially less time than a sale in a Chapter 7 liquidation.

The best interests test does not apply to holders of Claims in Classes 2 and 3 as they are unimpaired. The best interests test is also satisfied with regard to Classes 4 and 5, because while the holders of Claims in Classes 4 and 5 will not receive any distribution under the Plan, they similarly would not receive any distribution in a Chapter 7 liquidation, and thus their treatment is

not less favorable under the Plan than what they would receive in a Chapter 7 liquidation. As applied to Classes 4 and 5, all holders of impaired claims and interests will receive property with a value not less than the value such holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code. Based upon the foregoing, Bay Point submits that the best interests test is satisfied.

### (vii)    The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8)

Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by the plan, or the proponent must satisfy the cramdown provisions of Section 1129(b) with respect to such classes of claims or equity. Class 1 is the only impaired class entitled to vote on the Plan. Class 1 has accepted the Plan. Classes 2 and 3 are unimpaired and therefore conclusively deemed to accept the Plan. *See* 11 U.S.C. § 1126(f). Classes 4 and 5 are impaired but are deemed to reject the Plan. *See* 11 U.S.C. § 1126(g). Even though certain classes are deemed to reject the Plan, the Plan is confirmable because it satisfies Section 1129(b), as explained below.

### (viii)    The Plan Complies with Section 1129(a)(9)

Section 1129(a)(9) of the Bankruptcy Code provides, in relevant part, that except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan must provide that:

(A)    with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B)    with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount

of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C)    with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D)    with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9)(A)-(D).

Here, the Plan provides for the payment in full of the Non-Tax Priority Claims in Class 3. The Plan Proponents are optimistic that the Plan's proposed treatment of Allowed Administrative Expense Claims, Professional Fee Claims, and Allowed Priority Tax Claims will be agreed to by the holders of such claims on or prior to the Confirmation Hearing. The Plan Proponents therefore believe that the Plan will comply with Section 1129(a)(9)(C).

### (ix)    The Plan Complies with Section 1129(a)(10)

Section 1129(a)(10) provides that to the extent there are impaired classes of claims, at least one impaired class of claims must accept the Plan. The Plan satisfies this requirement, since Bay Point has voted to accept the Plan. *See*, *e.g.*, *In re L&J Anaheim Assocs.*, 995 F.2d 940, 942-43 (9th Cir. 1993) (affirming confirmation of plan when Section 1129(a)(10) was satisfied by vote from impaired plan proponent); *In re 431 W. Ponce De Leon, LLC*, 515 B.R. 660, 677 (Bankr. N.D. Ga. 2014) (explaining there is no language in the Bankruptcy Code that would limit votes to

non-proponents of a plan and holding that Section 1129(a)(10) was satisfied by vote of impaired plan proponent).

### (x)     The Plan Complies with Section 1129(a)(11)

Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test requires the court to determine whether the plan is workable and has a reasonable likelihood of success. *See Johns-Manville*, 843 F.2d at 649.   For purposes of Section 1129(a)(11), the court "need not require a guarantee of success." *In re T-H New Orleans LP*, 116 F.3d 790, 801 (5th Cir. 1997); *In re Brice Rd. Developments, LLC*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008).   In the context of a liquidating plan "feasibility is established by demonstrating the debtor's ability to satisfy the conditions precedent to the effective date and otherwise have sufficient funds to pay for the costs of administering and fully consummating the Plan and closing the Chapter 11 Cases." *In re Finlay Enterprises, Inc.*, No. 09-14873 (JMP), 2010 Bankr. LEXIS 5592, at **155, 156 (Bankr. S.D.N.Y. May 18, 2010).

The Debtors will have sufficient funds from the Sale Proceeds to make the distributions set forth in Sections 5.8 and 5.9 of the Plan.   Consequently, the Plan has more than a reasonable likelihood of success and satisfies the feasibility requirements of Section 1129(a)(11) of the Bankruptcy Code.

### (xi)     The Plan Complies with Section 1129(a)(12)

Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan." Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against

the estate under [section 1930] of title 28" are afforded priority as administrative expenses. Section

2.4 of the Plan provides, in relevant part, that:

> [T]he Debtors shall pay, on the Effective Date, all Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon as of the Effective Date. All remaining Bankruptcy Fees assessed against the Debtors under 28 U.S.C. § 1930 from the Effective Date through the date of dismissal, conversion or entry of a final decree, shall be paid from the Bankruptcy Fees Reserve.

*Plan*, at 13. Therefore, the Plan satisfies all applicable requirements of Section 1129(a)(12) of the

Bankruptcy Code.

### (xii)    The Other Provisions of Section 1129(a) are Inapplicable

Section 1129(a)(6) does not apply, since the Debtors were never the type of business that

was subject to rate controls from a governmental entity. The Debtors do not have obligations for

"retiree benefits," thus Section 1129(a)(13) is not applicable. The Debtors have no obligations to

pay domestic support obligations, so Section 1129(a)(14) is not applicable. The Debtors are not

individuals, so Section 1129(a)(15) does not apply. Finally, the Debtors are not a nonprofit entity,

so Section 1129(a)(16) is not applicable.

### B.    THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(B) OF THE BANKRUPTCY CODE

Because not all classes have accepted the Plan, the Plan Proponents seek confirmation

pursuant to Section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code

provides a mechanism for confirmation of a plan in circumstances where one or more impaired

classes of claims and interests does not accept a plan, as required by Section 1129(a)(8). This

mechanism is frequently referred to as a "cram down." Section 1129(b) provides in pertinent part:

> If all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with

respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b).  As one court explained, "the Court may confirm a plan over a dissenting impaired class of claims so long as the plan is 'fair and equitable' and does not 'discriminate unfairly' with respect to the dissenting class." *See In re LightSquared Inc.*, 513 B.R. 56, 92 (Bankr. S.D.N.Y. 2014) (citing *Johns-Manville*, 843 F.2d at 650).  The holder(s) of the claims in Classes 4 and 5 are impaired and deemed to have rejected the Plan.  Accordingly, the Plan Proponents invoke Section 1129(b) with respect to Classes 4 and 5.

### (i)    The Plan Does Not Discriminate Unfairly

Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination between classes—it only prohibits unfair discrimination.  *See In re Tribune Co.*, 472 B.R. 223, 242 (Bankr. D. Del. 2012) (explaining that "[t]he pertinent inquiry is not whether the plan discriminates, but whether the proposed discrimination is "unfair.").  A plan unfairly discriminates only if similar classes are treated differently without a reasonable basis for the disparate treatment. *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).  As between two classes of claims, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests; or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. *See*, *e.g.*, *Johns-Manville*, 68 B.R. at 636; *Buttonwood Partners*, 111 B.R. at 63.

The Plan Proponents believe that, under the Plan, all impaired classes are treated in a manner that is consistent with the treatment of other classes that are similarly situated, if any, and no class will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims or interests in such Class.  Accordingly, the Plan Proponents believe that the Plan does not discriminate unfairly as to any impaired class.

### (ii)        **The Plan is Fair and Equitable**

Pursuant to Section 1129(b)(2) of the Bankruptcy Code, a plan must be fair and equitable with respect to each class that rejects the Plan.  Indeed, the "absolute priority rule" requires that, if the holders of claims or interests in a particular class that votes to reject a plan receive less than full value for their claims or interests, no holder of claims or interests in a junior class may receive or retain any property under the plan.  *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 202 (1988) (explaining that the absolute priority rule "provides that a dissenting class of unsecured creditors must be provided for in full before any junior class can receive or retain any property"); *Bank of Am. Nat. Trust and Sav. Ass'n v. 203 North LaSalle St. P'ship*, 526 U.S. 434, 441-42 (1999) ("As to a dissenting class of impaired unsecured creditors, such a plan may be found to be 'fair and equitable' only if the allowed value of the claim is to be paid in full, § 1129(b)(2)(B)(i), or, in the alternative, if 'the holder of any claim or interest that is junior to the claims of such [impaired unsecured] class will not receive or retain under the plan on account of such junior claim or interest any property,' § 1129(b)(2)(B)(ii). That latter condition is the core of what is known as the 'absolute priority rule.'").

Under the Plan, Class 1 is impaired but has voted to accept the Plan.  Classes 2 and 3 are unimpaired and conclusively deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).  Classes 4 and 5 are impaired but will receive no distributions under the Plan.  Thus, Classes 4 and 5 are deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g).  The Plan is fair and equitable with respect to Classes 4 and 5 despite the fact that neither class will receive any distributions under the Plan because there are no classes junior to Classes 4 and 5 that will receive distributions under the Plan.  Given this fact, and the above facts, the Plan is fair and equitable to the holders of claims and interests in these Classes 4 and 5.

### C.    THE PLAN COMPLIES WITH THE OTHER PROVISIONS OF SECTION 1129 OF THE BANKRUPTCY CODE

The Plan also satisfies the remaining provisions of Section 1129 of the Bankruptcy Code. First, Section 1129(c) generally provides that the court may confirm only one plan. Although multiple plans have been filed over the course of these cases, the Plan Proponents have agreed on the terms of the Plan, which is the only plan presently before the Court.

Second, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 and the Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.  *See In re 300 Wash. St. LLC*, 528 B.R. 534, 554 (Bankr. E.D.N.Y. 2015) ("Under § 1129(d), the governmental unit has the burden of proving that the principal purpose of the plan is tax avoidance.").  Third, Section 1129(e) is not applicable since the Debtors' cases are not "small business cases."

The Plan, therefore, satisfies the Bankruptcy Code's confirmation requirements.

## IV.    <u>ANY UNRESOLVED OBJECTIONS SHOULD BE OVERRULED</u>

Objections to Bay Point's Original Plan were filed by (i) the Office of the United States Trustee [D.I. 182] (the "<u>UST Objection</u>"), (ii) the Law Offices of Avrum J., Rosen, PLLC [D.I. 184] (the "<u>Rosen Limited Objection</u>"), and (iii) the Internal Revenue Service [D.I. 185] (the "<u>IRS Objection</u>" and collectively with the UST Objection and the Rosen Limited Objection, the "<u>Objections</u>").  In addition, on February 1, 2024, Louise T. Blouin filed an Amended Affidavit [D.I. 176] (the "<u>Blouin Affidavit</u>").

The Plan Proponents believe that these Objections are (a) moot because they are (i) directed to Bay Point's Original Plan and Disclosure Statement, or (ii) resolved by the Plan and Disclosure Statement filed by the Plan Proponents; or (b) will be resolved prior to the Confirmation Hearing. To the extent that some or all of the Objections are not resolved prior to the Confirmation Hearing,

the Objections should be overruled for all the reasons stated in Bay Point's *Memorandum of Law in Support of (I) Approval of Bay Point's First Amended Disclosure Statement, and (II) Confirmation of Bay Point's First Amended Plan* [D.I. 196], which is incorporated herein by reference.

On February 22, 2024, the UST filed a limited objection to the Plan and the Disclosure Statement [D.I. 225] (the "UST's Limited Objection").  The UST raised numerous arguments in its objections to Bay Point's Original Plan and Disclosure Statement.  However, the UST Limited Objection appears to narrow the UST's objections to two issues:  First, the UST argues that "the Plan does not assign the responsibility of preparing a tax return for the estates of both Debtors." Not so.  The Plan's Preamble specifically states that: "After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates."  The Plan is clear on who will file the tax returns.  Second, the UST argues that the Plan "leaves the Debtors without a true fiduciary to perform such tasks as objecting to the claim filed by Bay Point."  But again, after the Effective Date, Kabatoff shall remain as the sole Decision Maker and fiduciary for the Debtors' Estates. And Section 3.1 of the Plan specifically reserves whatever rights the Debtors may have to challenge the amount of the Bay Point Debt (subject to the provisions in that Section 3.1).  For these reasons, the UST's Limited Objection should be overruled.

## V.    WAIVER OF STAY WITH RESPECT TO CONFIRMATION ORDER

Bankruptcy Rule 3020(e) states that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  Bankruptcy Rule 6004(h) provides a similar stay to orders authorizing the use, sale,

or lease of property (other than cash collateral).  *See* Fed. R. Bankr. P. 6004(h).   Each rule also permits modification of the imposed stay upon court order.  *See id*.  Bay Point respectfully submits that good cause exists for waiving and eliminating the stays under Bankruptcy Rules 3020(e) and 6004(h), so that the Confirmation Order will be effective immediately upon its entry. This request is appropriate in these circumstances to permit the expeditious consummation of the Sale Transactions.  Any delay will likely cause irreparable harm to the bankruptcy estates.

## VI.    **RESERVATION OF RIGHTS**

The Plan Proponents expressly reserve the right to address any objections raised after the filing of this Memorandum at the Confirmation Hearing.

## VII.    **CONCLUSION**

For all the aforementioned reasons, and as will be further demonstrated at the Confirmation Hearing, Bay Point submits that the Disclosure Statement and the Plan satisfy all of the applicable requirements in the Bankruptcy Code and the Bankruptcy Rules. Accordingly, Bay Point respectfully requests that the Bankruptcy Court enter an order, substantially in the form of the proposed *Findings of Fact, Conclusions of Law, and Order (I) Confirming Bay Point Capital Partners II, LP's and the Debtors' Second Amended Joint Liquidating Plan Under Chapter 11 of the Bankruptcy Code, (II) Approving Bay Point Capital Partners II, LP's and the Debtors' Joint Disclosure Statement, and (III) Granting Related Relief*, filed on February 23, 2024, (i) approving the adequacy of the Disclosure Statement and the disclosures contained therein, (ii) confirming the Plan and approving the Sale Transactions contemplated therein, (iii) waiving the 14-day stay of the Confirmation Order, (iv) overruling any and all unresolved objections, and (v) granting such other relief as is just and proper.

Dated:  February 23, 2024

Respectfully submitted,

**THOMPSON HINE LLP**

By: /s/ John C. Allerding
John C. Allerding (admitted pro hac vice)
3560 Lenox Road NE, Suite 1600
Atlanta, Georgia 30326
P: 404.407.3676 / F: 404.541.2905
John.Allerding@ThompsonHine.com

-*and*-

Alan R. Lepene (admitted pro hac vice)
3900 Key Center, 127 Public Square
Cleveland, Ohio 44114
P: 216.566.5500 / F: 216.566.5800
Alan.Lepene@ThompsonHine.com

*Counsel for Bay Point Capital Partners II, LP*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X6
In re:                                                          Chapter 11

ABERDEEN ENTERPRISES, INC.,                      Case No. 23-72834-AST
BRICKCHURCH ENTERPRISES, INC.,                   Case No. 22-70914-AST

                                Debtors.         Jointly Administered
-----------------------------------------------------------------X

## SUPPLEMENTAL DECLARATION

I, John C. Allerding, hereby make this Supplemental Declaration (the "<u>Supplemental</u>
<u>Declaration</u>") pursuant to 28 U.S.C. § 1746 and state that the following is true to the best of my
knowledge, information, and belief:

1.      I am a partner at Thompson Hine LLP, and counsel to Bay Point Capital Partners
II, LP ("<u>Bay Point</u>") in the above-captioned, jointly administered cases (these "<u>Cases</u>").  Except
as otherwise indicated, all facts set forth in this Supplemental Declaration are based on my personal
knowledge. If called upon to testify, I would testify competently to the facts set forth herein.

2.      I respectfully submit this Supplemental Declaration in support of (a) confirmation
of *Bay Point Capital Partners II, LP's and the Debtors' Second Amended Joint Liquidating Plan
under Chapter 11 of the Bankruptcy Code* [D.I. 215], filed on February 16, 2024 (the "<u>Plan</u>" or
the "<u>Joint Plan</u>"),[1] including the Sale of the Properties (the "<u>Sale Transactions</u>") contemplated
thereunder; and (b) approval of the *Bay Point Capital Partners II, LP's and the Debtors' Joint
Disclosure Statement* [D.I. 218], filed on February 16, 2024 (the "<u>Disclosure Statement</u>").

## BACKGROUND

### A.      <u>General Background</u>

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to
them in the Plan.

3.      On April 30, 2022, Brickchurch Enterprises, Inc. ("Brickchurch") filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of New York (this "Court") under Case No. 22-70914 (the "Brickchurch Case").

4.      On August 2, 2023, Aberdeen Enterprises, Inc. ("Aberdeen", and collectively with Brickchurch, the "Debtors"), filed a separate petition for relief under Chapter 11 of the Bankruptcy Code in this Court under Case No. 23-72834 (the "Aberdeen Case", and collectively with the Brickchurch Case, these "Chapter 11 Cases").

5.      On September 6, 2023, this Court entered an *Order Granting Motion for Joint Administration*, which provided for the joint administration of the Debtors' Chapter 11 Cases.

**B.      The Sale Process**

6.      On September 5, 2023, the Debtors filed a *Joint Motion Seeking Entry of an Order Under Bankruptcy Code Sections 363(a), (b), (f), and (m) and Bankruptcy Rules 2002, 6004, and 9004: (I) Authorizing Debtors to Sell to the Highest and Best Bidder at an Auction Sale the Estates' Interest in the Real Properties Known as (a) 366 Gin Lane, Southampton, New York 11968 and (b) 376 Gin Lane, Southampton, New York 11968; and (II) Scheduling a Hearing to Approve Such Sale to the Highest and Best Bidder; and (III) Approving Certain Bidding Procedures; and (IV) Approving the Manner and Extent of Notice of Such Auction Hearing* [D.I. 46] (the "Sale Motion").

7.      On November 22, 2023, the Court entered that certain *Order Approving Bid Procedures* [D.I. 104] (the "Sale Order"). Among other things, the Sale Order authorized and approved those certain *Bidding Procedures* [D.I. 67-1], which were subsequently modified pursuant to those certain *First Amended Approved Bidding Procedures* [D.I. 116] (as may be amended, supplemented, or modified further from time to time, the "Approved Bid Procedures").

8.      On January 12, 2024, the Debtors and Bay Point (collectively, the "Plan Proponents") filed a *Joint Application and Motion for an Order (I) Authorizing the Retention of Concierge Auctions, LLC as Auctioneer, and (II) Modifying or Granting Relief from E.D.N.Y. LBR 6005-1(C)* [D.I. 140] (the "Application to Employ"). Among other things, the Application to Employ sought Court authorization for the Debtors to employ and retain Concierge Auctions, LLC to market the Properties through the conclusion of the Live Auction, and (ii) conduct and hold the Live Auction. The Application to Employ was granted by Order entered January 26, 2024 [D.I. 163].

9.      Pursuant to the Approved Bid Procedures, the Debtors sought to offer the Properties for Sale, collectively and individually, contemporaneously through a Private Sale Process and an Auction Process (as those terms are defined in the Approved Bidding Procedures). Pursuant to the Private Sale Process, the deadline for the Debtors to accept a Qualified Offer (as such term is defined in the Approved Bid Procedures) was January 14, 2024. Contemporaneously with the Private Sale Process, the Debtors offered the Properties for Sale, collectively and individually, via a no reserve auction (the "Auction"). The Auction was conducted via digital bidding and concluded at a live auction at the Sotheby's Auction House on January 24, 2024 (the "Live Auction"). At the Auction, High Bids were selected with respect to both Properties.

10.     On January 27, 2024, the undersigned counsel wrote a letter to the Court (i) notifying the Court of the results of the Auction, (ii) notifying the Court that Bay Point and the Debtors were finalizing a consensual plan of liquidation, and (iii) requesting an additional extension through January 30, 2024, to file an amended plan. [D.I. 168].

11.     At the February 13, 2024 hearing, the Court found that the Debtors' Properties had been extensively marketed, the sale process followed by the parties was fair, vigorous, and resulted

in the highest and best achievable value for the Properties, and the Court approved the Sale of the Debtors' Properties.

**SATISFACTION OF PLAN CONFIRMATION REQUIREMENTS**

**A.      The Disclosure Statement Should be Approved as Containing Adequate Information**

12.      In considering whether the Disclosure Statement contains sufficient information to make an informed judgment on the Plan's merits, I note that the Disclosure Statement sets forth information with respect to, among other things, the following:  (a) the terms of the Plan, (b) events preceding the Debtors' Chapter 11 filings; (c) the Debtors' relationships with creditors; (d) the events that led to the development of the Plan; (e) the legal effects of the Plan; (f) the value of distributions to be received by holders of claims against the Debtors' estate; (g) risk factors affecting the Plan; (h) the method and timing of distributions under the Plan; (i) the voting procedures and confirmation requirements for the Plan; (j) the Sale Transactions; (k) a statement explaining that the Plan satisfies the "best interest test" under Section 1129(a)(7) of the Bankruptcy Code even though certain classes of claims and interests are impaired by the Plan; (l) appropriate disclaimers; (m) certain tax consequences of the Plan; and (n) Plan alternatives.  For these reasons, I believe that the Disclosure Statement should be approved at the Confirmation Hearing.

**B.      The Plan Should be Confirmed Because it Complies with All Applicable Requirements of Section 1129 of the Bankruptcy Code**

**i.  The Plan Complies with Section 1129(a)(1)**

13.      Sections 1122 and 1123 are the substantive provisions that are most relevant in satisfying Section 1129(a)(1).  Section 1122 governs classification of claims and interests, and Section 1123 sets forth the provisions that are required to be included - and those that may be included - in a Chapter 11 plan.  In considering whether the Plan satisfies the requirements of Section 1129(a)(1), I note the following:

4

(a)     <u>Classification of Claims and Interests (§§ 1122 and 1123(a)(1))</u>

14.     The Plan only places claims or interests in each class that are substantially similar to the other claims or interests in the Class.

(b)     <u>Identification of Unimpaired Claims and Interests (§ 1123(a)(2))</u>

15.     The Plan specifies the classes of claims that are not impaired under the Plan. Specifically, Classes 2 and 3 are unimpaired.

(c)     <u>Specification of Treatment of Impaired Claims (§ 1123(a)(3))</u>

16.     The Plan specifies the treatment of claims in Classes 1, 4, and 5, which are impaired.

(d)     <u>Same Treatment for Class Members (§ 1123(a)(4))</u>

17.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment. The Plan provides for the same treatment of each claim or interest of a particular class.

(e)     <u>Adequate Means for Implementation (§ 1123(a)(5))</u>

18.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the plan's implementation.  Here, the means of implementation of the Plan is the Sale of the Properties.

(f)     <u>Issuance of Non-Voting Equity Securities (§ 1123(a)(6))</u>

19.     Section 1123(a)(6) of the Bankruptcy Code generally requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in

the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. The Plan is a liquidating plan and does not provide for the issuance of equity securities. Accordingly, Section 1123(a)(6) is not applicable.

(g)    Selection of Directors and Officers (§ 1123(a)(7))

20.    Section 1123(a)(7) of the Bankruptcy Code states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee under the plan. Section 1129(a)(5) augments Section 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of any affiliate of the debtor participating in a plan with the debtor, or of a successor to the debtor under the plan. In addition, Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with the interests of creditors and equity security holders and with public policy. As set forth in the introductory section of the Plan, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by Mathew Kabatoff and Bay Point, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker (as such term is defined in the Plan) and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates.

(h)    Discretionary Plan Provisions in Section 1123(b)

21.     Section 1123(b) of the Bankruptcy Code grants broad authority to proponents of Chapter 11 plans to include discretionary plan provisions.  In accordance with Section 1123(b), the Plan contains various discretionary provisions, each of which is (i) appropriate and necessary to effectuate the Sale Transactions contemplated in the Plan for the benefit of all stakeholders in these bankruptcy cases, and (ii) consistent with the applicable provisions of the Bankruptcy Code:

*The Plan's Treatment of Classes (§ 1123(b)(1))*

22.     Section 1123(b)(1) of the Bankruptcy Code allows a plan to "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan impairs Classes 1, 4, and 5, but leaves Classes 2 and 3 unimpaired.

*The Plan's Treatment of Leases and Executory Contracts (§ 1123(b)(2))*

23.     Section 1123(b)(2) of the Bankruptcy Code permits a plan, subject to Section 365, to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."  11 U.S.C. § 1123(b)(2).  Article VI of the Plan states that, on the Plan's effective date, all executory contracts to which each Debtor is a party shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

*The Sale of the Properties Pursuant to the Plan (§ 1123(b)(4))*

24.      Section 1123(b)(4) of the Bankruptcy Code permits a plan to provide for the "sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4). Article IV of the Plan provides for the Sale of the Properties and the distribution of sale proceeds for the benefit of the Debtors' creditors.

*Modification of Claims (§ 1123(b)(5))*

25.     Section 1123(b)(5) allows a plan to, *inter alia*, modify the rights of holders of secured claims and unsecured claims or leave unaffected the rights of holders of any class of

claims.  Here, the modification of the rights of holders of claims and interests is necessary to achieve confirmation of the Plan.

<u>*The Plan's Limited Exculpation Provisions Should be Approved*</u>

26.     The Plan contains two narrowly tailored exculpation provisions for the benefit of the Decision Makers and for the Escrow Agent.  First, Section 4.1 of the Plan states the following, in relevant part, with respect to the Decision Makers:

> Except for gross negligence or willful misconduct, the Decision Makers shall not have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan; *provided*, *however*, that nothing contained herein shall in any way negate Kabatoff's fiduciary responsibilities on behalf of the Debtors' estates.

*Plan*, at 18.

27.     Second, Section 4.5(b) of the Plan contains the following protections for the Escrow Agent:

> The Escrow Agent shall not be deemed an officer or agent of the Debtors.  The Escrow Agent may, with the consent of the Debtors, employ or contract with such third parties as appropriate to assist in the performance of its duties under the Plan. Except for gross negligence, or willful misconduct, the Escrow Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan (including, without limitation, distributions of Sale Proceeds pursuant to the Plan), the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, except in the case of gross negligence or willful misconduct. For the avoidance of doubt, the Escrow Agent shall have no responsibility or liability to any entity for the failure of Kabatoff to fulfill any of his obligations under the Plan. The Escrow Agent is not a receiver, trustee, or assignee.

*Plan*, at 20.

28.     The Plan's exculpatory provisions are reasonable in scope, necessary, and essential to the Plan's execution. Removing the Plan's exculpation provisions would likely unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition.

### *The Plan's Injunctions are Narrowly Tailored and Reasonable*

29.     Section 7.1 of the Plan contains the following injunction against interference with the Plan:

> Injunction Against Interference with Plan. Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided that,* for the avoidance of doubt, nothing contained herein shall limit any rights previously granted to Bay Point under the DIP Financing Order and the DIP Loan Documents in relation to non-Debtor property.

*Plan*, at 30.

30.     Next, Section 4.5(c) of the Plan states:

> No Interference. No Person, including Debtors, Bay Point, Charles Andros, the holders of any Equity Interests, Kabatoff, and Blouin, shall interfere with the Escrow Agent in the performance of its duties, and any party with notice of the Confirmation Order shall be enjoined from taking any action that could reasonably be deemed to be an intentional interference with the Escrow Agent in the performance of its duties; *provided that,* nothing contained herein shall prohibit or inhibit a Decision Maker from exercising the discretion provided to it under the terms of the Plan and Approved Bid Procedures.

*Plan*, at 20-21.

31.     I believe that these injunctions are reasonable in scope and necessary for the Plan's execution.

### *The Plan's Provisions are Consistent with the Other Provisions of the Bankruptcy Code (§ 1123(b)(5))*

9

ii.        **The Plan Complies with Section 1129(a)(2)**

32.        Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code.  Section 1125 generally prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1126 provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. 11 U.S.C. § 1126.  I believe that the Plan complies with Section 1129(a)(2) of the Bankruptcy Code.

33.        On October 10, 2023, the Court entered the Order Scheduling a Concurrent Hearing to consider confirmation of the Debtors' original joint plan and approval of the Debtors' original joint disclosure statement.  On the same day, the Court entered a *Contested Matter Scheduling Order* [D.I. 75].

34.        On October 11, 2023, the Debtors filed the First Am. Plan and the First Am. Disclosure Statement.

35.        On October 12, 2023, a copy of the following documents were served on all necessary creditors and parties in interest: (i) a ballot, (ii) the First Am. Plan, (iii) the First Am. Disclosure Statement, and (iv) the Court's Order Scheduling a Concurrent Hearing. *See Affidavit of Service of Randy Lowry* [D.I. 78].

36.        On October 27, 2023, counsel for Debtor Aberdeen filed the Aberdeen Certification, stating that the Debtors solicitated ballots from all creditors and interest holders, and

10

only two ballots were received – Bay Point voted to accept the Debtors' First Am. Joint Plan, and the IRS voted to reject the Debtors' First Am. Joint Plan.

37.     On November 13, 2023, a Notice of Adjournment was entered, indicating that the hearing to consider the First Am. Plan and First Am. Disclosure Statement was adjourned to December 20, 2023. *See Notice of Adjournment* [D.I. 95].

38.     On November 29, 2023, the Court entered an Order adjourning the Confirmation Hearing to January 17, 2024. *See Amended Order* [D.I. 108]. The Court also entered a *Contested Matter Scheduling Order* [D.I. 109]. On January 17, 2024, the Confirmation Hearing was adjourned to February 13, 2024.

39.     On January 27, 2024, the undersigned wrote a letter to the Court (i) notifying the Court of the results of the Auction, (ii) notifying the Court that Bay Point and the Debtors were finalizing a consensual plan of liquidation, and (iii) requesting an additional extension through January 30, 2024, to file an amended plan. [D.I. 168].

40.     On January 30, 2024, Bay Point's Original Plan and Bay Point's Original Disclosure Statement were filed.

41.     On February 9, 2024, the Debtors filed the Second Amended Plan, incorporating most of the provisions of Bay Point's Original Plan.

42.     On February 12, 2024, Bay Point filed its (i) *First Amended Chapter 11 Liquidating Plan* [D.I. 194], (ii) *First Amended Disclosure Statement* [D.I. 195], and (iii) *Memorandum of Law in Support of (I) Approval of Bay Point's First Amended Disclosure Statement, and (II) Confirmation of Bay Point's First Amended Plan.*

43.     These filings were made by Bay Point in part to address the concerns raised by various objections to Bay Point's Original Plan. These filings were properly served upon all the parties listed in the Certificates of Service that were filed on February 12, 2024 [D.I. 204, 205].

44.     At the February 13, 2024 hearing, the Court found that the Debtors' Properties had been extensively marketed, the sale process followed by the parties was fair, vigorous, and resulted in the highest and best achievable value for the Properties, and the Court approved the Sale of the Debtors' Properties.

45.     On February 14, 2024, the Plan Proponents filed *Bay Point Capital Partners II, LP's and the Debtors' Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 209].

46.     On February 16, 2024, the Plan Proponents filed (i) the Plan, (ii) the Disclosure Statement; and (iii) the Confirmation Hearing Notice (collectively, the "Filed Documents").  On the same day, the Court entered the Scheduling Order, establishing certain deadlines in connection with the adjourned Confirmation Hearing.

47.     The Filed Documents were properly served on all necessary creditors and parties in interest. As set forth more fully in the *Amended Certificate of Service* [D.I. 223] (the "Amended Certificate of Service"), on February 16, 2023, the undersigned caused the Filed Documents to be (i) served electronically upon the counsel and parties of record who consented to such service through the Court's Electronic Case Filing System; (ii) served via direct e-mail to the individuals listed in Exhibit A to the Amended Certificate of Service; (iii) deposited with a Federal Express carrier for Priority Overnight delivery to the parties listed in Exhibit B  to the Amended Certificate of Service; and (iv) deposited with a USPS carrier for Overnight Express delivery to the parties listed in Exhibit C to the Amended Certificate of Service. Moreover, on February 17, 2024, the Filed Documents were also deposited with a courier for immediate hand delivery to Federal

Express for Priority Overnight delivery to the parties listed in the service list attached as Exhibit D to the Amended Certificate of Service (each of whom had already received service via other means). Finally, on February 18 and 19, 2024, the undersigned caused the Filed Documents to be served via direct e-mail to the parties listed in the service list attached as Exhibit E to the Amended Certificate of Service.  The Amended Certificate of Service is incorporated herein by reference.

48.     In addition, on February 20, 2024, the undersigned caused a true and accurate copy of Schedule A to the Plan (which details certain closing adjustments from the Sale Proceeds) directly via e-mail to those individuals listed on Exhibit A to the *Certificate of Service* [D.I. 224] (the "February 20 Certificate of Service").  The February 20 Certificate of Service is incorporated herein by reference. Schedule A was inadvertently left off the Plan when it was filed.

49.     The Plan Proponents did not solicit votes from Classes 2 and 3 of the Plan, which are unimpaired, and conclusively presumed to have accepted the Plan pursuant to Section 1126(f). The Plan Proponents likewise did not solicit votes from Classes 4 and 5, which are not entitled to any distributions under the Plan and are deemed to reject the Plan pursuant to Section 1126(g). Class 1 is the only impaired Class entitled to vote on the Plan. The Plan Proponents delivered a ballot to Bay Point, who is the only holder of Claims in Class 1 entitled to vote on the Plan.

50.     For these reasons, I believe that the Plan will satisfy Section 1129(a)(2) of the Bankruptcy Code.

### iii.        The Plan Complies with Section 1129(a)(3)

51.     Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  The Plan has the legitimate purpose of selling the Properties and distributing the Sale proceeds with the goal of maximizing the returns available to creditors. Additionally, none of the mechanisms contained in the Plan are "forbidden by law."  The Plan is

consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtors' creditors.

### iv.     The Plan Complies with Section 1129(a)(4)

52.     Section 1129(a)(4) of the Bankruptcy Code requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable. The Plan contains procedures for review and ultimate determination by the Court of the professional fees and expenses to be paid by the Debtors in accordance with the requirements of Section 1129(a)(4).

### v.     The Plan Complies with Section 1129(a)(5)

53.     Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve, after confirmation, as a director, officer, or voting trustee of the debtor; that the appointment or continuance of such party be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtors.  The Plan explains that, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by the Decision Makers, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. The Plan also states that, after the Effective Date, Mathew Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors.

### vi.      The Plan Complies with Section 1129(a)(7)

54.       Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of creditors" test. That section provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 on such date.

55.       I believe that the Debtors' costs of liquidation under Chapter 7 would include the fees payable to a Chapter 7 trustee, as well as those fees and expenses that might be payable to attorneys and other professionals that such a trustee might engage. Those fees and expenses, as well as other claims that might arise in a liquidation case or result from the pending Chapter 11 Cases, including any unpaid fees and expenses incurred by the Debtors during the Chapter 11 Cases, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition unsecured claims. There is no reason to believe that a Chapter 7 liquidation will result in a higher Sale price than the proposed Chapter 11 liquidation. Because of the substantial secured debt that encumbers the Properties, which continues to accrue interest, the secured debt will undoubtedly be greater through a Chapter 7 liquidation (which is expected to take significantly longer than the Chapter 11 liquidation proposed as part of the Plan), resulting in a lower (or at least no greater) recovery for unsecured claims. This is in addition to Chapter 7 trustee fees, which are anticipated to be several million dollars, and legal fees that would be incurred by the Chapter 7 trustee in administering the bankruptcy estate. All of these fees will be avoided by having the Properties sold in accordance with the provisions of the Plan. Moreover, the sale will almost certainly be completed in substantially less time than a sale in a Chapter 7 liquidation.

56.     The best interests test does not apply to holders of Claims in Classes 2 and 3 as they are unimpaired. The best interests test is satisfied with regard to Classes 4 and 5, because while the holders of Claims in Classes 4 and 5 will not receive any distribution under the Plan, they similarly would not receive any distribution in a Chapter 7 liquidation, and thus their treatment is not less favorable under the Plan than what they would receive in a Chapter 7 liquidation.  As applied to Classes 4 and 5, all holders of impaired claims and interests will receive property with a value not less than the value such holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.

### vii.    The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8)

57.     Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by the plan, or the proponent must satisfy the cramdown provisions of Section 1129(b) with respect to such classes of claims or equity.  Class 1 is the only impaired class entitled to vote on the Plan.  Class 1 has accepted the Plan.  Classes 2 and 3 are unimpaired and therefore conclusively deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).  Classes 4 and 5 are impaired but are deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g). Even though certain classes are deemed to reject the Plan, I believe that the Plan is confirmable because it satisfies Section 1129(b), as explained below.

### viii.    The Plan Complies with Section 1129(a)(9)

58.     Section 1129(a)(9) of the Bankruptcy Code provides, in relevant part, that except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan must provide that:

> (A)    with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash

16

equal to the allowed amount of such claim;

(B)    with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C)    with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and

(D)    with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9)(A)-(D).

59.    Here, the Plan provides for the payment in full of the Non-Tax Priority Claims in Class 3. Holders of Allowed Administrative Expense Claims, Professional Fee Claims, and Allowed Priority Tax Claims will need to agree to their proposed treatment under the Plan as a condition to confirmation. I believe that the Plan, therefore, will comply with Section 1129(a)(9)(C).

### ix.    The Plan Complies with Section 1129(a)(10)

60.     Section 1129(a)(10) provides that to the extent there are impaired classes of claims, at least one impaired class of claims must accept the Plan. Bay Point, the only Holder of Claims in the Voting Class, has voted, or will vote, to accept the Plan.

### x.      The Plan Complies with Section 1129(a)(11)

61.     Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation.  I believe that the Debtors will have sufficient funds from the Sale Proceeds to make the distributions set forth in Sections 5.8 and 5.9 of the Plan and consummate the terms of the Plan.

### xi.      The Plan Complies with Section 1129(a)(12)

62.     Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan." Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses. Section 2.4 of the Plan provides, in relevant part, that:

> [T]he Debtors shall pay, on the Effective Date, all Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon as of the Effective Date. All remaining Bankruptcy Fees assessed against the Debtors under 28 U.S.C. § 1930 from the Effective Date through the date of dismissal, conversion or entry of a final decree, shall be paid from the Bankruptcy Fees Reserve.

*Plan*, at 13.

### xii.      The Other Provisions of Section 1129(a) are Either Inapplicable or Satisfied

63.     Section 1129(a)(6) does not apply, since the Debtors were never the type of business that was subject to rate controls from a governmental entity.  The Debtors do not have obligations for "retiree benefits," thus Section 1129(a)(13) is not applicable.   The Debtors have

no obligations to pay domestic support obligations, so Section 1129(a)(14) is not applicable. The Debtors are not individuals, so Section 1129(a)(15) does not apply. Finally, the Debtors are not a nonprofit entity, so Section 1129(a)(16) is not applicable.

### xiii.    The Plan Satisfies Section 1129(b)

64.    Because not all classes have accepted the Plan, the Plan Proponents seek confirmation pursuant to Section 1129(b) of the Bankruptcy Code. The holder(s) of the claims in Classes 4 and 5 are impaired and deemed to have rejected the Plan. Accordingly, the Plan Proponents invoke Section 1129(b) with respect to Classes 4 and 5. The Plan (i) does not discriminate unfairly, and (ii) is fair and equitable.

### (a)    The Plan Does Not Discriminate Unfairly

65.    Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination between classes—it only prohibits unfair discrimination. A plan unfairly discriminates only if similar classes are treated differently without a reasonable basis for the disparate treatment. As between two classes of claims, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests; or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. Under the Plan, all impaired classes are treated in a manner that is consistent with the treatment of other classes that are similarly situated, if any, and no class will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims or interests in such Class.

### (b)    The Plan is Fair and Equitable

66.    Pursuant to Section 1129(b)(2) of the Bankruptcy Code, a plan must be fair and equitable with respect to each class that rejects the Plan. Indeed, the "absolute priority rule" requires that, if the holders of claims or interests in a particular class that votes to reject a plan

receive less than full value for their claims or interests, no holder of claims or interests in a junior class may receive or retain any property under the plan.

67.     Under the Plan, Class 1 is impaired but has voted to accept the Plan.  Classes 2 and 3 are unimpaired and conclusively deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).   Classes 4 and 5 are impaired but will receive no distributions under the Plan.  Thus, Classes 4 and 5 are deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g).  The Plan is fair and equitable with respect to Classes 4 and 5 despite the fact that neither class will receive any distributions under the Plan because there are no classes junior to Classes 4 and 5 that will receive distributions under the Plan.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed on:  February 22, 2024        _____