IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ABERDEEN ENTERPRISES, INC.<br>BRICKCHURCH ENTERPRISES, INC. | Case No. 23-72834-AST<br>Case No. 22-70914-AST |
| Debtors. | Jointly Administered |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER (I) CONFIRMING BAY POINT CAPITAL PARTNERS II, LP'S AND THE DEBTORS' SECOND AMENDED JOINT LIQUIDATING PLAN UNDER CHAPTER 11 OF THE BANKRUPTCY CODE; (II) APPROVING BAY POINT CAPITAL PARTNERS II, LP'S AND THE DEBTORS' JOINT DISCLOSURE STATEMENT; AND APPROVING THE SALE TRANSACTIONS (AS DEFINED HEREIN); AND (IV) GRANTING RELATED RELIEF**
**[Related Doc. Nos. 215, 218]**

This matter came before the Court on February 27, 2024, at a combined hearing to consider approval of *Bay Point Capital Partners II, LP's and the Debtors' Joint Disclosure Statement* [D.I. 218] and confirmation of *Bay Point Capital Partners II, LP's and the Debtors' Second Amended Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 215]. The procedural history of the Debtors' chapter 11 cases is summarized as follows:

a.    On April 30, 2022, Brickchurch Enterprises, Inc. ("**Brickchurch**") filed a petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Eastern District of New York (this "**Court**") under Case No. 22-70914 (the "**Brickchurch Case**");

b.    On August 2, 2023, Aberdeen Enterprises, Inc. ("**Aberdeen**", and collectively with Brickchurch, the "**Debtors**"), filed a separate petition for relief under Chapter 11 of the Bankruptcy Code in this Court under Case No. 23-72834 (the "**Aberdeen Case**", and collectively with the Brickchurch Case, these "**Chapter 11 Cases**");

c.    On September 6, 2023, this Court entered an *Order Granting Motion for Joint Administration*, which provided for the joint administration of the Debtors' Chapter 11 Cases;

d.      On September 5, 2023, the Debtors filed a *Joint Motion Seeking Entry of an Order Under Bankruptcy Code Sections 363(a), (b), (f), and (m) and Bankruptcy Rules 2002, 6004, and 9004: (I) Authorizing Debtors to Sell to the Highest and Best Bidder at an Auction Sale the Estates' Interest in the Real Properties Known as (a) 366 Gin Lane, Southampton, New York 11968 and (b) 376 Gin Lane, Southampton, New York 11968; and (II) Scheduling a Hearing to Approve Such Sale to the Highest and Best Bidder; and (III) Approving Certain Bidding Procedures; and (IV) Approving the Manner and Extent of Notice of Such Auction Hearing* [D.I. 46] (the "**Sale Motion**");

e.      On October 10, 2023, the Court entered an *Order Scheduling a Concurrent Hearing to Consider Approval of the Debtors' Joint Disclosure Statement and Confirmation of the Debtors' Plan of Reorganization* [D.I. 74] (the "**Order Scheduling a Concurrent Hearing**"), which scheduled the combined hearing on approval of the Debtors' original joint disclosure statement and original joint plan (the "**Confirmation Hearing**"). On the same day, the Court entered a *Contested Matter Scheduling Order* [D.I. 75];

f.      On October 11, 2023, the Debtors filed their *First Amended Joint Chapter 11 Liquidating Plan* [D.I. 76] (the "**First Am. Plan**") and their *First Amended Disclosure Statement* [D.I. 77] (the "**First Am. Disclosure Statement**");

g.      On October 12, 2023, a copy of the following documents were served on all creditors and parties in interest in these cases: (i) a ballot, (ii) the First Am. Plan, (iii) the First Am. Disclosure Statement, and (iv) the Court's Order Scheduling a Concurrent Hearing. *See Affidavit of Service of Randy Lowry* [D.I. 78];

h.      On October 27, 2023, counsel for Debtor Aberdeen filed a *Certification Re: Balloting* [D.I. 87] (the "**Aberdeen Certification**"). The Aberdeen Certification states that the Debtors solicited ballots from all creditors and interests holders, and only two ballots were received – Bay Point voted to accept the Debtors' First Am. Joint Plan, and the IRS voted to reject the Debtors' First Am. Joint Plan;

i.      On November 13, 2023, a Notice of Adjournment was entered, indicating that the hearing to consider the First Am. Plan and First Am. Disclosure Statement was adjourned to December 20, 2023. *See Notice of Adjournment* [D.I. 95];

j.      On November 22, 2023, the Court entered that certain *Order Approving Bid Procedures* [D.I. 104] (the "**Sale Order**"). Among other things, the Sale Order approved those certain *Bidding Procedures* [D.I. 67-1], which were

subsequently modified pursuant to those certain *First Amended Approved Bidding Procedures* [D.I. 116] (as may be amended, supplemented, or modified further from time to time, the "**Approved Bid Procedures**");

k.    On November 29, 2023, the Court entered an Order adjourning the Confirmation Hearing to January 17, 2024. *See Amended Order* [D.I. 108]. The Court also entered a *Contested Matter Scheduling Order* [D.I. 109];

l.    On January 12, 2024, the Debtors and Bay Point Capital Partners II, LP ("**Bay Point**", and collectively with the Debtors, the "**Plan Proponents**") filed a *Joint Application and Motion for an Order (I) Authorizing the Retention of Concierge Auctions, LLC as Auctioneer, and (II) Modifying or Granting Relief from E.D.N.Y. LBR 6005-1(C)* [D.I. 140] (the "**Application to Employ**"). Among other things, the Application to Employ sought Court authorization for the Debtors to employ and retain Concierge Auctions, LLC to market the Properties through the conclusion of a live auction (the "**Live Auction**"), and (ii) conduct and hold the Live Auction. The Application to Employ was granted by Order entered January 26, 2024 [D.I. 163];

m.    Pursuant to the Approved Bid Procedures, the Debtors sought to offer the Properties for Sale, collectively and individually, contemporaneously through a Private Sale Process and an Auction Process (as those terms are defined in the Approved Bidding Procedures). Pursuant to the Private Sale Process, the deadline for the Debtors to accept a Qualified Offer (as such term is defined in the Approved Bid Procedures) was January 14, 2024. Contemporaneously with the Private Sale Process, the Debtors offered the Properties for Sale, collectively and individually, via a no reserve auction (the "**Auction**"). The Auction was conducted via digital bidding and concluded at the Live Auction at the Sotheby's Auction House on January 24, 2024. At the Auction, High Bids were selected with respect to both Properties;

n.    On January 17, 2024, the Confirmation Hearing was adjourned to February 13, 2024;

o.    On January 27, 2024, counsel for Bay Point wrote a letter to the Court (i) notifying the Court of the results of the Auction, (ii) notifying the Court that Bay Point and the Debtors were finalizing a consensual plan of liquidation, and (iii) requesting an additional extension through January 30, 2024, to file an amended plan. [D.I. 168];

p.    On January 30, 2024, Bay Point's filed its *Chapter 11 Liquidating Plan* [D.I. 173] ("**Bay Point's Original Plan**") and *Disclosure Statement* [D.I. 174];

3

q.  On February 9, 2024, the Debtors filed an unsigned *Second Amended Joint Chapter 11 Liquidating Plan* [D.I. 193] (the "**Second Am. Plan**"), incorporating most of the provisions of Bay Point's Original Plan;

r.  On February 12, 2024, Bay Point filed its (i) *First Amended Chapter 11 Liquidating Plan* [D.I. 194], (ii) *First Amended Disclosure Statement* [D.I. 195], and (iii) *Memorandum of Law in Support of (I) Approval of Bay Point's First Amended Disclosure Statement, and (II) Confirmation of Bay Point's First Amended Plan*. These filings were served to all the parties listed in the Certificates of Service, which were filed on February 12, 2024 [D.I. 204, 205];

s.  On February 12, 2024, Bay Point also filed several declarations in support of approval of the Sale of the Properties (the "**Sale Transactions**"), including, (i) the *Declaration of Chad Roffers* [D.I. 198], (ii) the *Declaration of Charlos Andros* [D.I. 199], (iii) the *Declaration of Timothy Davis* [D.I. 200], (iv) the *Declaration of John C. Allerding* [D.I. 202] and (v) the *Declaration of Harald Grant* [D.I. 203] (collectively, the "**Declarations**");

t.  At the February 13, 2024 hearing, the Court found that the Debtors' Properties had been extensively marketed, the sale process followed by the parties was fair, vigorous, and resulted in the highest and best achievable value for the Properties, and the Court approved the Sale of the Debtors' Properties;

u.  On February 14, 2024, the Plan Proponents filed the *Bay Point Capital Partners II, LP's and the Debtors' Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 209];

v.  On February 16, 2024, the Plan Proponents filed (i) the *Bay Point Capital Partners II, LP's and the Debtors' First Amended Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 210]; (ii) the *Bay Point Capital Partners II, LP's and the Debtors' Second Amended Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 215] (the "**Plan**" or the "**Joint Plan**"); (iii) the *Bay Point Capital Partners II, LP's and the Debtors' Joint Disclosure Statement* [D.I. 218] (the "**Disclosure Statement**"); and (iii) the *Notice of (I) Hearing on Approval of Disclosure Statement and Confirmation of Joint Plan, (II) Procedures for Objecting to Disclosure Statement and Joint Plan, and (III) Deadline to Vote on Joint Plan* [D.I. 217] (the "**Confirmation Hearing Notice**");

w.  Copies of the Purchase and Sale Agreements (collectively, the "**Purchase and Sale Agreements**") for the properties located at 366 Gin Lane and 376 Gin Lane, Southampton, New York 11968 (collectively, the "**Properties**") are attached as Exhibits A and B to the Plan;

x.     On February 16, 2024, the Court entered an *Amended Contested Matter Scheduling Order* [D.I. 214] (the "**Scheduling Order**"), which adjourned the Confirmation Hearing to February 27, 2024, and established certain deadlines in connection therewith;

y.     On February 16, 2024, and as set forth more fully in the *Amended Certificate of Service* [D.I. 223] filed on February 20, 2024 (the "**Amended Certificate of Service**"), Bay Point caused the Plan, Disclosure Statement, Confirmation Hearing Notice, and Scheduling Order to be served on all necessary creditors and parties in interest;

z.     On February 26, 2024, the Plan Proponents filed the Voting Report (as defined herein); and

aa.    On February 27, 2024, the Confirmation Hearing was held.

**NOW THEREFORE**, the Court having found that service of the Plan,[1] the Disclosure Statement, the Scheduling Order, and Confirmation Hearing Notice was proper; and notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation of the Plan or approval of the Disclosure Statement has been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the legal and factual bases set forth in the documents filed in support of confirmation of the Plan and approval of the Disclosure Statement, the Declarations, and other evidence and testimony presented at the Confirmation Hearing establish just cause for the relief granted herein; and the relief granted herein is in the best interests of the Debtors, their estates and creditors, and other parties in interest; and after due deliberation thereon and good cause appearing therefor, the Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Plan.

### A.    FINDINGS AND CONCLUSIONS

1.    The findings and conclusions set forth herein and in the record of the Confirmation Hearing, including the summary of the procedural history of the Debtors' Chapter 11 Cases set forth above, constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following conclusions of law constitute findings of fact, or vice versa, they are adopted as such.

2.    All findings, conclusions, orders and rulings of the Court as stated on the record at the February 27th Confirmation Hearing are incorporated herein by reference.

### B.    JURISDICTION, VENUE, AND CORE PROCEEDING

3.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Court's General Order of Reference. Confirmation of the Plan and approval of the Disclosure Statement are core proceedings pursuant to 28 U.S.C. § 157(b), and the Court has exclusive jurisdiction to enter a final order determining that the Plan and Disclosure Statement comply with the applicable provisions of the Bankruptcy Code and should be confirmed and approved. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### C.    ELIGIBILITY FOR RELIEF

4.    The Debtors were and are eligible for relief under Section 109 of the Bankruptcy Code.

### D.    JUDICIAL NOTICE

5.    This Court takes judicial notice of all filings on the dockets of the Chapter 11 Cases maintained by the Clerk of this Court.

### E.    OBJECTIONS

6.       A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities. As presented on the record at the Confirmation Hearing, and as provided in this Order (this "**Confirmation Order**" or this "**Order**"), the consensual resolutions of those objections that were resolved at or prior to the Confirmation Hearing satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules, are in the best interests of the Debtors and their estates, and are hereby approved. No objecting creditor or other party provided evidence of a viable and reasonable alternative to the Debtors' Sale Transactions and Plan as proposed, and as now before this Court. All unresolved objections, statements, informal objections, and reservations of rights, if any, related to the Confirmation of the Plan, approval of the Sale Transactions, or approval of the Disclosure Statement are overruled on the merits.

**F.    BURDEN OF PROOF – CONFIRMATION OF THE PLAN AND APPROVAL OF THE DISCLOSURE STATEMENT**

7.       The Plan Proponents have met their burden of proving the applicable elements of Sections 1125 and 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.  In the alternative, to the extent the clear and convincing standard applies, the Plan Proponents have satisfied this standard.  Each witness who testified on behalf of the Plan Proponents at the Confirmation Hearing or submitted a declaration in support of confirmation of the Plan, approval of the Sale, and/or approval of the Disclosure Statement, was credible, reliable, and qualified to testify as to the topics addressed in his or her testimony.

**G.    NOTICE**

8.       As evidenced by the applicable certificates and affidavits of service, the Plan Proponents have provided due, adequate, and sufficient notice of the Plan, the Sale Transactions, the Disclosure Statement, the Confirmation Hearing, the objection deadline, and the voting

deadline, to Holders of Claims and Interests and other Entities with an interest in the Debtors' property and have otherwise complied with the notice requirements of the Bankruptcy Code, the Bankruptcy Rules, this Court's orders, and applicable nonbankruptcy law. Such notice was adequate and sufficient pursuant to Sections 1125 and 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

### H.    THE DISCLOSURE STATEMENT

9.    The Disclosure Statement is comprehensive and contains adequate information. The Disclosure Statement sets forth information with respect to, among other things, the following: (a) the terms of the Plan, (b) events preceding the Debtors' Chapter 11 Cases; (c) the Debtors' relationships with creditors; (d) the events that led to the development of the Plan; (e) the legal effects of the Plan; (f) the value of distributions to be received by holders of claims against the Debtors' estates; (g) risk factors affecting the Plan; (h) the method and timing of distributions under the Plan; (i) the voting procedures and confirmation requirements for the Plan; (j) the Sale Transactions; (k) a statement explaining that the Plan satisfies the "best interest test" under Section 1129(a)(7) of the Bankruptcy Code even though certain classes of claims and interests are impaired by the Plan; (l) appropriate disclaimers; (m) certain tax consequences of the Plan; and (n) Plan alternatives. The Disclosure Statement satisfies Section 1125 of the Bankruptcy Code.

### I.    VOTING REPORT

10.    Votes on the Plan were properly solicited after disclosure of "adequate information" as defined in Section 1125 of the Bankruptcy Code.  Prior to the Confirmation Hearing, the Plan Proponents filed the Voting Report.  As evidenced by the Voting Report and based on the record before the Court, the procedures used to tabulate Ballots were fair and conducted in accordance

with the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations. The Ballot the Plan Proponents used to solicit votes to accept or reject the Plan from the only Voting Class (as defined herein) adequately addressed the particular needs of the Chapter 11 Cases and was appropriate for the Voting Class to vote to accept or reject the Plan.

11.    The Holder of Claims in Class 1 (Secured Claims of Bay Point) was eligible to vote on the Plan (the "**Voting Class**"). Holders of Claims or Interests in Classes 2, 3, 4, and 5 were not entitled to vote to accept or reject the Plan (the "**Non-Voting Classes**"). Holders of Claims in Classes 2 and 3 were unimpaired, and conclusively presumed to have accepted the Plan. Holders of Claims and Interests in Classes 4 and 5 will receive no distributions under the Plan, and are deemed to have rejected the Plan. As evidenced by the Voting Report, Class 1 voted to accept the Plan in accordance with the requirements of Sections 1124, 1126, and 1129 of the Bankruptcy Code.

### J.    SOLICITATION

12.    As evidenced by the Voting Report and applicable certificates of service, the Plan, the Disclosure Statement (including the Ballot attached thereto), the Scheduling Order, and the Confirmation Hearing Notice (the "**Solicitation Package**") were transmitted and served to all Holders in the Voting Class, in compliance with the Bankruptcy Code, including Sections 1125 and 1126 thereof, the Bankruptcy Rules, including Bankruptcy Rules 3017, 3018, and 3019, the Local Bankruptcy Rules, any applicable orders of this Court, and any applicable nonbankruptcy law.  Transmission and service of the Solicitation Package was timely, adequate, and sufficient. No further notice or service is required.  Under Sections 1126(f) and 1126(g) of the Bankruptcy Code, the Plan Proponents were not required to solicit votes from the Non-Voting Classes, each of which is conclusively presumed to have accepted, or deemed to have rejected, the Plan.

### K.    MODIFICATIONS TO THE PLAN

13.    Pursuant to Section 1127 of the Bankruptcy Code, any modifications to the Plan described or set forth in this Confirmation Order constitute technical changes, are immaterial, or do not adversely affect the treatment of any Claim or Interest under the Plan, or are modifications to which the adversely affected parties have consented. These modifications are consistent with the disclosures previously made pursuant to the Disclosure Statement and solicitation materials, and notice of these modifications was adequate and appropriate under all the facts and circumstances of these Chapter 11 Cases.

14.    Pursuant to Bankruptcy Rule 3019, any modifications herein do not require additional disclosure under Section 1125 of the Bankruptcy Code or the resolicitation of votes under Section 1126 of the Bankruptcy Code.

### L.    BANKRUPTCY RULE 3016

15.    The Plan is dated and identifies the Plan Proponents submitting it. Thus, the Plan satisfies Bankruptcy Rule 3016(a).  The Plan Proponents have appropriately filed the Plan and Disclosure Statement with the Court, thus satisfying Bankruptcy Rule 3016(b).

### M.    COMPLIANCE WITH SECTION 1129 OF THE BANKRUPTCY CODE

16.    Based on all the Court filings, including Declarations, affidavits, and certificates, as well as the arguments and the evidence presented and admitted at the Confirmation Hearing, the Plan Proponents have demonstrated that the Plan complies with all relevant provisions of Section 1129 of the Bankruptcy Code.

a.    THE PLAN SATISFIES ALL APPLICABLE REQUIREMENTS OF SECTION 1129(A) OF THE BANKRUPTCY CODE

i.    **The Plan Complies with Section 1129(a)(1)**

17. Section 1129(a)(1) of the Bankruptcy Code requires the court to confirm a plan only if the plan complies with the applicable provisions of the Bankruptcy Code. Sections 1122 and 1123 are the substantive provisions that are most relevant in satisfying Section 1129(a)(1). Section 1122 governs classification of claims and interests, and Section 1123 sets forth the provisions that are required to be included - and those that may be included - in a Chapter 11 plan. The Plan satisfies the requirements of Section 1129(a)(1).

(a)    Classification of Claims and Interests (§§ 1122 and 1123(a)(1))

18. Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate, subject to Section 1122, classes of claims, other than claims of the kind specified in Sections 507(a)(2) (administrative expenses), 507(a)(3) (involuntary case gap claims), or 507(a)(8) (unsecured priority tax claims), and classes of interests. In designating classes of claims and interests in the Plan, the Plan Proponents have satisfied the requirement of Section 1123(a)(1). Under Section 1122(a) of the Bankruptcy Code, a claim or interest may be placed in a particular class under a plan only if such claim or interest is substantially similar to the other claims or interests of such class. The Plan only places claims or interests in each class that are substantially similar to the other claims or interests in the Class. Thus, the Plan complies with Section 1122(a).

(b)    Identification of Unimpaired Claims and Interests (§ 1123(a)(2))

19. Section 1123(a)(2) of the Bankruptcy Code requires that a plan specify any class of claims or interests that is not impaired under the plan. The Plan specifies the classes of claims that are not impaired under the Plan. Specifically, Classes 2 and 3 are unimpaired. Thus, the Plan complies with Section 1123(a)(3).

(c)    Specification of Treatment of Impaired Claims (§ 1123(a)(3))

20.     Section 1123(a)(3) of the Bankruptcy Code requires that a plan specify the treatment of any class of claims or interests that is impaired under the plan.  The Plan specifies the treatment of claims in Classes 1, 4, and 5, which are impaired.  Thus, the Plan complies with Section 1123(a)(4).

(d)     <u>Same Treatment for Class Members (§ 1123(a)(4))</u>

21.     Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the same treatment for each claim or interest of a particular class unless the holder of a particular claim or interest agrees to a less favorable treatment. The Plan provides for the same treatment of each claim or interest of a particular class and complies with Section 1123(a)(4).

(e)     <u>Adequate Means for Implementation (§ 1123(a)(5))</u>

22.     Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for the plan's implementation and provides a number of examples of methods for doing so. One such method is "sale of all or any part of the property of the estate, either subject to or free of any lien, or the distribution of all or any part of property of the estate among those having an interest in such property of the estate."  11 U.S.C. § 1123(a)(5)(D).  The examples of adequate means for implementation of a plan provided in Section 1123(a)(5) are illustrative and the section does not exclude or limit any other means.  Here, the Plan contains adequate means of implementation; namely, the Sale of the Properties.

(f)     <u>Issuance of Non-Voting Equity Securities (§ 1123(a)(6))</u>

23.     Section 1123(a)(6) of the Bankruptcy Code generally requires that a plan provide for the inclusion in the charter of the debtor, if the debtor is a corporation, of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power an appropriate distribution of such power among such classes, including, in

the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default and the payment of such dividends. The Plan is a liquidating plan and does not provide for the issuance of equity securities.  Accordingly, Section 1123(a)(6) is not applicable.

(g)      Selection of Directors and Officers (§ 1123(a)(7))

24.      Section 1123(a)(7) of the Bankruptcy Code states that a plan shall contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director or trustee under the plan and any successor to such officer, director or trustee under the plan. Section 1129(a)(5) augments Section 1123(a)(7) and requires, as a condition of confirmation, that the proponents of the plan disclose the identity and affiliation of any individuals proposed to serve, after confirmation of the plan, as directors, officers, or voting trustees of the debtor, or of any affiliate of the debtor participating in a plan with the debtor, or of a successor to the debtor under the plan.  In addition, Section 1129(a)(5)(A)(ii) requires that the appointment or continuance of any director, officer or voting trustee be consistent with the interests of creditors and equity security holders and with public policy. As set forth in the introductory section of the Plan, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by Mathew Kabatoff and Bay Point, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. After the Effective Date, Kabatoff alone shall remain as the sole Decision Maker (as such term is defined in the Plan) and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates. The Plan, therefore, satisfies Section 1123(a)(7) of the Bankruptcy Code.

13

(h)    Discretionary Plan Provisions in Section 1123(b)

25.    Section 1123(b) of the Bankruptcy Code grants broad authority to proponents of Chapter 11 plans to include discretionary plan provisions.  In accordance with Section 1123(b), the Plan contains various discretionary provisions, each of which is (i) appropriate and necessary to effectuate the Sale Transactions contemplated in the Plan for the benefit of all stakeholders in these bankruptcy cases, and (ii) consistent with the applicable provisions of the Bankruptcy Code:

*The Plan's Treatment of Classes (§ 1123(b)(1))*

26.    Section 1123(b)(1) of the Bankruptcy Code allows a plan to "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan impairs Classes 1, 4, and 5, but leaves Classes 2 and 3 unimpaired.

*The Plan's Treatment of Leases and Executory Contracts (§ 1123(b)(2))*

27.    Section 1123(b)(2) of the Bankruptcy Code permits a plan, subject to Section 365, to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section."  11 U.S.C. § 1123(b)(2).  Article VI of the Plan states that, on the Plan's effective date, all executory contracts to which each Debtor is a party shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code.

*The Sale of the Properties Pursuant to the Plan (§ 1123(b)(4))*

28.    Section 1123(b)(4) of the Bankruptcy Code permits a plan to provide for the "sale of all or substantially all of the property of the estate, and the distribution of the proceeds of such sale among holders of claims or interests." 11 U.S.C. § 1123(b)(4). Article IV of the Plan provides for the Sale of the Properties and the distribution of sale proceeds for the benefit of the Debtors' creditors. The Sale of the Properties pursuant to the Plan should be and is approved.

*Modification of Claims (§ 1123(b)(5))*

29.     Section 1123(b)(5) allows a plan to, *inter alia*, modify the rights of holders of secured claims and unsecured claims or leave unaffected the rights of holders of any class of claims.  Here, to the extent the Plan modifies the rights of holders of claims or interests, such modifications should be and are approved.

<u>*The Plan's Limited Exculpation Provisions are Approved*</u>

30.     The Plan contains two narrowly tailored exculpation provisions for the benefit of the Decision Makers and the Escrow Agent.  Section 4.1 of the Plan states the following, in relevant part, with respect to the Decision Makers:

> Except for gross negligence or willful misconduct, the Decision Makers shall not have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation, or consummation of the Plan, the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan; provided, however, that nothing contained herein shall in any way negate Kabatoff's fiduciary responsibilities on behalf of the Debtors' estates.

*Plan*, at 18.

31.     Next, Section 4.5(b) states the following with respect to the Escrow Agent:

> The Escrow Agent shall not be deemed an officer or agent of the Debtors.  The Escrow Agent may, with the consent of the Debtors, employ or contract with such third parties as appropriate to assist in the performance of its duties under the Plan.  Except for gross negligence, or willful misconduct, the Escrow Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan (including, without limitation, distributions of Sale Proceeds pursuant to the Plan), the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, except in the case of gross negligence or willful misconduct. For the avoidance of doubt, the Escrow Agent shall have no responsibility or liability to any entity

for the failure of Kabatoff to fulfill any of his obligations under the
Plan. The Escrow Agent is not a receiver, trustee, or assignee.

*Plan*, at 20.

32.    The Plan's exculpatory provisions are reasonable in scope, necessary, and essential

to the Plan's execution. Removing the Plan's exculpation provisions would likely unravel the

entire fabric of the Plan, and would be inequitable to all those who participated in good faith to

bring it into fruition. For all of the reasons, and as demonstrated at the Confirmation Hearing, the

Plan's exculpation provisions are necessary, appropriate, and should be and are approved.

<u>*The Plan's Injunctions are Narrowly Tailored and Reasonable*</u>

33.    Section 7.1 of the Plan contains the following injunction against interference with

the Plan:

> **<u>Injunction Against Interference with Plan</u>**. Upon entry of the
> Confirmation Order, all holders of Claims against or Interests in the
> Debtors and other parties in interest, and any other Person with
> notice (actual or constructive) of the Confirmation Order, along with
> their respective present or former employees, agents, officers,
> directors, principals, and affiliates, shall be enjoined from taking any
> actions to interfere with the implementation or consummation of the
> Plan; *provided that,* for the avoidance of doubt, nothing contained
> herein shall limit any rights previously granted to Bay Point under
> the DIP Financing Order and the DIP Loan Documents in relation
> to non-Debtor property.

*Plan*, at 30.

34.    Next, Section 4.5(c) of the Plan states:

> **<u>No Interference</u>**. No Person, including Debtors, Bay Point, Charles
> Andros, the holders of any Equity Interests, Kabatoff, and Blouin,
> shall interfere with the Escrow Agent in the performance of its
> duties, and any party with notice of the Confirmation Order shall be
> enjoined from taking any action that could reasonably be deemed to
> be an intentional interference with the Escrow Agent in the
> performance of its duties; *provided that,* nothing contained herein
> shall prohibit or inhibit a Decision Maker from exercising the
> discretion provided to it under the terms of the Plan and Approved
> Bid Procedures.

*Plan*, at 20-21.

35.    These injunctions are reasonable in scope, necessary for the Plan's execution, and should be and are hereby approved.

### *The Plan's Provisions are Consistent with the Other Provisions of the Bankruptcy Code (§ 1123(b)(5))*

36.    Section 1123(b)(6) of the Bankruptcy Code permits a plan to include "any other appropriate provision not inconsistent with the applicable provisions of this title."  The provisions in the Plan are necessary and appropriate to effectuate and consummate the Plan's provisions (including the Sale of the Properties contemplated therein) for the benefit of all stakeholders in these bankruptcy cases.  The Plan provisions are consistent with the applicable provisions of the Bankruptcy Code.

### ii.      **The Plan Complies with Section 1129(a)(2)**

37.    Section 1129(a)(2) of the Bankruptcy Code requires that the plan proponent comply with the applicable provisions of the Bankruptcy Code.  Section 1125 generally prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved . . . by the court as containing adequate information." 11 U.S.C. § 1125(b). Section 1126 provides that only holders of allowed claims and equity interests in impaired classes that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject a plan. 11 U.S.C. § 1126.  The Plan complies with Section 1129(a)(2) of the Bankruptcy Code.

38.    On October 10, 2023, the Court entered the Order Scheduling a Concurrent Hearing to consider confirmation of the Debtors' original joint plan and approval of the Debtors' original

joint disclosure statement.  On the same day, the Court entered a *Contested Matter Scheduling Order* [D.I. 75].

39.     On October 11, 2023, the Debtors filed their First Am. Plan and their First Am. Disclosure Statement.

40.     On October 12, 2023, copies of the following documents were served on all necessary creditors and parties in interest: (i) a ballot, (ii) the First Am. Plan, (iii) the First Am. Disclosure Statement, and (iv) the Court's Order Scheduling a Concurrent Hearing. *See Affidavit of Service of Randy Lowry* [D.I. 78].

41.     On October 27, 2023, counsel for Debtor Aberdeen filed the Aberdeen Certification, stating that the Debtors solicitated ballots from all creditors and interest holders, and only two ballots were received – Bay Point voted to accept the Debtors' First Am. Joint Plan, and the IRS voted to reject the Debtors' First Am. Joint Plan.

42.     On November 13, 2023, a Notice of Adjournment was entered, indicating that the hearing to consider the First Am. Plan and First Am. Disclosure Statement was adjourned to December 20, 2023. *See Notice of Adjournment* [D.I. 95].

43.     On November 29, 2023, the Court entered an Order adjourning the Confirmation Hearing to January 17, 2024. *See Amended Order* [D.I. 108]. The Court also entered a *Contested Matter Scheduling Order* [D.I. 109]. On January 17, 2024, the Confirmation Hearing was adjourned to February 13, 2024.

44.     On January 27, 2024, counsel for Bay Point wrote a letter to the Court (i) notifying the Court of the results of the Auction, (ii) notifying the Court that Bay Point and the Debtors were finalizing a consensual plan of liquidation, and (iii) requesting an additional extension through January 30, 2024, to file an amended plan. [D.I. 168].

45.     On January 30, 2024, Bay Point's Original Plan and Bay Point's Original Disclosure Statement were filed.

46.     On February 9, 2024, the Debtors filed their Second Am. Plan, incorporating most of the provisions of Bay Point's Original Plan.

47.     On February 12, 2024, Bay Point filed its (i) *First Amended Chapter 11 Liquidating Plan* [D.I. 194], (ii) *First Amended Disclosure Statement* [D.I. 195], and (iii) *Memorandum of Law in Support of (I) Approval of Bay Point's First Amended Disclosure Statement, and (II) Confirmation of Bay Point's First Amended Plan*. These filings were made by Bay Point in part to address the concerns raised by various objections to Bay Point's Original Plan. These filings were properly served upon all the parties listed in the Certificates of Service that were filed on February 12, 2024 [D.I. 204, 205].

48.     At the February 13, 2024 hearing, the Court found that the Debtors' Properties had been extensively marketed, the sale process followed by the parties was fair, vigorous, and resulted in the highest and best achievable value for the Properties, and the Court approved the Sale of the Debtors' Properties.

49.     On February 14, 2024, the Plan Proponents filed *Bay Point Capital Partners II, LP's and the Debtors' Joint Liquidating Plan under Chapter 11 of the Bankruptcy Code* [D.I. 209].

50.     On February 16, 2024, the Plan Proponents filed (i) the Plan, (ii) the Disclosure Statement; and (iii) the Confirmation Hearing Notice (collectively, the "**Filed Documents**").  On the same day, the Court entered the Scheduling Order, establishing certain deadlines in connection with the adjourned Confirmation Hearing.

51.     The Filed Documents were properly served on all necessary creditors and parties in interest. As set forth more fully in the Amended Certificate of Service, on February 16, 2023,

the Filed Documents were (i) served electronically upon the counsel and parties of record who consented to such service through the Court's Electronic Case Filing System; (ii) served via direct e-mail to the individuals listed in Exhibit A to the Amended Certificate of Service; (iii) deposited with a Federal Express carrier for Priority Overnight delivery to the parties listed in Exhibit B to the Amended Certificate of Service; and (iv) deposited with a USPS carrier for Overnight Express delivery to the parties listed in Exhibit C to the Amended Certificate of Service. Moreover, on February 17, 2024, the Filed Documents were also deposited with a courier for immediate hand delivery to Federal Express for Priority Overnight delivery to the parties listed in the service list attached as Exhibit D to the Amended Certificate of Service (each of whom had already received service via other means). Finally, on February 18 and 19, 2024, the Filed Documents were served via direct e-mail to the parties listed in the service list attached as Exhibit E to the Amended Certificate of Service.

52.     The Plan Proponents did not solicit votes from Classes 2 and 3 of the Plan, which are unimpaired, and conclusively presumed to have accepted the Plan pursuant to Section 1126(f). The Plan Proponents likewise did not solicit votes from Classes 4 and 5, which are not entitled to any distributions under the Plan and are deemed to reject the Plan pursuant to Section 1126(g). Class 1 is the only impaired Class entitled to vote on the Plan. The Plan Proponents delivered a ballot to Bay Point, who is the only holder of Claims in Class 1 entitled to vote on the Plan. As evidenced by the Voting Report, Bay Point timely submitted its Ballot and voted to accept the Plan, thereby satisfying Section 1126(c) of the Bankruptcy Code.

53.     Accordingly, the Plan satisfies Section 1129(a)(2) of the Bankruptcy Code.

iii.     **The Plan Complies with Section 1129(a)(3)**

54.     Section 1129(a)(3) requires that a plan be proposed in good faith and not by any means forbidden by law.  The Plan was proposed in good faith. The Plan has the legitimate purpose of selling the Properties and distributing the Sale proceeds with the goal of maximizing the returns available to creditors.  Additionally, none of the mechanisms contained in the Plan are "forbidden by law."  The Plan is consistent with the objectives and purposes of the Bankruptcy Code and was made with honesty and good intentions and with a basis for expecting that, under the circumstances, it was the best means for maximizing any recovery for the Debtors' creditors. Therefore, the Plan has been proposed in good faith, not by any means forbidden by law, and complies with Section 1129(a)(3).

### iv.     The Plan Complies with Section 1129(a)(4)

55.     Section 1129(a)(4) of the Bankruptcy Code requires that any payment made or to be made by the proponent, the debtor, or by a person issuing securities, or acquiring property under the plan, for services or for costs and expenses in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the court, as reasonable. The procedures provided by the Plan for review and ultimate determination by the Court of the professional fees and expenses to be paid by the Debtors satisfy the requirement of Section 1129(a)(4). The Plan complies with Section 1129(a)(4).

### v.     The Plan Complies with Section 1129(a)(5)

56.     Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of any individual proposed to serve, after confirmation, as a director, officer, or voting trustee of the debtor; that the appointment or continuance of such party be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed

by the reorganized debtors. The Plan explains that, pending the closing of the Sales, the Debtors shall continue to be jointly managed and operated by the Decision Makers, consistent with the Approved Bid Procedures, unless otherwise provided in the Plan. The Plan also states that, after the Effective Date, Kabatoff alone shall remain as the sole Decision Maker and fiduciary for the Debtors' respective bankruptcy Estates and shall be charged with the responsibility to file necessary tax returns on behalf of the Debtors and their estates. Thus, the requirements of Section 1129(a)(5) have been satisfied.

### vi.    The Plan Complies with Section 1129(a)(7)

57.    Section 1129(a)(7) of the Bankruptcy Code sets forth the "best interest of creditors" test. That section provides that with respect to each impaired class of claims or interests, each holder of a claim or interest of such class has accepted the plan or will receive or retain under the plan property of a value, as of the effective date, not less than the amount that such holder would receive or retain if the debtor were liquidated under Chapter 7 on such date.

58.    The Debtors' costs of liquidation under Chapter 7 would include the fees payable to a Chapter 7 trustee, as well as those fees and expenses that might be payable to attorneys and other professionals that such a trustee might engage. Those fees and expenses, as well as other claims that might arise in a liquidation case or result from the pending Chapter 11 Cases, including any unpaid fees and expenses incurred by the Debtors during the Chapter 11 Cases, would be paid in full from the liquidation proceeds before the balance of those proceeds would be made available to pay pre-petition unsecured claims. There is no reason to believe that a Chapter 7 liquidation will result in a higher Sale price than the proposed Chapter 11 liquidation. Because of the substantial secured debt that encumbers the Properties, which continues to accrue interest, the secured debt will undoubtedly be greater through a Chapter 7 liquidation (which is expected to take significantly

longer than the Chapter 11 liquidation proposed as part of the Plan), resulting in a lower (or at least no greater) recovery for unsecured claims. This is in addition to Chapter 7 trustee fees, which are anticipated to be several million dollars, and legal fees that would be incurred by the Chapter 7 trustee in administering the bankruptcy estate. All of these fees will be avoided by having the Properties sold in accordance with the provisions of the Plan. Moreover, the sale will almost certainly be completed in substantially less time than a sale in a Chapter 7 liquidation.

59.    The best interests test does not apply to holders of Claims in Classes 2 and 3 as they are unimpaired. The best interests test is also satisfied with regard to Classes 4 and 5, because while the holders of Claims in Classes 4 and 5 will not receive any distribution under the Plan, they similarly would not receive any distribution in a Chapter 7 liquidation, and thus their treatment is not less favorable under the Plan than what they would receive in a Chapter 7 liquidation.  As applied to Classes 4 and 5, all holders of impaired claims and interests will receive property with a value not less than the value such holders would receive in a liquidation under Chapter 7 of the Bankruptcy Code.  Based upon the foregoing, the best interests test is satisfied.

### vii.    The Plan is Confirmable Notwithstanding the Requirements of Section 1129(a)(8)

60.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests either accept the plan or not be impaired by the plan, or the proponent must satisfy the cramdown provisions of Section 1129(b) with respect to such classes of claims or equity.  Class 1 is the only impaired class entitled to vote on the Plan.  Class 1 has accepted the Plan.  Classes 2 and 3 are unimpaired and therefore conclusively deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).  Classes 4 and 5 are impaired but are deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g). Even though certain classes are deemed to reject the Plan, the Plan is confirmable because it satisfies Section 1129(b), as explained below.

### viii.    The Plan Complies with Section 1129(a)(9)

61.    Section 1129(a)(9) of the Bankruptcy Code provides, in relevant part, that except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan must provide that:

> (A)    with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;
>
> (B)    with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;
>
> (C)    with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)); and
>
> (D)    with respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

11 U.S.C. § 1129(a)(9)(A)-(D).

62.    Here, the Plan provides for the payment in full of the Non-Tax Priority Claims in Class 3. The Plan's proposed treatment of Allowed Administrative Expense Claims, Professional

Fee Claims, and Allowed Priority Tax Claims was agreed to by the holders of such claims on or prior to the Confirmation Hearing. The Plan, therefore, complies with Section 1129(a)(9)(C).

### ix.    The Plan Complies with Section 1129(a)(10)

63.    Section 1129(a)(10) provides that to the extent there are impaired classes of claims, at least one impaired class of claims must accept the Plan. The Plan satisfies this requirement, since Bay Point, the only Holder of Claims in the Voting Class, has voted to accept the Plan.

### x.    The Plan Complies with Section 1129(a)(11)

64.    Section 1129(a)(11) of the Bankruptcy Code requires that the Court determine that the Plan is feasible as a condition precedent to confirmation. The feasibility test requires the court to determine whether the plan is workable and has a reasonable likelihood of success. The Debtors will have sufficient funds from the Sale Proceeds to make the distributions set forth in Sections 5.8 and 5.9 of the Plan and consummate the terms of the Plan.  Consequently, the Plan has more than a reasonable likelihood of success and satisfies the feasibility requirements of Section 1129(a)(11) of the Bankruptcy Code.

### xi.    The Plan Complies with Section 1129(a)(12)

65.    Section 1129(a)(12) of the Bankruptcy Code requires the payment of "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan." Section 507 of the Bankruptcy Code provides that "any fees and charges assessed against the estate under [section 1930] of title 28" are afforded priority as administrative expenses. Section 2.4 of the Plan provides, in relevant part, that:

> [T]he Debtors shall pay, on the Effective Date, all Bankruptcy Fees assessed against the Debtor under 28 U.S.C. § 1930 and any applicable interest due thereon as of the Effective Date. All remaining Bankruptcy Fees assessed against the Debtors under 28 U.S.C. § 1930 from the Effective Date through the date of dismissal,

25

> conversion or entry of a final decree, shall be paid from the
> Bankruptcy Fees Reserve.

*Plan*, at 13. Therefore, the Plan satisfies all applicable requirements of Section 1129(a)(12) of the

Bankruptcy Code.

### xii.    The Other Provisions of Section 1129(a) are Either Inapplicable or Satisfied

66.    Section 1129(a)(6) does not apply, since the Debtors were never the type of

business that was subject to rate controls from a governmental entity.  The Debtors do not have

obligations for "retiree benefits," thus Section 1129(a)(13) is not applicable.   The Debtors have

no obligations to pay domestic support obligations, so Section 1129(a)(14) is not applicable.  The

Debtors are not individuals, so Section 1129(a)(15) does not apply.  Finally, the Debtors are not a

nonprofit entity, so Section 1129(a)(16) is not applicable.

67.    For all of the reasons, and the additional reasons set forth by the Plan Proponents,

the Court finds that the Plan satisfies Section 1129(a) of the Bankruptcy Code.

### b.  THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129(B) OF THE BANKRUPTCY CODE

68.    Because not all classes have accepted the Plan, the Plan Proponents seek

confirmation pursuant to Section 1129(b) of the Bankruptcy Code.   Section 1129(b) of the

Bankruptcy Code provides a mechanism for confirmation of a plan in circumstances where one or

more impaired classes of claims and interests does not accept a plan, as required by Section

1129(a)(8). This mechanism is frequently referred to as a "cram down."  Section 1129(b) provides

in pertinent part:

> If all of the applicable requirements of subsection (a) of this section
> other than paragraph (8) are met with respect to a plan, the court, on
> request of the proponent of the plan, shall confirm the plan
> notwithstanding the requirements of such paragraph if the plan does
> not discriminate unfairly, and is fair and equitable, with respect to

> each class of claims or interests that is impaired under, and has not
> accepted, the plan.

11 U.S.C. § 1129(b).

69.     The holder(s) of the claims in Classes 4 and 5 are impaired and deemed to have rejected the Plan.  Accordingly, the Plan Proponents invoke Section 1129(b) with respect to Classes 4 and 5.  The Plan (i) does not discriminate unfairly, and (ii) is fair and equitable.

### i.      The Plan Does Not Discriminate Unfairly

70.     Section 1129(b)(1) of the Bankruptcy Code does not prohibit discrimination between classes—it only prohibits unfair discrimination. A plan unfairly discriminates only if similar classes are treated differently without a reasonable basis for the disparate treatment. As between two classes of claims, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests; or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. Under the Plan, all impaired classes are treated in a manner that is consistent with the treatment of other classes that are similarly situated, if any, and no class will receive payments or property with an aggregate value greater than the aggregate value of the allowed claims or interests in such Class. Accordingly, the Plan does not discriminate unfairly as to any impaired class.

### ii.     The Plan is Fair and Equitable

71.     Pursuant to Section 1129(b)(2) of the Bankruptcy Code, a plan must be fair and equitable with respect to each class that rejects the Plan. Indeed, the "absolute priority rule" requires that, if the holders of claims or interests in a particular class that votes to reject a plan receive less than full value for their claims or interests, no holder of claims or interests in a junior class may receive or retain any property under the plan.

72.     Under the Plan, Class 1 is impaired but has voted to accept the Plan.  Classes 2 and 3 are unimpaired and conclusively deemed to accept the Plan.  *See* 11 U.S.C. § 1126(f).   Classes 4 and 5 are impaired but will receive no distributions under the Plan.  Thus, Classes 4 and 5 are deemed to reject the Plan.  *See* 11 U.S.C. § 1126(g).  The Plan is fair and equitable with respect to Classes 4 and 5 despite the fact that neither class will receive any distributions under the Plan because there are no classes junior to Classes 4 and 5 that will receive distributions under the Plan. Given this fact, and the above facts, the Plan is fair and equitable to the holders of claims and interests in these Classes 4 and 5.

      **c.   THE PLAN COMPLIES WITH ALL OTHER APPLICABLE PROVISIONS OF SECTION 1129 OF THE BANKRUPTCY CODE**

73.     The Plan also satisfies the remaining provisions of Section 1129 of the Bankruptcy Code.  First, Section 1129(c) generally provides that the court may confirm only one plan. Although multiple plans have been filed over the course of these cases, the Plan Proponents have agreed on the terms of the Plan, which is the only plan presently before the Court. Second, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933 and the Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.  Third, Section 1129(e) is not applicable since the Debtors' cases are not "small business cases." The Plan, therefore, satisfies the Bankruptcy Code's confirmation requirements.

**N.     GOOD FAITH – SECTION 1125(E)**

74.     The Plan Proponents have acted in good faith within the meaning of Section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their respective activities relating to the Plan, the Sale Transactions, and this Confirmation Order, including the solicitation of

acceptances of the Plan, and are therefore entitled to the protections set forth in Section 1125(e) of the Bankruptcy Code.

### O.    SATISFACTION OF CONFIRMATION REQUIREMENTS

75.    Based on the foregoing, the Plan satisfies all applicable requirements for confirmation thereof set forth in Section 1129 of the Bankruptcy Code.

### P.    LIKELIHOOD OF SATISFACTION OF CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

76.    Each of the conditions precedent to the Effective Date, as set forth in Article 7.5 of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with the Plan; *provided*, *however*, pursuant to the Plan, none of the conditions precedent can be waived by the Debtors or any other party in interest without the express written consent of Bay Point.

### Q.    IMPLEMENTATION

77.    All documents necessary to implement the Plan (including the Sale thereunder) and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements.  The Plan Proponents are authorized to take any actions reasonably necessary or appropriate to consummate such agreements and the transactions contemplated thereby.

### R.    THE SALE OF THE PROPERTIES

78.    The Purchase and Sale Agreements were negotiated, proposed, and entered into by the Debtors and the "**Purchasers**" identified in such agreements, without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor the Purchasers have engaged in any conduct that would cause or permit the Purchase and Sale Agreements to be avoided under Bankruptcy Code Section 363(n).

79.     The Purchasers are consummating the Sale Transactions in good faith and are good faith buyers within the meaning of Section 363(m) of the Bankruptcy Code. The Purchasers have proceeded in good faith in all respects in connection with the Sale Transactions. The Purchasers are, therefore, entitled to all of the protections afforded under Section 363(m) of the Bankruptcy Code.

80.     The Debtors' marketing process with respect to the Sale Transactions afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer. The Purchase and Sale Agreements constitute the highest and best offers for the Properties, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase and Sale Agreements constitute the highest and best offers constitutes a valid and sound exercise of the Debtors' business judgment. Approval of the Purchase and Sale Agreements and the consummation of the Sale Transactions is in the best interests of the Debtors' estates, their creditors, and other parties in interest.

81.     The consideration provided by the Purchasers pursuant to the Purchase and Sale Agreements (a) is fair and reasonable, (b) is the highest or best offer for the respective Property and (c) constitutes reasonably equivalent value (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, and Section 548 of the Bankruptcy Code) and fair consideration under the Bankruptcy Code and all other applicable law. The Sale Transactions may not be avoided, and costs or damages may not be imposed or awarded as a result of or in any way relating to the Sale, under Bankruptcy Code Section 363(n) or any other provisions of the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, or any other similar state or federal laws.

82.     The Purchasers are not mere continuations of the Debtors or their estates and there is no continuity of enterprise or common identity between the Purchasers and any of the Debtors. The Purchasers are not holding themselves out to the public as a continuation of any of the Debtors. The Purchasers are not successors to the Debtors or their estates by reason of any theory of law or equity, and the Sale of the Properties does not amount to a consolidation, merger, or *de facto* merger of the Purchasers with or into any of the Debtors. The Purchasers entered into the Purchase and Sale Agreements in material reliance on and with fair consideration provided for the Sale Transactions being free and clear of all liens, claims, encumbrances and other interests relating to the Debtors and the Properties which existed immediately prior to consummation of the Sale Transactions, other than the recorded instruments set forth in Schedule A hereto, including any claims based on any theory of law or equity giving rise to successor or vicarious liabilities of any kind or nature. The Purchasers would not have entered into the Purchase and Sale Agreements or the Sale Transactions without such terms and the findings herein.

83.     The conditions of Section 363(f) of the Bankruptcy Code have been satisfied. Therefore, the Debtors may sell the Properties, through the Plan, pursuant to the Purchase and Sale Agreements free and clear of any claims, liens, encumbrances, or other interests of any kind or nature whatsoever other than the recorded instruments set forth in Schedule A hereto. In addition to and without limiting the foregoing, the proposed Sale Transactions are to be consummated under the Plan, and the Properties to be sold pursuant to the Sale Transactions are dealt with by the Plan and this Confirmation Order. Therefore, except as expressly provided under the Purchase and Sale Agreements, the Plan, or this Confirmation Order, the Debtors may sell property pursuant to the Purchase and Sale Agreements free and clear of any claims, liens, encumbrances, or other interests

of any kind or nature whatsoever, other than the recorded instruments set forth in Schedule A hereto, pursuant to Section 1141(c) of the Bankruptcy Code.

84.    The Debtors may sell such property free and clear of all claims, liens, encumbrances, and other interests of any kind or nature whatsoever (other than the recorded instruments set forth in Schedule A hereto) because, in each case, one or more of the standards set forth in Sections 363(f)(l)–(5), 1129(b)(2)(A)(ii), 1141(a), or 1141(c) of the Bankruptcy Code has been satisfied. All holders of such claims, liens, encumbrances, or other interests against the Debtors, their estates, or any of the assets subject to the Sale Transactions (a) who did not object, or who withdrew their objections, to the Sale Transactions are deemed to have consented pursuant to Section 363(f)(2) of the Bankruptcy Code and (b) are bound by the Plan pursuant to Section 1141(a) of the Bankruptcy Code.

85.    The Purchase and Sale Agreements were not entered into, and the Sale Transactions are not consummated, for the purpose of hindering, delaying or defrauding the Debtors' creditors under the Bankruptcy Code or under any other law of the United States, any state, territory, possession thereof, or any other applicable law. Neither the Debtors nor the Purchasers have entered into the Purchase and Sale Agreements, or are consummating the Sale Transactions, for any fraudulent or otherwise improper purpose.

## S.    DISCLOSURE OF FACTS

86.    The Plan Proponents have disclosed all material facts regarding the Plan, the Sale Transactions, the Disclosure Statement, and the adoption, implementation, and execution of the other matters provided for under the Plan involving corporation action to be taken by or required of the Debtors.

## T.    GOOD FAITH

87.    The Plan Proponents have acted in good faith in proposing and negotiating the Plan. The Plan Proponents will continue to be acting in good faith if they proceed to consummate the Plan and the agreements, transactions, and transfers contemplated thereby and take the actions authorized and directed by this Confirmation Order.

## ORDER

BASED ON THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:

### A.    OBJECTIONS

88.    All objections to the Plan, the Sale Transactions, and the Disclosure Statement, and other responses, comments, statements, or reservation of rights, if any, in opposition to the Plan, the Sale Transactions, and the Disclosure Statement, have been overruled in their entirety and on the merits to the extent not otherwise withdrawn, waived, or otherwise resolved by the Plan Proponents prior to entry of this Confirmation Order or on the record at, the Confirmation Hearing, unless otherwise indicated herein. All withdrawn objections, if any, are deemed withdrawn with prejudice.

### B.    CONFIRMATION OF PLAN AND APPROVAL OF DISCLOSURE STATEMENT

89.    Disclosure Statement.  The Disclosure Statement contains adequate information and is **APPROVED.**

90.    Confirmation.  The Plan, including (a) all of the modifications to the Plan filed with the Court prior to or during the Confirmation Hearing and (b) all documents and exhibits attached or incorporated into the Plan, is **CONFIRMED** pursuant to Section 1129 of the Bankruptcy Code. A copy of the Plan in the form confirmed is attached hereto as **Exhibit A**.

### C.    REFERENCE TO PLAN PROVISIONS

33

91.    The failure to specifically describe, include, or refer to any particular article, section, or provision of the Plan or the Purchase and Sale Agreements in this Confirmation Order shall not diminish or impair the effectiveness or enforceability of such article, section, or provision, nor constitute a waiver thereof, and such provision shall have the same validity, binding effect, and enforceability as every other provision, it being the intent of this Court that the Plan and the Sale Transactions contemplated thereunder be approved in their entirety and incorporated herein by reference.

### D.    INJUNCTION PROVISIONS

92.    Pursuant to Bankruptcy Rule 3020(c)(1), the following injunction provisions in the Plan are hereby approved and will be immediately effective on the Effective Date without further order or action by the Court or any other party:

**Injunction Against Interference with Plan.** Upon entry of the Confirmation Order, all holders of Claims against or Interests in the Debtors and other parties in interest, and any other Person with notice (actual or constructive) of the Confirmation Order, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan; *provided that,* for the avoidance of doubt, nothing contained herein shall limit any rights previously granted to Bay Point under the DIP Financing Order and the DIP Loan Documents in relation to non-Debtor property.

**No Interference**. No Person, including Debtors, Bay Point, Charles Andros, the holders of any Equity Interests, Kabatoff, and Blouin, shall interfere with the Escrow Agent in the performance of its duties, and any party with notice of the Confirmation Order shall be enjoined from taking any action that could reasonably be deemed to be an intentional interference with the Escrow Agent in the performance of its duties; *provided that,* nothing contained herein shall prohibit or inhibit a Decision Maker from exercising the discretion provided to it under the terms of the Plan and Approved Bid Procedures.

### E.    APPROVAL OF PURCHASE AND SALE AGREEMENTS FOR THE PROPERTIES

93.    The Purchase and Sale Agreements for the Properties, and all the terms and conditions thereof, are hereby **APPROVED**.

94.    The failure to specifically include or make reference to any particular provision of the Purchase and Sale Agreements in this Confirmation Order shall not diminish or impair the effectiveness of such provisions.

95.    The Sale Process, including the consummation of one or more Sales, was conducted in accordance with the Approved Bid Procedures.

96.    Pursuant to Sections 105(a), 363(b), and 1123(b)(4) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale Transactions pursuant to and in accordance with the terms and conditions of the Purchase and Sale Agreements, the Plan, and this Confirmation Order, and (b) execute and deliver, perform under, consummate, and implement additional instruments and documents that may be reasonably necessary or desirable to consummate the Sale Transactions. Kabatoff is hereby designated as the authorized signatory for the Debtors and in such role is authorized and directed to execute all closing documents necessary to close the Sale Transactions.

97.    Pursuant to Sections 105(a), 363(f), 365(f), 1129(b)(2)(A)(ii), 1141(a), and 1141(c) of the Bankruptcy Code, subject to the closing of the Sale Transactions, and except for the recorded instruments set forth in Schedule A hereto, the Properties shall be sold, transferred to and vested in the Purchasers free and clear of any and all liens, claims, encumbrances, and other interests, other than the recorded instruments set forth in Schedule A hereto, to the fullest extent permitted by section 363(f) and Section 1141(c) of the Bankruptcy Code.

98.     Subject to entry of Court orders approving requested fees and expenses, the Escrow Agent shall distribute the following amounts from the Gross Sale Proceeds with respect to each Property: (i) the fees and expenses of the Auctioneer with respect to such Property; (ii) the fees and expenses of a Broker whose retention has been approved by the Bankruptcy Court and who solicits (a) an offer that directly results in a consummated Private Sale of such Property, or (b) a Qualified Bid from a Qualified Bidder that eventually becomes the Successful Bidder with respect to such Property at the Auction; and (iii) any other closing costs associated with the Sale of such Property.

99.     The Properties shall remain in the Debtors' respective Estates under Section 541(a) of the Bankruptcy Code until the closing of a Sale of the same and shall remain subject to all Liens and Claims that exist as of the date of Confirmation. Upon the closing of a Sale involving one or both Properties, such Properties (or Property) shall vest in the Successful Purchaser, free and clear of all Liens and Claims, except for the recorded instruments set forth in Schedule A hereto. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, authorizing and directing any necessary party to execute or deliver, or to join in the execution or delivery, on the Closing date of the Sale(s), of any instrument required to effect a transfer of Properties (or a respective Property) as required by the Plan, and to perform any act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan.

100.    The Escrow Agent shall hold the proceeds of the Sale(s) of the Properties in the Escrow DIP Account established by the Debtors at a depository institution that has been previously approved by the UST with the Escrow Agent identified as the sole signatory on such account. The Debtors' appointment of the Escrow Agent is hereby approved; the Escrow Agent is authorized and directed to (i) hold the proceeds of the Sale(s) in the Escrow DIP Account, and (ii) distribute

the Sale Proceeds and other funds of the Estates on the Distribution Date strictly in accordance with the provisions of the Plan.

101.    The Escrow Agent shall not be deemed an officer or agent of the Debtors. The Escrow Agent may, with the consent of the Debtors, employ or contract with such third parties as appropriate to assist in the performance of its duties under the Plan. Except for gross negligence, or willful misconduct, the Escrow Agent shall not have, or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan (including, without limitation, distributions of Sale Proceeds pursuant to the Plan), the Disclosure Statement or any contract, instruction, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with or related to the Plan, except in the case of gross negligence or willful misconduct. For the avoidance of doubt, the Escrow Agent shall have no responsibility or liability to any entity for the failure of Kabatoff to fulfill any of his obligations under the Plan. The Escrow Agent is not a receiver, trustee, or assignee.

102.    Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtors and any other necessary party is authorized and directed to execute any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance, including without limitation, any Lien, Claim or encumbrance not expressly provided for in the Plan, that is necessary for consummation of the Plan, and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

## F.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

103.    On the Plan's Effective Date, unless otherwise assumed, all Executory Contracts to which the Debtors are a party shall be deemed rejected. Allowed Claims arising from the rejection

of Executory Contracts of a Debtor pursuant to Section 6.1 of the Plan shall be treated as Unsecured Claims. A Proof of Claim seeking payment of any Unsecured Claim for damages arising from the rejection of an Executory Contract pursuant to Section 6.1 of the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtors within thirty (30) days after the Confirmation Date. Any such Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtors and may not be enforced against the Properties, any purchaser of the Properties, or any Creditor under any indirect or equitable legal theory such as unjust enrichment.

### G.    RECORDATION AND PROPERTY TRANSFERS

104.    This Confirmation Order is and shall be binding upon and shall govern the acts of all persons or entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, provincial, and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any document or instrument. Pursuant to Section 1146(a) of the Bankruptcy Code, the transfers of property pursuant to the Purchase and Sale Agreements, the Plan, and this Confirmation Order shall not be subject to any stamp or similar tax. Pursuant to Sections 105(a), 1141(a), and 1142(b) of the Bankruptcy Code, each and every federal, state, provincial, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including financing statements under the applicable uniform commercial code) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Confirmation Order without

payment of any stamp tax or similar tax, recordation fee, or governmental assessment imposed by law.

### H.   RESOLUTION OF SPECIFIC OBJECTIONS AND CERTAIN OTHER AGREEMENTS

105.    The Plan, attached hereto as confirmed by the Court, contains certain modifications in light of consensual resolutions of those objections that were resolved at or prior to the Confirmation Hearing. A redline of the Plan, as confirmed, compared to the Plan as it appears at D.I. 215 is attached hereto as **Exhibit B**. Among the modifications reflected in the Plan are (i) a $100,000 reserve for the claim of Dream Yards Landscaping, Inc., pending further proceedings to determine the extent and value of its secured claim (if any) arising from the filing of a mechanics' lien against the Aberdeen Property, (ii) recognition of the standing of parties-in-interest to file objections to the claims of creditors and administrative expense claimants, (iii) deletion of the provision in Section 4.1 of the Plan prohibiting Louise Blouin from "taking part in, or interfering with, any of the decisions, processes, or procedures set forth or governed by the Plan," and (iv) additional language confirming that following the Effective Date of the Plan, Mathew Kabatoff shall be the sole Decision Maker (as such term is defined in the Plan), and aside from his role as Decision Maker, Mr. Kabatoff shall serve as the fiduciary for the Debtors and their Estates, and shall be responsible for causing to be prepared and filed all necessary tax returns on behalf of the Debtors.

106.    Unless otherwise agreed to by each of the Debtors, Bay Point, and the Purchasers, the discretion of which is in each of their respective sole and absolute discretion, Blouin shall vacate the Properties and completely remove all her personal property from each of the Properties, including, without limitation, the entire exterior premises constituting the same, no later than March 4, 2024.

107.    Unless otherwise agreed to by each of the Debtors, Bay Point, and the Purchasers, the discretion of which is in each of their respective sole and absolute discretion, the Properties shall be put into broom-swept condition and made available to the Purchasers for inspection no later than March 5, 2024 at 11:00 a.m. (Eastern).

108.    The Debtors are hereby authorized and directed to close the Sales Transactions at 2:00 p.m. (Eastern) on March 5, 2024, or as soon as practicable thereafter (the "Closing Deadline"); *provided that* if the Debtors and Bay Point each consent to an extension of the Closing Deadline, such consent being in each of their sole and absolute discretion, the Closing Deadline shall be extended consistent with their agreement, and no such extension shall be deemed a breach of any provision of this Confirmation Order or the Purchase and Sale Agreements; *and further provided that* nothing contained herein shall require the Purchasers to close the Sale Transactions unless the conditions precedent in the Purchase and Sale Agreements have been satisfied. Notwithstanding the foregoing, all persons, including the Debtors, Blouin, Bay Point, and the Purchasers, are directed and ordered to use their respective best efforts to close the Sale Transactions at or before the Closing Deadline.

## I.    NOTICE OF CONFIRMATION ORDER, EFFECTIVE DATE, AND SUBSTANTIAL CONSUMMATION

109.    Following entry of the Confirmation Order and satisfaction of the conditions in Section 7.5 of the Plan, the Debtors shall file a notice with the Bankruptcy Court of the Effective Date and substantial consummation of the Plan. The Debtors shall promptly serve such notice on all creditors and parties in interest.

## J    SUBSTANTIAL CONSUMMATION

110.    On the Effective Date, the Plan shall be deemed to be substantially consummated pursuant to Sections 1101 and 1127 of the Bankruptcy Code.

### K.    BINDING EFFECT

111.    Bankruptcy Rule 3020(e) states that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).  Bankruptcy Rule 6004(h) provides a similar stay to orders authorizing the use, sale, or lease of property (other than cash collateral).  *See* Fed. R. Bankr. P. 6004(h).   Each rule also permits modification of the imposed stay upon court order.

112.    As stated on the record at the hearing held by this Court on February 27, 2024 whereat this Court orally approved the Disclosure Statement and confirmed the Plan, any party-in-interest seeking an appeal of the relief granted by this Confirmation Order has the right to immediately appeal, including the right to file any such appeal prior to the entry of this Confirmation Order. The Court, having found sufficient cause shown, hereby modifies the stays under Rules 3020(e), and 6004(h) such that this Confirmation Order shall be stayed until 5:00 p.m. (Eastern) on March 4, 2024, at which time the stay shall terminate, and expressly directs entry of judgment as set forth herein. The Purchasers, being good faith purchasers under Section 363(m) of the Bankruptcy Code, may close the Sale Transactions contemplated by the Purchase and Sale Agreements at any time after 5:00 p.m. (Eastern) on Tuesday, March 4, 2024, unless a further stay is entered by a court having jurisdiction of this matter. The Escrow Agent is authorized and directed to make distributions under the Plan on the Distribution Date.

### L.    RESERVATION OF RIGHTS

113.    Prior to the Effective Date, neither the filing of the Plan, any statement or provision contained in the Plan, the Disclosure Statement, or this Confirmation Order, nor the taking of any action by the Debtors, Bay Point, or any other entity with respect to the Plan, the Disclosure Statement, or this Confirmation Order shall be deemed to be an admission or waiver of any rights

of: (i) any Debtor with respect to the Holders of Claims or Equity Interests or any other Entity; or (ii) any Holder of a Claim or an Equity Interest or other Entity.

### M.    HEADINGS

114.    The headings in the Confirmation Order are for reference purposes only and shall not affect in any way the meaning or interpretation of the Confirmation Order.

### N.    GOVERNING TERMS

115.    If there is any inconsistency between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order govern and control.

### O.    FINAL ORDER

116.    This Confirmation Order is a final order within the meaning of 28 U.S.C. § 158(a), and the period in which an appeal must be filed shall commence immediately upon the entry hereof.

### P.    EXEMPTION FROM CERTAIN TRANSFER TAXES AND RECORDING FEES

117.    Each Sale constitutes the making or delivery of instruments of transfer of property or otherwise, pursuant to or in connection with confirmation of the Plan, and, therefore, to the maximum extent provided by Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer under the Plan, including an instrument of transfer and deed executed by the Debtors shall not be subject under any law imposing a stamp tax, real estate transfer tax, mansion tax, mortgage recording tax or similar tax (previously defined as the "**Transfer Taxes**"). For avoidance of doubt, this does not apply to any income, employment, or unemployment tax claims, or capital gains tax, under the Internal Revenue Code, 26 U.S.C. Accordingly, the appropriate officials or agents of state or local governmental units, including New York State, Suffolk County and the Town of Southampton,

shall forego collection of any such Transfer Taxes and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such Transfer Taxes.

### Q.    EFFECTUATING ACTIONS

118.    The Plan Proponents are authorized to take all actions necessary to effectuate the Sale Transactions and the relief granted in this Confirmation Order in accordance with the Plan, to the extent provided herein, without further Order of the Court.

### R.    TAX RETURNS

119.    In accordance with Section 4.1 of the Plan, Kabatoff, as the Debtors' fiduciary, is authorized and directed to prepare and file necessary tax returns on behalf of the Debtors.

### S.    VACATING OF JUDGMENTS OF FORECLOSURE

120.    On the Effective Date, Bay Point shall execute (a) a stipulation vacating the judgment of foreclosure entered in favor of Morgan Stanley Private Bank, National Association in that action assigned Index No. 623196/2019 pending before the Supreme Court of the State of New York, Suffolk County; and (b) a stipulation vacating the judgment of foreclosure entered in favor of JGB Partners, LP, JGB Capital, LP, JGB (Cayman) Ancona Ltd., and JGB Plymouth Rock LLC in that action assigned Index No. 623208/2019 pending before the Supreme Court of the State of New York, Suffolk County file (collectively the "Stipulations"). Also on the Effective Date, Bay Point shall authorize the filing of, or cause to be filed, such Stipulations with the Suffolk County Clerk of Courts.

### T.    RETENTION OF JURISDICTION

121.    The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Confirmation Order. The

Court shall also retain exclusive jurisdiction with respect to each matter set forth in Section 8.1 of

the Plan.

## **SCHEDULE A**

1.  Declaration recorded November 16, 1982 in Liber 9271 at Page 196.

2.  Declaration recorded April 01, 1988 in Liber 10574 at Page 15.

3.  Deed of Easement recorded April 15, 1994 in Liber 11672 at Page 959.

4.  Easement Agreement recorded December 06, 2004 in Liber 12358 at Page 919.

**EXHIBIT A**

**(Confirmed Plan)**