| | |
|---|---|
| From: | Louise Blouin |
| To: | NYEB_DropBox; Camisha Simmons; Kevin J. Nash; Ted Donovan; edward.j.murphy_usdoj.gov; Mathew Kabatoff; john.allerding_thompsonhine.com |
| Subject: | FW: Blouin Response to Bay Point - Case No. 23-72834-ast Case No. 22-70914-ast |
| Date: | Wednesday, August 14, 2024 10:52:12 AM |
| Attachments: | image004.png |
| | image005.png |
| | image006.png |
| | UBO - BP - Disputed Claims - April 8, 2024[74][72][11].pdf |
| | LB_Preservation[80][32].pdf |
| | Blouin_Aberdeen_Brickchurch_BVI_July312024[55].pdf |
| | Letter to Judge - January 15, 2024[4][68][12].pdf |
| | Bay Point Version - December 17, 2023[52][74].pdf |
| | Affidavit -Blouin - 0201[9].pdf |
| | Disputed Claims - Bay Point - February 13, 2024[53][68].pdf |
| | Disputed Claims - March 20, 2024.pdf |
| | Doc#243 Blouin - Plan Objection.pdf |
| | Aberdeen and Brickchurch Numbers.pdf |
| | 623208_2019_JGB_PARTNERS_LP_et_al_v_JGB_PARTNERS_LP_et_al_JUDGMENT_OF_FORECLO_99[15].pdf |
| | Bay Point Plan [Dkt. No. 173][11].pdf |

**CAUTION - EXTERNAL:**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| ABERDEEN ENTERPRISES, INC., | Case No. 23-72834-ast |
| BRICKCHURCH ENTERPRISES, INC., | Case No. 22-70914-ast |
| Debtors. | Jointly Administered |

**RESPONSE TO BAY POINT CAPITAL PARTNERS II, LP'S OPPOSITION TO THE OBJECTION FROM THE SOLE CREDITOR OF ABERDEEN AND BRICKCHURCH ENTERPRISES BVI AS FILED August 7th, 2024**

Honorable Alan S. Trust
U.S. Bankruptcy Court
290 Federal Plaza Central Islip
NY, 11722

Dear Honorable Judge Trust,

Mrs. Blouin within the capacity of a Class 5 equity holder, and for Class 4 unsecured creditors, of which she is the sole creditor and shareholder of Aberdeen Enterprises Holdings BVI, which in turn hold the shares of both Aberdeen Enterprises BVI and Brickchurch Enterprises BVI as "Equity Owners", as well as acting as a creditor to the Debtor's, wishes to respond to Bay Point Capital Partners II, L.P. ("Bay Point") with respect to their opposition to the claims objection raised by herself in a personal capacity as a Sole Creditor and as entity representative.

I apologize to Your Honor if the case seems long, but it is out of my control and the amounts are

considerable.

As stated by Bay Point, on March 1, 2024, the Court confirmed the Joint Plan after months of heavy negotiations between Bay Point, the Aberdeen, Brickchurch counsels, Charles Andros and Mathew Kabatoff, (Bay Point created 42 versions of the Plan, wasting months and more than 34 versions for a broker auction contract, wasting 5 months, and not respecting the covenant for the DIP loan mortgage for more than 7 months, as they collected interest on all delays).

## RESPONSE TO POINTS RAISED IN BAY POINT OPPOSITION

*Bay Point has indicated in their opposition to the claim's objection of Mrs. Blouin that "On March 1, 2024 the Court confirmed the Joint Plan, which was the result of months of heavy negotiations between Bay Point and the Debtors and also involved input from Ms. Blouin's counsel" and "Ms. Blouin had actual knowledge of the terms of the Joint Plan and the Confirmation Order, including the time proscribed for making objections to claims."*[1]

However, these statements are simply untrue and represent another example of Bay Point CEO, Charles Andros, attempting to hide from their fraudulent actions and their consequences. *Bay Point wished* for me to be entirely 'sidelined' from any decision related to the Joint Plan and tried to take all my rights away as a Shareholder and Creditor. All of these attempts were conducted with both threats and manipulation (Please see section 4.1 of the Bay Point plan below and see the quote by Lawyer Mr. Wander below from his filing on February 26, 2024).

*The part of Section 4.1 of the Plan that states "Blouin…shall completely refrain from taking part in … any of the decisions, processes, or procedures set forth or governed by the Plan" must be stricken, as being wholly improper, unconstitutional, unenforceable, meanspirited, and not even in the best interests of the Debtors' estates. Bay Point, in effect, is asking this Court to impose a gag order on Blouin, the largest unsecured credit (albeit a claim that is subject to dispute) and, indirectly, the sole equity holder." Mr. Wander, February 26, 2024.*

The Court Objection quote by Mr. Wander confirms my disagreement with the Plan. For Bay Point to state, in their arguments, that I was informed of the decision process of the Plan is truly not justified as per the filing by Mr. Wander.

*Bay Point goes on to say that the claims objection by Mrs. Blouin was significantly 'tardy'* and beyond a reasonable timeframe to be heard by the court. Further, Bay Point asserts that the challenge period, established in the Joint Plan, no. 1.31, rests at 30 days after the 'effective date'. Here Bay Point cites this date as March 31, 2024; however, this date is in fact incorrect. The limit of the objection date is in fact set at 30 days from March 8, 2024, or April 8, 2024, as seen in the Notice filed by Bay Point, Doc 254 with the court[2].
Mrs. Blouin is sharing with Your Honor the list of *all the filings – Annex 1* – along with confirmation of submitting a claims objection on April 8, 2024, that were submitted to the court since January 2024 and their respective filed summaries (please see Blouin_Aberdeen _br attachment).

**Presentation of Factual Accuracy pertaining to the 'tardy' statement and the involvement input from Mrs. Blouin and her counsel:**

As it has been stated, Mrs. Blouin did inform both the court and counsels for Bay Point and the Debtors on April 8, 2024[3] of her claim's objection, (please see the UBO attachment). Also, Mrs. Blouin informed the court, Bay Point, and the Counsel for the Debtors of her concerns regarding both the misuse of the JGB Judgement allocation, along with breach of the DIP Loan covenants as

early as January 2024 – Annex 1 – list of some of the filings.

**The Lawyer Mr. David Wander filed an objection** to the Joint plan on February 26, 2024, therefore it is clear that the Plan is not a result of my involvement or my counsel's.

Mr. Andros must take responsibility for his actions and uphold the integrity of the contracts he has entered into, acknowledging the consequences of any breaches. He should not alter the wording of contracts to serve his own interests.

**This unjustified 'tardy' statement** is evidenced again by the fact that I had to hire Mr. David Wander to object to the Joint Plan.

<u>Mr. Wander went in front of the Courts to object to The Plan on these three points: (Please see the attached filing called Doc #243 Blouin-Pl).</u>

1. **Not respecting the JGB contract** - As per the Bay Point plan it states that the $26,240,899.80 of Aberdeen would be paid to Bay Point solely by respecting The JGB judgment (page 26 of The Bay Point Plan.) Bay Point did not respect the JGB judgment, the $26,240,899.80 is not what was stipulated in the JGB judgment.

2. **Disputed claims should be in an escrow account** (the disputed claims – see document *Blouin Aberdeen_*br attachment and the *UBO* + Aberdeen and Brickc attachments that demonstrate the breach of the JGB judgment and covenant). Bay Point failed to uphold the covenant until the maturity date was reached. As a result, Mrs. Blouin was unable to fulfill her obligations due to this breach in the contract. It is only at maturity that Bay Point respected that covenant in the DIP loan of the mortgage so they could benefit. The DIP loan covenant was breached when Bay Point failed to release the required funds, leading to a charge of $350,000 to Aberdeen and Birckchurch. This situation has resulted in an amendment concerning disputed claims and damages, as the loan was not made fully available.

3. **IRS Fraud** - Why did Bay Point pay a nonrefundable cash amount of $1 million when this case remains pending?

<u>**Response to Point 1 regarding the non-respect of the JGB contract, see below:**</u>

Bay Point did not respect the JGB judgment that was ordered adjudged and decreed,
Bay Point decided not to respect the JGB assignment and its implications both on the DIP Loan and the allocation of sale proceeds; this allocation needs to be fully respected.

Please see JGB Judgment section below:

FOURTH:  (A) with respect to the sale of 366 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, the sum of $ 39,961,521.80 , ~~which is comprised of (i)~~ the said amount ~~of $39,961,521.80~~ so reported by the Referee to be due as of July 1, 2021 with interest ~~in the total amount of $~~ accruing at a per diem rate of Thirteen Thousand Dollars ($13,000) from the date July 2, 2021 to date of entry of this judgment as provided in the said Referee's Report, ~~(ii) an award for legal fees incurred or to be incurred by Plaintiffs in prosecuting the foreclosure action, in the amount of $304,316.05 as provided for in the Loan Documents, plus any additional legal fees and expenses incurred by Mortgage Holder, including any Assignee, including any Assignee in connection with the foreclosure and sale that are required to be paid by the Borrowers under the Loan Documents~~, and (iii) an award of costs, disbursements and additional allowances in the amount of $1,125.00 to be taxed by the Clerk of this Court with interest thereon from the date hereof, with interest thereon from the date hereof, together and thereafter interest at the statutory rate thereon, to the date of sale directed herein or to the date of the delivery of the Referee's deed, whichever is later or so much as the purchase money of the mortgaged Properties will pay of the same, and (B) with respect to the sale of 376 Gin Lane, the Referee shall pay to the Mortgage Holder or their attorneys, an amount equal to the judgment of foreclosure and sale amount *less* any amounts paid to the Mortgage Holder from the proceeds of the sale of 366 Gin Lane.

**The Bay Point Plan clearly states,**
*"Third, $26, 240, 899.80, shall be paid to Bay Point for application to the amounts due and owing to Bay Point under the JGB judgment."*

**Mr. Nash stated in his Court Objection Filing on April 8, 2024,**
*"Thus, Bay Point should be made to disgorge the funds improperly obtained through the overallocation and return the excess funds to the Aberdeen Debtor (after deducting the principal balance plus accrued interest) for re-distribution under the Plan. This should be done without additional payments on account of the Bay Point DIP mortgage, which is not supported by fair or adequate consideration. Alternatively, under 5.11, all funds disgorged are subject to redistribution without further payment to Bay Point."*

**Bay Point cherry picks from each contract** what they want to utilize for their benefit at the detriment of the Major and sole Creditor, as stipulated by Mr. Nash in the objections put forward by Aberdeen Enterprises Inc. Bay Point must now assume the consequences of their misallocation of sale proceeds and their misuse of the underlying JGB Judgment, the covenant breach and the respected damages.

**Response to Point 2 Disputed claims should be in an escrow account, please see the disputed claims – see document *Blouin Aberdeen*_br attachment and the *UBO* + Aberdeen and Brickc attachments that demonstrate the breach of the JGB judgment and covenant.**

**Response to Point 3 – IRS Fraud, please see below:**

***Bay Point paid $1 million in cash to the IRS** to ensure that the IRS would not challenge the allocation of funds.* Why do you think Bay Point needed to pay $1 million in cash with the estate money, unapproved by the Creditor or Shareholder, and highlighted by Mr. Wander in his filing? The IRS was given a non-refundable cheque to get out of the contestation of the Joint Plan. The non-refundable IRS payment was made to prevent the IRS from objecting to Bay Point's plan to charge Aberdeen $26,892,813.08. The IRS would not allow the non-respect of the JGB judgment with inflated amounts as highlighted by Mr. Wander and Mr. Nash in their Court objections.

Mr. Wander states in the Court Filing on February 26, 2024,

*"Among other deficiencies with the Plan, the treatment of the IRS' disputed claim is unsupportable, to the extent the IRS may receive $1 million more than its allowed claim. Any payment to the IRS should be included in the disputed claim reserve or, otherwise, subject to disgorgement, the same as being done with Bay Point's disputed secured claim." Mr. Wander, February 26, 2024.*

**The Bay Point plan clearly states:**

*"Third, up to $425,000 shall be paid to the IRS for application to the IRS's allowed Administrative Expense Claim and/or Priority Tax Claim (subject to the provisions set forth in section 2.1 of the Bay Point Plan)."*

It is important to note that the IRS case is pending and they have no rights to Brickchurch Inc.

**WHEREFORE** Mrs. Blouin humbly submits to the court, a request to be heard on these claims objections as she has both filed in a timely manner and remains the Sole Creditor of the Debtor's Estates. She prays for the acceptance of this request and an opportunity to be heard by the court.

To conclude, the Creditor simply requests adherence to the JGB judgment, the DIP loan contract, and the Joint plan.

The future ruling by Judge Trust on the JGB judgment will have a significant impact on the claims and potential damages in this case.

It is material as well to be informed that Mrs. Blouin and Mr. Kabatoff have been separated for some time.

Respectfully submitted,

Dated: London, United Kingdom
August 13, 2024

s/Louise Blouin
Mrs. Louise Blouin
UBO, self-representing as creditor.
Aberdeen Enterprises BVI
Brickchurch Enterprises BVI

ANNEX 1

- Objections of the UBO, Louise Blouin, seeking to reduce and/or reallocate the closing payments received by Bay Point Capital Partners II, L.P – Filed April 8, 2024.

- Preservation of Rights - May 15, 2024, Claims and Damages to be followed after the Ruling of the Honorable Judge Trust regarding the contract of the JGB Foreclosure Judgment supporting the Objection paper filed by Mr. Kevin Nash.

- Blouin_Aberdeen_Brickchurh_BVI Objection from the sole creditor of Aberdeen and Brickchurch enterprises bvi challenging the payment received by Bay Point Capital Partners ii, l.p. that is inconsistent with the assigned JGB foreclosure judgment / claims – Filed July 29, 2024.

- Letter to the Judge, Three scenarios in respect to the Lender's (Bay Point) payoff - Filed January 15th, 2024, Claims and Damages.

- Bay Point - Nefarious scheme - Filed January 16, 2024, Claims and Damages.

- Affidavit - Filed February 1, 2024 – Delay tactics (Oppenheimer syndrome) 34 versions of a simple auction contract from August to December 2023, refusing to engage brokers Claims and damages.

- Disputed Claims and damages – Filed on February 13, 2024.

- Disputed Claims and damages – Filed on March 20, 2024.

- Doc #243 Blouin-Plan Objections. Mr. Wander objecting to the plan -IRS and requesting to pay disputed claims in an escrow account. Which would have incentivized Bay Point to the mediation table – Filed February 26, 2024.

- Objection to Secured Claims by Mr. Kevin Nash – Filed on April 8, 2024 (Objection of the Aberdeen debtor seeking to reduce and/or reallocate the closing payments received by Bay Point Capital Partners II, L.P. consistent with the assigned JGB foreclosure judgment).

- Aberdeen and Brickchurch Numbers, Financial Information following the various previous filings - Friday August 2, 2024, highlighting the Allocation and amounts issues pertaining to the respect of the contract of the JGB Foreclosure judgment supporting the filing of Mr. Kevin Nash in his Objection filing motion. There have also been claims and damages filed on many occasions in the past days, weeks and months.

- JGB Judgment.

- Bay Point Plan – with Highlights by Mrs. Blouin.

ANNEX 2
Refers to the filing of Aberdeen and Brickchurch Numbers attached to this email and filed August 2, 2024.

Payoff Respecting JGB Judgement*
(Only interest)

Scenario 1

|  | **Brickchurch** | **Aberdeen** |
|---|---|---|
| Morgan Stanley |  | $16,248,932.00 |
| JGB | $29,444,734.72 | $16,739,324.00 |
| DIP Loan** | $11,451,967.17 |  |
|  | $40,896,701.89 | $32,988,256.00 |

Total net to Bay Point   $73,884,957.89

Total paid to Bay Point   $84,038,446.97 - They are claiming 24% on the debt – to the press they claim 43% or more.

Owed to debtor   $10,153,489.10

*Excluding the allocation clause in the JGB judgment, only the interest:

| JGB judgement: $13,000 interest per day | $ 2,600,000.00 |
|---|---|
| 9% thereafter | $3,596,536.96 |
| Principal | $39,961,521.80 |
|  | $46,184,058.76 |

Bay Points Principal:

| Morgan Stanley Assignment | $15, 478, 000.37 |
|---|---|
| JGB Assignment | $39, 961, 521.80 |
| Bay Point – Real DIP Loan | $8, 820, 000.00 |
| **Total Principal** | **$64, 259, 521.30** |

**The return on the DIP Loan is 30% interest based on a principal of $8,820,000.00 so they made $2.7 million on a principal of $8.8 million.

Payoff Respecting JGB Judgement
In its entirety – Allocation + Interest

Scenario 2

|  | Brickchurch | Aberdeen |
|---|---|---|
| Morgan Stanley |  | $16,248,932.00 |
| JGB | $29,444,734 | $6,222,536.00 |
| DIP Loan** | $11,451,967.17 |  |
|  | $40,896,701.86 | $22,471,468.00 |

| Total net to Bay Point | $63,368,169.80 |
|---|---|
| Paid to Bay Point | $84,032,446.97 - They are claiming 24% on the debt (which is not applicable) – to the press they claim 43% or more. |
| Owed to debtor | $20,670,277.17 |

*Assuming 9% interest $13,000 interest per day from July 2, 2021, to January 19, 2022. The Judgment of JGB is very specific on principal, interest and the allocation reflecting the limited cross collateralization on Aberdeen and specifying that Brickchurch was to use $39,961,521.80 and only the remaining, in this case, related to the interest of $6,222,536 on Aberdeen could be charged to Aberdeen. The JGB judgment was a new contract that covered all angles of the previous loan agreement with its specific rules and terms.

Bay Points Principal:

| Morgan Stanley Assignment | $15, 478, 000.37 |
|---|---|
| JGB Assignment | $39, 961, 521.80 |
| Bay Point – Real DIP Loan | $8, 820, 000.00 |
| **Total Principal** | **$64, 259, 521.30** |

**The return on the DIP Loan is 30% interest based on a principal of $8,820,000.00 so they made $2.7 million on a principal of $8.8 million.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.